**FILED**
U S DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 2 2 2016

JAMES W. McCORMACK, CLERK
By: _____
                              DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

MOUNTAIRE CORPORATION;
MOUNTAIRE FARMS, INC.; MOUNTAIRE
FARMS OF NORTH CAROLINA CORP.; and
MOUNTAIRE FARMS, L.L.C.                                  **PLAINTIFFS**

VS.                          NO. 4:16cv917-SWW

ACE AMERICAN INSURANCE COMPANY                           **DEFENDANT**

This case assigned to District Judge ___Wright___
and to Magistrate Judge ___Kearney___

## NOTICE OF REMOVAL

Defendant ACE American Insurance Company ("ACE") hereby exercises its rights under

28 U.S.C. §§ 1441 and 1446 to remove this action from the Circuit Court of Pulaski County,

Arkansas, to the United States District Court for the Eastern District of Arkansas, Western

Division.  Removal jurisdiction based upon diversity of citizenship, 28 U.S.C. § 1332, is founded

on the following:

1.      This case, styled *Mountaire Corporation; Mountaire Farms, Inc.; Mountaire

*Farms of North Carolina Corp.; and Mountaire Farms, L.L.C. v. ACE American Insurance*

*Company*, was filed on July 29, 2016, in the Circuit Court of Pulaski County, Arkansas, as civil

action number 60CV-16-4170 on the docket of that Court.  This is an action of a civil nature in

which the District Courts of the United States have been given original jurisdiction pursuant to

28 U.S.C. § 1332 because complete diversity of citizenship existed at the time of the filing of this

action and still exists as between the Plaintiffs and ACE and the amount in controversy exceeds

the sum of $75,000, exclusive of any interest and costs.

2.      Under 28 U.S.C. §§ 1441 and 1446 the right exists to remove this action from the

Circuit Court of Pulaski County, Arkansas, to this Court, the United States District Court for the

Eastern District of Arkansas, Western Division, which is the federal district and division in which this action is pending.

3.      Plaintiff Mountaire Corporation is an Arkansas corporation with its principal place of business in Arkansas, as alleged in the Plaintiffs' Complaint.  Upon information and belief, Plaintiffs Mountaire Farms, Inc. and Mountaire Farms of North Carolina Corp. are Delaware corporations with their principal place of business in either North Carolina or Arkansas.  Upon information and belief, Plaintiff Mountaire Farms, LLC is an Arkansas limited liability company that, according to its annual reports available to the public on the North Carolina Secretary of State's website, only has citizens of Arkansas as members.

4.      ACE is a Pennsylvania corporation with its principal place of business in Pennsylvania, as alleged in the Plaintiffs' Complaint.

5.      Plaintiffs assert claims against ACE for alleged breach of an insurance contract, alleged bad faith, and alleged violation of the Arkansas Deceptive Trade Practices Act.  Plaintiffs seek the recovery of damages in excess of $420,000, as well as a 12% penalty and/or punitive damages and attorneys' fees and costs.  The amount of this demand is "deemed to be the amount in controversy."  28 U.S.C. § 1446(c)(2).

6.      Accordingly, this Court has original diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332(a), and the action is removable pursuant to 28 U.S.C. § 1441(a).

7.      ACE denies any and all alleged wrongdoing and any and all liability to Plaintiffs.  ACE has not yet filed a responsive pleading in the state court action.  By filing this Notice of Removal, ACE does not waive any defenses that may be available to it.

8.      In accordance with the requirements of 28 U.S.C. § 1446(a), ACE is attaching as **Exhibit A** hereto a copy of the Complaint and Summons in this action, which constitute all "process, pleadings and orders" served to date.

9.      ACE was served with the summons and complaint on November 22, 2016. This Notice of Removal is being timely filed within thirty (30) days of service of the Complaint and Summons on ACE pursuant to 28 U.S.C. § 1446(b) and *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-348 (1999).

10.     Service of this Notice of Removal is being made on all parties as shown by the attached Certificate of Service and as required by 28 U.S.C. § 1446(d).

11.     Promptly after filing this Notice of Removal, and also as required by 28 U.S.C. § 1446(d), ACE will serve upon Plaintiffs and file with the County Clerk of the Circuit Court of Pulaski County, Arkansas, a "Notice of Filing of Notice of Removal."

12.     Undersigned counsel states that this removal is well grounded in fact, warranted by existing law, and not interposed for any improper purpose.

13.     ACE expressly reserves any and all defenses which may be available to it in this action.

WHEREFORE, defendant ACE American Insurance Company removes this action from the Circuit Court of Pulaski County, Arkansas, to the United States District Court for the Eastern District of Arkansas, Western Division, and seeks resolution by this Court of all issues raised herein.

3

Alicia G. Curran (*to be admitted pro hac vice*)
COZEN O'CONNOR
1717 Main Street, Suite 3400
Dallas, Texas 75201
(214) 462-3021
FAX: (866) 248-5742
E-MAIL: acurran@cozen.com

and

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: grather@wlj.com

By _____
      Gordon S. Rather, Jr. (68054)

*Attorneys for Defendant,*
*ACE American Insurance Company*

## CERTIFICATE OF SERVICE

On December _____ **22** _____, 2016, a copy of the foregoing was served by email and

U.S. mail on the following:

      Mr. Byron J. Walker
      ROSE LAW FIRM
      120 East Fourth Street
      Little Rock, Arkansas 72201
      bwalker@roselawfirm.com

*Attorneys for plaintiffs*

_____
Gordon S. Rather, Jr.

4

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. CHRIS PIAZZA - 2ND DIVISION 6TH CIRCUIT

### MOUNTAIRE CORPORATION, ET AL V ACE AMERICAN INS CO

60CV-16-4170

### SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

ACE AMERICAN INSURANCE COMPANY
P.O. Box 5115
Scranton, PA  18505

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Byron Jansen Walker
Rose Law Firm
120 East Fourth Street
Little Rock, AR  72201-2893

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:
•Notice of Right to Consent to Disposition of Case by a State District Court Judge

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

CLERK OF COURT

Bettina Boughter, DC

Date: 07/29/2016

EXHIBIT A

## NOTICE OF RIGHT TO CONSENT
## TO DISPOSITION OF CASE BY A STATE DISTRICT COURT JUDGE

In accordance with Administrative Order Number 18, you are hereby notified that upon the consent of all the parties in a case, a State District Court Judge may be authorized to conduct all proceedings, including trial of the case and entry of a final judgment. Copies of appropriate consent forms are available from the Circuit Clerk.

You should be aware that your decision to consent or not to consent to the disposition of your case before a State District Court Judge is entirely voluntary, and by consenting to the reference of this matter to a State District Court Judge, the parties waive their right to a jury trial, and any appeal in the case shall be taken directly to the Arkansas Supreme Court or Court of Appeals as authorized by law.

You should communicate your consent by completing the Form -- CONSENT TO PROCEED BEFORE A STATE DISTRICT COURT JUDGE -- and return to the Circuit Clerk.

Circuit Clerk
Date: 07/29/2016

No. 60CV-16-4170 This summons is for ACE AMERICAN INSURANCE COMPANY (name of Defendant).

PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at _____[place] on _____ [date]; or

❏ I left the summons and complaint in the proximity of the individual by _____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at _____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

❏ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

❏ Other [specify]:

_____

❏ I was unable to execute service because:

_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____      SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                          [Signature of server]


                          _____
                          [Printed name]

Address: _____
         _____

Phone: _____

Subscribed and sworn to before me this date: _____


                          _____
                          Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____
_____

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Jul-29 09:58:13
60CV-16-4170
C06D02 : 7 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## _____DIVISION

**MOUNTAIRE CORPORATION;**
**MOUNTAIRE FARMS INC.;**
**MOUNTAIRE FARMS OF NORTH CAROLINA CORP.;**
**and MOUNTAIRE FARMS, L.L.C.**                                    **PLAINTIFFS**

**VS.**                          **NO. _____**

**ACE AMERICAN INSURANCE COMPANY**                        **DEFENDANT**

### COMPLAINT

Plaintiffs Mountaire Corporation, Mountaire Farms Inc., Mountaire Farms of North Carolina Corp., and Mountaire Farms, L.L.C. (collectively "Mountaire") state as follows for their Complaint against Defendant ACE American Insurance Company ("ACE").

1.       This is an action to recover amounts due under an insurance policy. Mountaire contracted with ACE, an insurance provider, for workers' compensation and employer's liability coverage. Mountaire paid all premiums due to ACE and complied with all policy provisions. When Mountaire suffered a covered loss and submitted a timely claim, ACE denied it. Mountaire has tried in good faith to have ACE honor its contractual obligation and pay the claim. ACE refuses. For that reason, Mountaire brings this suit and asks for ACE to pay what is due to Mountaire under the plain language of the policy and under applicable law.

### PARTIES

2.       Mountaire Corporation is an Arkansas corporation with its principal place of business at 1901 Napa Valley Drive, Little Rock, Arkansas, 72212. Mountaire Farms Inc. is a wholly owned subsidiary of Mountaire Corporation. Mountaire Farms of North Carolina Corp.

is an assumed name of Mountaire Farms Inc.   Mountaire Farms, L.L.C. is an affiliate of Mountaire Corporation.

3.      Upon information and belief, ACE is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this suit pursuant to Ark. Code Ann. § 16-13-201 *et seq.*

5.      This Court has personal jurisdiction over ACE because it has substantial contacts with this State, does business in this State, and is licensed to do business in this State by the Arkansas Insurance Department. This Court has personal jurisdiction over Mountaire because it is an Arkansas entity with its principal place of business in Arkansas. Ark. Code Ann. § 16-4-101(B).

6.      A substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in Pulaski County, Arkansas.

7.      Venue is thus proper in this Court.  Ark. Code Ann. §16-60-101 *et seq.*

## FACTUAL ALLEGATIONS

8.      Mountaire is a poultry processing corporation with operations in Arkansas, North Carolina, Maryland, and Delaware.

9.      ACE is an insurer doing business throughout the United States.

10.     In 2009, Mountaire negotiated with ACE for a comprehensive insurance package. Part of that package specifically included workers' compensation and employer's liability insurance.

11.     Ace underwrote a policy of insurance that was effective March 1, 2009 ("Policy"). That Policy included a "Standard Workers Compensation and Employers Liability Policy". A copy of the Policy is attached hereto as Exhibit A.

12.     The Policy included liability coverage of up to $1,000,000.00 per accident.

13.     The Policy also states that ACE "will provide investigation, administration, adjustment and settlement services, and shall provide the defense of claims or suits for which this Policy provides coverage."

14.     On June 20, 2009, Mountaire employee Brian Blue ("Blue") was injured when a co-worker engaged in the repair of a machine containing anhydrous ammonia without having first drained the anhydrous ammonia.

15.     To avoid the exclusivity provisions of The Workers' Compensation Act, N.C. Gen. Stat. §§ 97-9, 97-10.1, Blue filed suit against Mountaire on or about June 19, 2012. (Complaint Attached as Exhibit B.) He alleged the following conduct by Mountaire:

    a) Having a culture that caused "certain racial minorities to be intimidated and fearful of challenging authority or requests" and caused employees to fear termination for refusing to perform assessments for which they were not capable. (Compl. ¶¶ 30-31);

    b) Having a culture that prioritized profitability over employee safety (Compl. ¶¶ 28-29);

    c) Giving Swain, a mechanic lacking the proper training, a work order to replace the inner sleeve of votator two (Compl. ¶ 179a);

    d) Ordering the replacing of the inner sleeve on a work order that does not include a standard operation procedure for shut down (Compl. ¶ 179b);

    e) Failing to have a number of testing and safety procedures (Compl. ¶¶ 179c-h.);

    f) Mountaire had received OSHA citations for lock out/tag out procedures and labeling;

    g) Failing to properly train its employees (Compl. ¶¶ 52-57, 60);

    h) Failing to properly maintain training records (Compl. ¶¶ 58-63);

    i) Failing to implement a proper Risk Management Plan (Compl. ¶¶ 33-42);

3

> j) Failing to adopt industry standards regarding handling the ammonia delivery system (Compl. ¶ 91); and
>
> k) Failing to have a process in place that assigned refrigeration maintenance to properly trained refrigeration mechanics (Compl. ¶¶ 100-102).

16.     The Policy excluded obligations imposed by workers' compensation laws or "bodily injury intentionally caused or aggravated by" the insured.

17.     Blue did not allege in the Complaint that he suffered from "bodily injury intentionally caused or aggravated by" Mountaire and, thus, Blue's suit is not excluded by the Policy.

18.     The conduct alleged by Blue lacks any intentional act and, at worst, alleges that Mountaire was negligent in general business practices.

19.     There is no allegation in the complaint that Blue was directed by Mountaire to engage in any potential harmful activity.

20.     In fact, Blue's Complaint was dismissed on the grounds that there was no evidence to support Blue's allegations that Mountaire "engaged in misconduct knowing it is substantially certain to cause serious injury or death," the standard of conduct required to circumvent the Workers' Compensation Act's exclusivity provisions.

21.     Mountaire timely tendered the Blue claim to ACE for coverage.  On July 25, 2012, ACE wrote to Mountaire stating that the claim was excluded from coverage under the Policy because "[t]his insurance does not cover: bodily injury intentionally caused or aggravated by you."  For that reason, ACE stated that it had no duty to defend a claim, proceeding or suit related to the Blue matter. ACE's letter denying coverage is attached hereto as Exhibit C.

22.     In defending against Blue's suit, Mountaire has incurred costs and fees in excess of $420,000.00 to date.  ACE is contractually obligated to cover Mountaire's attorneys' fees and costs related to defense of the *Blue* suit.

4

### COUNT I – BREACH OF CONTRACT (THE POLICY)

23.   Mountaire incorporates by reference the allegations contained in paragraphs 1-22 above.

24.   Mountaire and ACE entered into a contract, which is the Policy.

25.   Mountaire is the named insured under the Policy.

26.   The Policy required ACE to pay for covered losses, including but not limited to defense costs incurred as a result of claims against Mountaire.

27.   The attorneys' fees and costs incurred in defending the claims made by Blue against Mountaire was a loss for which the Policy provided coverage.

28.   Mountaire performed its obligations under the Policy.

29.   Mountaire made timely and proper claims under the Policy for covered cost of defense losses that it incurred.

30.   ACE refuses to honor its obligations and pay Mountaire's claims. This failure to pay Mountaire's claims constitutes a breach of ACE's obligations under the Policy.

31.   As a direct, proximate, and foreseeable result of ACE's breach, Mountaire has incurred damages in excess of $75,000.00.

### COUNT II - TORT OF BAD FAITH

32.   Mountaire incorporates by reference the allegations contained in paragraphs 1-31 above.

33.   Mountaire has properly paid all premiums due under the Policy.

34.   ACE without good cause refused coverage under the policy despite there being no allegation or evidence of "bodily injury [to Blue] intentionally caused or aggravated by" Mountaire.

5

35.     ACE has without good cause refused to pay amount due under the Policy.

36.     ACE is obliged to honor Mountaire's claim under the plain policy language. ACE's refusal to do so is malicious and is not excused by any defense or justification.

37.     Accordingly, Mountaire seeks all its attorneys' fees and costs, the amount of the policy benefit, plus twelve (12) percent of that loss pursuant to Ark. Code Ann. § 23-79-208.

### COUNT III - VIOLATION OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT (ARK. CODE ANN. §§ 4-88-101 *ET SEQ.*)

38.     Mountaire incorporates by reference the allegations contained in paragraphs 1-37.

39.     ACE was aware that Mountaire was specifically seeking an insurance coverage for the types of loss suffered in relation to the *Blue* matter.

40.     ACE represented that the Policy was issued to cover Mountaire's claim.

41.     ACEs now claims that Mountaire's claim is not covered by the Policy.

42.     ACE's act of making certain representations to induce Mountaire to obtain and maintain insurance coverage and then refusing to provide coverage or make payments in accordance with those representations constitutes an unconscionable, false or deceptive act in business, commerce or trade in violation of Ark. Code Ann. § 4-88-107 (a)(10).

43.     ACE's acts directed toward Mountaire have been and continue to be intentional, willful, and without regard to Mountaire's rights.

44.     Upon information and belief, ACE has gained profits by its deceptive trade practices in that it obtained Mountaire's premiums for the Policy.

45.     Mountaire's has sustained actual damage as a direct and proximate result of ACE's deceptive trade practices in an amount to be proven at trial.

46.     Mountaire seeks punitive damages as allowed by law.

6

47.     Mountaire is entitled to recover its attorneys' fees and costs pursuant to Ark. Code Ann. §4-88-113(f).

48.     Mountaire requests a trial by jury on all of these claims.

WHEREFORE, Mountaire respectfully requests that this Court award it judgment in an amount to be determined at trial, that it be awarded a 12% penalty and attorney's fees, and for all other just and proper relief.

Respectfully submitted,

ROSE LAW FIRM,
a Professional Association
120 East Fourth Street
Little Rock, Arkansas 72201
(501) 375-9131
(501) 375-1309 (fax)

By: _____
     Byron J. Walker
     (Ark. Bar No. 2002114)
     bwalker@roselawfirm.com

· ATTORNEYS FOR PLAINTIFFS

7



ACE AMERICAN INSURA.    COMPANY
NCCI CARRIER CODE
12165

**Workers' Compensation**
**and Employers Liability**
**Insurance Policy**
**Information Page**

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Clerk
2016-Jul-29  09:58:13
60CV-16-4912
C06D12 : 24 Pages

| POLICY NUMBER | | | ☐ New | ☒ Renewal | ☐ Rewrite |
|---|---|---|---|---|---|
| Symbol:  WLR | Number:  C4 43 66 05 8 | | | | |

| PREVIOUS POLICY NO. | | ☐ Individual | ☐ Partnership |
|---|---|---|---|
| Symbol:  WLR | Number: C44485333 | ☒ Corporation  ☐ | |

**Item 1.**
**Named**
**Insured**

MOUNTAIRE CORPORATION
1901 NAPA VALLEY DRIVE
LITTLE ROCK          AR 72212

**Mailing**
**Address**

Inter/Intrastate ID No.:

Federal Employer ID No.: 710361768

Employer's ID No.:

PIIC CODE:    2015

For other named insured see Extension of Information Page-Schedule of Named Insured,  WC 99 99 99 A
For other workplaces see Extension of Information Page-Schedule of Other Workplaces,  WC 99 99 99 B

**Item 2.   Policy period:** From 03-01-2009   To 03-01-2010   12:01 A.M., standard time at the named insured's mailing address.

**Item 3A.  Workers' Compensation Insurance:**  Part One of the policy applies to the Workers' Compensation Law of the states listed here:
AR,DE,MD,ME,NC,TN

**Item 3B.  Employers Liability Insurance:** Part Two of the policy applies to work in each state listed in Item 3A.
The limits of our liability under Part Two are: Bodily Injury by Accident  $  1,000,000      each accident
Bodily Injury by Disease    $  1,000,000      policy limit
Bodily Injury by Disease    $  1,000,000      each employee

**Item 3C.  Other States Insurance:**   Part Three of the policy applies to the states, if any, listed here:
ALL STATES EXCEPT
ND,OH,WA,WY,
AND STATES DESIGNATED IN ITEM 3.A

**Item 4.**   The premium for this policy will be determined by our Manual of Rules, Classifications, Rates and Rating Plans. All information
required below is subject to verification and change by audit.
**SEE EXTENSION OF INFORMATION PAGE -CLASSIFICATIONS**

If indicated here, interim adjustments of premium will be made:
☐ Semi-Annually     ☐ Quarterly     ☐ Monthly

Minimum Premium collected in  DE  $
Total Estimated Premium        $
Deposit Premium        $

This policy includes these endorsements and schedules:
SEE SCHEDULE OF FORMS AND ENDORSEMENTS WC999999D

PRODUCER NAME AND MAILING ADDRESS
REGIONS INSURANCE        INC
1500 RIVERFRONT DRIVE
LITTLE ROCK        AR 72202

Target Risk No.: S800065904

Fac. Reins. ☒ Yes  ☐ No

PRODUCER CODE:  103078     71-0621654    DAU
COMMISSION: Percent:  .00     Amount:    0.00

MARKETING OFFICE:  DALLAS BRANCH
ISSUE DATE: 03/09/2009

**EXHIBIT**

**A**

(Authorized Representative)

WC 00 00 01A  (06/03)
3003

Copyright 1987 National Council on Compensation Insurance

Workers' Compensation and Employers' Liability Policy

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR   Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT COVERAGE ENDORSEMENT

This endorsement applies only to work subject to the Longshore and Harbor Workers' Compensation Act in a state shown in the Schedule. The policy applies to that work as though that state were listed in Item 3.A. of the Information Page.

General Section C. Workers' Compensation Law is replaced by the following:

C.     **Workers' Compensation Law**

Workers' Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page and the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950). It includes any amendments to those laws that are in effect during the policy period. It does not include any other federal workers or workmen's compensation law, other federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

Part Two (Employers Liability Insurance), C. Exclusions., exclusion 8, does not apply to work subject to the Longshore and Harbor Workers' Compensation Act.
This endorsement does not apply to work subject to the Defense Base Act, the Outer Continental Shelf Lands Act, or the Nonappropriated Fund Instrumentalities Act.

### Schedule

| State | Longshore and Harbor Workers'<br>Compensation Act Coverage Percentage |
|---|---|
| ARKANSAS<br>DELAWARE<br>MARYLAND<br>MAINE<br>NORTH CAROLINA<br>TENNESSEE | |

The rates for classifications with code numbers not followed by the letter "F" are rates for work not ordinarily subject to the Longshore and Harbor Workers' Compensation Act. If this policy covers work under such classifications, and if the work is subject to the Longshore and Harbor Workers' Compensation Act, those non-F classification rates will be increased by the Longshore and Harbor Workers' Compensation Act Coverage Percentage shown in the Schedule.

_____
Authorized Agent

CKE-3N11a (4/92) Ptd. in U.S.A.              Copyright 1983, 1991, National Council on Compensation Insurance.              WC 00 01 06A
3004

Workers' Compensation and Employers' Liability Policy

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR     Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007.

**Definitions**

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

    a. The act is an act of terrorism.

    b. The act is violent or dangerous to human life, property or infrastructure.

    c. The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

    d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

**Limitation of Liability**

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a Program Year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1. Insured Losses would be partially reimbursed by the United States Government.  If the aggregate industry Insured Losses exceeds $100,000,000 in a Program Year, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceeds $100,000,000,000.

3. The premiums charged for the coverage for Insured Losses under this policy are included in the amounts shown in Item 4 of the Information Page or in the Schedules in the Domestic Terrorism, Earthquakes, and Catastrophic Industrial Accidents Premium Endorsement (WC 00 04 21B) and the Foreign Terrorism Premium Endorsement (WC 00 04 22), attached to this policy.

_Wally Del_
Authorized Agent

**Workers' Compensation and Employers' Liability Policy**

| Named Insured | Endorsement Number |
|---|---|
| MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## MARITIME COVERAGE ENDORSEMENT

This endorsement changes how insurance provided by Part Two (Employers Liability Insurance) applies to bodily injury to a master or member of the crew of any vessel.

**A.     How This Insurance Applies** is replaced by the following:

   **A.     How This Insurance Applies**

   This insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

   1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

   2. The employment must be necessary or incidental to work described in Item 1 of the Schedule of the Maritime Coverage Endorsement.

   3. The bodily injury must occur in the territorial limits of, or in the operation of a vessel sailing directly between the ports of, the continental United States of America, Alaska, Hawaii or Canada.

   4. Bodily injury by accident must occur during the policy period.

   5. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

   6. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

**C.     Exclusions** is changed by removing exclusion 10 and by adding exclusions 13 and 14.
   This insurance does not cover:

   13. bodily injury covered by a Protection and Indemnity Policy or similar policy issued to you or for your benefit. This exclusion applies even if the other policy does not apply because of another insurance clause, deductible or limitation of liability clause, or any similar clause.

   14. your duty to provide transportation, wages, maintenance and cure. This exclusion does not apply if a premium entry is shown in Item 2 of the Schedule.

**D.     We Will Defend** is changed by adding the following statement:

   We will treat a suit or other action in rem against a vessel owned or chartered by you as a suit against you.

**G.     Limits of Liability**

   Our liability to pay for damages is limited. Our limits of liability are shown in the Schedule. They apply as explained below.

   1. Bodily Injury by Accident. The limit shown for "bodily injury by accident—each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more em- ployees in any one accident.

   A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

   2. Bodily Injury by Disease. The limit shown for "bodily injury by disease—aggregate" is the most we will pay for all damages covered by this insurance because of bodily injury by disease to one or more employees. The limit applies separately to bodily injury by disease arising out of work in each state shown in Item 3.A. of the Information Page. Bodily injury by disease will be deemed to occur in the state of the vessel's home port.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3.  We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

### Schedule

1.  Description of work:
    IF ANY

2.  Transportation, Wages, Maintenance and Cure Premium $ INCLUDED

3.  Limits of Liability

    Bodily Injury by Accident        1,000,000        each accident

    Bodily Injury by Disease    $  1,000,000        aggregate

Authorized Agent

WC 00 02 01A
3008

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in Item 2 of the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured. If an entry is shown in Item 3 of the Schedule the insurance afforded by this endorsement applies only to work you perform under the contract or at the project named in the Schedule.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

Schedule

1. <u>Alternate Employer</u>                                          <u>Address</u>

   IF ANY                            DOES NOT APPLY TO ALASKA, OR TO ANY
                                     EMPLOYEE LEASE CONTRACT/ARRANGEMENT

2. <u>State of Special or Temporary Employment</u>


3. <u>Contract or Project</u>


For the state of HI, MI, OK refer to state specific endorsements.
This endorsement is not applicable in AK.

_____
Authorized Agent

WC 00 03 01A   (Ed. 2-89)
3009

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR   Number: C44366058 |
| Policy Period<br>03-01-2009   **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## DESIGNATED WORKPLACES EXCLUSION ENDORSEMENT

The policy does not cover work conducted at or from:

ALL OPERATIONS COVERED BY POLICY SCF C44366095

_____
Authorized Agent

**Workers' Compensation and Employers' Liability Policy**

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR     Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE ENDORSEMENT

This endorsement adds Voluntary Compensation Insurance to the policy.

**A.  How This Insurance Applies**

This insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  The bodily injury must be sustained by an employee included in the group of employees described in the Schedule.

2.  The bodily injury must occur in the course of employment necessary or incidental to work in (a state listed in) the Schedule.

3.  The bodily injury must occur in the United States of America, its territories or possessions or Canada, and may occur elsewhere if the employee is a United States or Canadian citizen temporarily away from those places.

4.  Bodily injury by accident must occur during the policy period.

5.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B.  We Will Pay**

We will pay an amount equal to the benefits that would be required of you if you and your employees described in the Schedule were subject to the workers compensation law shown in item 1 of the Schedule. We will pay those amounts to the persons who would be entitled to them under the law.

**C.  Exclusions**

This insurance does not cover:

1.  any obligation imposed by a workers compensation or occupational disease law, or any similar law.

2.  bodily injury intentionally caused or aggravated by you.

**D.  Before We Pay**

Before we pay benefits to the persons entitled to them, they must:

1.  Release you and us, in writing, of all responsibility for the injury or death.

2.  Transfer to us their right to recover from others who may be responsible for the injury or death.

3.  Cooperate with us and do everything necessary to enable us to enforce the right to recover from others.

If the persons entitled to the benefits of this insurance fail to do those things, our duty to pay ends at once. If they claim damages from you or from us for the injury or death, our duty to pay ends at once.

**E.   Recovery From Others**

If we make a recovery from others, we will keep an amount equal to our expenses of recovery and the benefits we paid. We will pay the balance to the persons entitled to it. If the persons entitled to the benefits of this insurance make a recovery from others, they must reimburse us for the benefits we paid them.

**F.   Employers Liability Insurance**

If we make a recovery from others, we will keep an amount equal to our expenses of recovery and the benefits we paid. We will pay the balance to the persons entitled to it. If the persons entitled to the benefits of this insurance make a recovery from others, they must reimburse us for the benefits we paid them.

<u>Schedule</u>

**Employee**

ANY EMPLOYEE EXEMPT FROM THE WORKERS COMPENSATION LAW.

**State of Employment**

ALL STATES LISTED UNDER ITEM 3.A. OF THE INFORMATION PAGE.

**Designated Workers
Compensation Law**

ALL STATES LISTED UNDER ITEM 3.A. OF THE INFORMATION PAGE.

Authorized Agent

Workers' Compensation and Employers' Liability Policy

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009      TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.

This agreement shall not operate directly or indirectly to benefit any one not named in the Schedule.

### Schedule

ANY PERSON OR ORGANIZATION AGAINST WHOM YOU HAVE AGREED TO WAIVE YOUR RIGHT OF RECOVERY IN A WRITTEN CONTRACT, PROVIDED SUCH CONTRACT WAS EXECUTED PRIOR TO THE DATE OF LOSS.

For the states of CA, TX, refer to state specific endorsements.

This endorsement is not applicable in KY, NH, and NJ.

Authorized Agent

Workers' Compensation and Employers' Liability Policy

| Named Insured MOUNTAIRE CORPORATION 1901 NAPA VALLEY DRIVE LITTLE ROCK        AR    72212 | Endorsement Number |
|---|---|
| | Policy Number Symbol: WLR    Number: C44366058 |
| Policy Period 03-01-2009    TO 03-01-2010 | Effective Date of Endorsement 03-01-2009 |
| Issued By (Name of Insurance Company) ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## AIRCRAFT PREMIUM ENDORSEMENT

Additional premium is charged for each aircraft shown in the Schedule. The additional premium is not subject to adjustment unless this policy is canceled. You may substitute one aircraft for another without additional charge if the substitute aircraft has no more seats that the aircraft shown in the Schedule.

Schedule

| State | Aircraft | Passenger Seat Charge | Maximum Charges | Estimated Premium |
|---|---|---|---|---|
| AR | 1981 DASSAULT FALCON 20FD | 100.00 | 1,000.00 | |

*Authorized Agent*

CKE-3N07s (4/86) Ptd. in U.S.A.
3013

WC 00 04 01A

**Workers' Compensation and Employers' Liability Policy**

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK            AR   72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR     Number: C44366058 |
| Policy Period<br>03-01-2009    **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### EXPERIENCE RATING MODIFICATION FACTOR ENDORSEMENT

The premium for the policy will be adjusted by an experience rating modification factor. The factor was not available when the policy was issued. The factor, if any, shown on the Information Page is an estimate. We will issue an endorsement to shown the proper factor, if different from the factor shown, when it is calculated.

_Wally Dell_

Authorized Agent

Workers' Compensation and Employers' Liability Policy

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## PENDING RATE CHANGE ENDORSEMENT

A rate change filing is being considered by the proper regulatory authority. The filing may result in rates different from the rates shown on the policy. If it does, we will issue an endorsement to show the new rates and their effective date.

If only one state is shown in Item 3.A of the Information Page, this endorsement applies to that state. If more than one state is shown there, this endorsement applies only in the state shown in the Schedule.

### Schedule

**State**

DELAWARE

MAINE

Authorized Agent

Copyright 1982-83, National Council on Compensation Insurance          WC 00 04 04

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| **Named Insured**<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | **Endorsement Number** |
| | **Policy Number**<br>Symbol: WLR   Number: C44366058 |
| **Policy Period**<br>03-01-2009   **TO** 03-01-2010 | **Effective Date of Endorsement**<br>03-01-2009 |
| **Issued By (Name of Insurance Company)**<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

This endorsement is not applicable in CA, DE, ME, MI, NJ, PA, TX.

Authorized Agent

CKE-4255 (7/90) Ptd. in U.S.A.
3016                              Copyright 1990 National Council on Compensation Insurance.                    WC 00 04 14

Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## PREMIUM DUE DATE ENDORSEMENT

This endorsement is used to amend:

Section D. of Part Five of the policy is replaced by this provision.

**PART FIVE**
**PREMIUM**

D.  **Premium** is amended to read:

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.   The due date for audit and retrospective premiums is the date of the billing.

For the states of MA, OR, refer to state specific endorsements.
This endorsement is not applicable in AZ, CA.

_Wally Dee_
Authorized Agent

CKE-10129 (01/01)  Ptd. in U.S.A.
3017

WC 00 04 19

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## NOTIFICATION OF PREMIUM ADJUSTMENT

For the states and lines of business in which regulatory approval has been granted for the NCCI Large Risk Alternative Rating Option, the ISO Large Risk Alternative Rating Option, or the independently filed ACE Large Risk Rating Plan, the premiums for this policy will be adjusted in accordance with the Notice of Election, signed by you.

_____
Authorized Agent

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>**MOUNTAIRE CORPORATION**<br>**1901 NAPA VALLEY DRIVE**<br>**LITTLE ROCK      AR   72212** | Endorsement Number |
| | Policy Number<br>Symbol: **WLR**   Number: **C44366058** |
| Policy Period<br>**03-01-2009   TO 03-01-2010** | Effective Date of Endorsement<br>**03-01-2009** |
| Issued By (Name of Insurance Company)<br>**ACE AMERICAN INSURANCE COMPANY** | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## DEDUCTIBLE ENDORSEMENT

1.  This agreement is between you and us. It does not change the rights of others under this Policy.

2.  We will pay and you will reimburse us for all payments we make on your behalf as benefits under Part One – Workers' Compensation Insurance of this Policy or as damages under Part Two – Employers' Liability Insurance of this Policy up to the amount of the Deductible Limits shown in the Schedule.

3.  When used in this Endorsement:

    "Incident Deductible Limit" shall mean the amount of benefits or damages because of (a) bodily injury by disease applied separately to each employee or (b) bodily injury by accident applied separately to each occurrence, to which this insurance applies and for which you have a duty to reimburse us under this Policy.

    "Aggregate Deductible Limit" shall mean the most you must reimburse us for the sum of all benefits or damages to which this insurance applies.

4.  We will provide investigation, administration, adjustment and settlement services, and shall provide the defense of claims or suits for which this Policy provides coverage.

5.  You will reimburse us for all expenses, costs and interest which we pay in connection with the investigation, administration, adjustment, settlement or defense of any claim or suit arising from coverages under this Policy.
    Check one box only:

    ☐ These expenses, costs and interest are separate from, and in addition to, the Incident Deductible Limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

    ☒ These expenses, costs and interest are part of, and included in, the Incident Deductible limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

6.  You will also reimburse us for all assessments which are not included in the Policy premium that we may incur including those based on the total amounts associated with the Deductible obligation of this Endorsement. These assessments are also separate from, and in addition to, the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

7.  Under Part Two – Employers' Liability Insurance, the terms of this Policy, including those with respect to (a) our right and duty with respect to the defense of suits and (b) your duties in the event of an injury, apply irrespective of the application of any Deductible Limit. The Deductible Limit is within, and does not increase, the applicable Limits of Liability under Part Two – Employers' Liability Insurance of this Policy.

8.  If we cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will be reduced to a pro-rata amount based on the time this Policy was in force. If you cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will not be reduced if you cancel this Policy for any reason other than retiring from business. If you cancel this Policy as a result of your retiring from business, the Aggregate Deductible Limit will be reduced to a pro-rata amount based on the time this Policy was in force.

**CONTINUED ON REVERSE SIDE**

CKE-3W15b  (8/96) Ptd. in U.S.A.                                    WC 99 06 61B (8/06)
3019

9.   Cancelation

Paragraph D. Cancelation of PART SIX - CONDITIONS of the Policy is extended to include the following Item 5;

5.   If you fail to deliver an amended or additional or substitute collateral required by us to secure your obligations under this Deductible Endorsement, or if you fail to reimburse us for any of your obligations under this Deductible Endorsement, we may cancel this Policy in accordance with items 2., and 3., and 4. above.

10.                                              SCHEDULE

Incident Deductible Limit                                    Aggregate Deductible Limit

$ _____                          $ _____

11. All terms, conditions, and limitations of this Policy not inconsistent with this Endorsement continue to apply.

Named Insured: MOUNTAIRE CORPORATION _____

Accepted and Agreed to by: _____

Title: _____

For the states of AK, AZ, CA, FL, HI, KS, LA, MA, MN, MO, MT, NC, NY, OK, OR, PA, TX, VA, WV refer to state specific endorsements.,

This endorsement is not applicable in WI.

_____
Authorized Agent

Workers' Compensation and Employers' Liability Policy

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
| --- | --- |
| | Policy Number<br>Symbol: WLR   Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## EARLIER NOTICE OF CANCELLATION AND NON-RENEWAL ENDORSEMENT

Paragraphs A. and B. below apply to all States shown in item 3.A. of the Information Page except as indicated below.

### A.   EARLIER NOTICE OF CANCELLATION

For any statutorily permitted reason, other than nonpayment of premium, the minimum number of days required for notice of cancellation as provided in either the Cancellation Condition of the policy or as amended by any applicable state cancellation endorsement is increased to 90 days.

If the state cancellation endorsement provides for more than the number of days notice of cancellation shown above, this provision does not apply.

### B.   EARLIER NOTICE OF NON-RENEWAL

If we decide not to renew this policy for any reason other than non payment of premium, the minimum number of days for notice of non-renewal as provided by any applicable state non-renewal endorsement is increased to 90 days.

If the state non-renewal endorsement provides for more than the number of days notice of non-renewal shown above, this provision does not apply.

**State Exceptions**

ARIZONA          Not applicable - Paragraph A

NEW JERSEY    Not applicable

WISCONSIN      Not applicable

_____
Authorized Agent

CKE-10290 (3/01)  Ptd. in U.S.A.
3021

WC 99 06 97

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK      AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR   Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of policy remain unchanged.

This endorsement is not applicable in: AZ, FL, MN, NJ, TN, WI.

_Wally Del_
Authorized Agent

WC 99 07 73 (11/06)
3022

## EXTENSION OF INFORMATION PAGE

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR   Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### SCHEDULE OF NAMED INSURED

ITEM 1., NAMED INSURED, OF THE INFORMATION PAGE IS EXTENDED AS FOLLOWS:

**NAMED INSURED**                                                                 **FEIN**

   MOUNTAIRE CORPORATION

   CAMERLOCH CORPORATION

   CAMERON LTD. PARTNERSHIP

   MOUNTAIRE FARMS OF DE, INC.
      DOING BUSINESS AS:
         CENTRAL GRAIN

   MOUNTAIRE FARMS, INC.
      EXTENSION:
         MASTERBREEDER FARMS
         MOUNTAIRE FARMS OF DELMARVA
         MOUNTAIRE FARMS OF NORTH CAROLINA

   MOUNTAIRE FARMS, LLC

   MOUNTAIRE FEEDS, INC.
      DOING BUSINESS AS:
         PRIME QUALITY FEED

**For the state of CA refer to state specific endorsement.**

**This endorsement is not applicable in NJ.**

_____
Authorized Agent

## EXTENSION OF INFORMATION PAGE

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### SCHEDULE OF NAMED INSURED

ITEM 1., NAMED INSURED, OF THE INFORMATION PAGE IS EXTENDED AS FOLLOWS:

NAMED INSURED                                                    FEIN

For the state of CA refer to state specific endorsement.

This endorsement is not applicable in NJ.

Authorized Agent

## EXTENSION OF INFORMATION PAGE

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK         AR   72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR     Number: C44366058 |
| Policy Period<br>03-01-2009     TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### SCHEDULE OF OTHER WORKPLACES

ITEM 1., OTHER WORKPLACES, OF THE INFORMATION PAGE IS EXTENDED AS FOLLOWS:

OTHER WORKPLACES                                                          FEIN

MOUNTAIRE CORPORATION

    1901 NAPA VALLEY DRIVE
    LITTLE ROCK, AR 72212

    NO SPECIFIC LOCATION
    BISMARCK, ND 58501

    NO SPECIFIC LOCATION
    COLUMBUS, OH 43085

    NO SPECIFIC LOCATION
    NASHVILLE, TN 37201

    NO SPECIFIC LOCATION
    OLYMPIA, WA 98501

    NO SPECIFIC LOCATION
    CHEYENNE, WY 82001

CAMERLOCH CORPORATION

    1901 NAPA VALLEY DRIVE
    LITTLE ROCK, AR 72212

CAMERON LTD. PARTNERSHIP

    1901 NAPA VALLEY DRIVE
    LITTLE ROCK, AR 72212

MOUNTAIRE FARMS OF DE, INC.

    615 FAIR GROUND ROAD
    HARRINGTON, DE 19952

    10TH STREET & RAILROAD AVENUE
    LAUREL, DE 19956

For the state of CA refer to state specific endorsement.

This endorsement is not applicable in NJ.

Authorized Agent

WC 99 99 99 B (10/06)
3025

Page   1   of 4

# EXTENSION OF INFORMATION PAGE

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK            AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR   Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## SCHEDULE OF OTHER WORKPLACES

**ITEM 1., OTHER WORKPLACES, OF THE INFORMATION PAGE IS EXTENDED AS FOLLOWS:**

**OTHER WORKPLACES**                                                                                 **FEIN**

ROUTE 13 NORTH
MILLSBORO, DE 19966

ROUTE 24 EAST
MILLSBORO, DE 19966

4933 STEIN HIGHWAY
SEAFORD, DE 19973

701 SUNSET AVENUE
GREENSBORO, MD 21639

414 BACK STREET
MILLINGTON, MD 21651

32500 1ST STREET
QUEEN ANNE, MD 21657

4645 OCEAN GATEWAY
TRAPPE, MD 21673

MOUNTAIRE FARMS, INC.

RAILROAD AVENUE & 11 DAISY STREET
FRANKFORD, DE 19945

HOOSIER AND #35 RAILROAD AVENUE
SELBYVILLE, DE 19975

US HWY 13 NORTH WEST & KING MILLER ROAD
PRINCESS ANNE, MD 21853

636 S. SALISBURY BLVD.
SUITE F
SALISBURY, MD 21801

30607 REVELL'S NECK RD.
WESTOVER, MD 21871

**For the state of CA refer to state specific endorsement.**

**This endorsement is not applicable in NJ.**

Authorized Agent

## EXTENSION OF INFORMATION PAGE

| Named Insured | Endorsement Number |
|---|---|
| MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK           AR   72212 | Policy Number<br>Symbol: WLR     Number: C44366058 |
| Policy Period<br>03-01-2009     TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### SCHEDULE OF OTHER WORKPLACES

**ITEM 1., OTHER WORKPLACES, OF THE INFORMATION PAGE IS EXTENDED AS FOLLOWS:**

**OTHER WORKPLACES**                                                              **FEIN**

    NO SPECIFIC LOCATION
    AUGUSTA, ME 04330

    203 MORRIS FARM RD.
    CANDOR, NC 27229

    17269 NC HIGHWAY 71 NORTH
    LUMBER BRIDGE, NC 28357

    4555 US HWY 421 S.
    SILER CITY, NC 27344

    4085 TAYLORVILLE HWY
    STATESVILLE, NC 28625

**MOUNTAIRE FARMS, LLC**

    4085 TAYLORVILLE HWY
    STATESVILLE, NC 28625

**MOUNTAIRE FEEDS, INC.**

    1901 NAPA VALLEY DRIVE
    LITTLE ROCK, AR 72212

**For the state of CA refer to state specific endorsement.**

**This endorsement is not applicable in NJ.**

Authorized Agent

## EXTENSION OF INFORMATION PAGE

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK            AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### SCHEDULE OF OTHER WORKPLACES

**ITEM 1., OTHER WORKPLACES, OF THE INFORMATION PAGE IS EXTENDED AS FOLLOWS:**

**OTHER WORKPLACES**                                                                **FEIN**

**For the state of CA refer to state specific endorsement.**

**This endorsement is not applicable in NJ.**

Authorized Agent

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK            AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR   Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## FORM AND ENDORSEMENT SCHEDULE

| | |
|---|---|
| WC 000001A | CONTRACT INFORMATION PAGE |
| WC 000106A | LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT COVERAGE ENDORSEMENT |
| WC 000113A | TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT |
| WC 000201A | MARITIME COVERAGE ENDORSEMENT |
| WC 000301A | ALTERNATE EMPLOYER ENDORSEMENT |
| WC 000302 | DESIGNATED WORKPLACES EXCLUSION ENDORSEMENT |
| WC 000311A | VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE ENDORSEMENT |
| WC 000313 | WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT |
| WC 000401A | AIRCRAFT PREMIUM ENDORSEMENT |
| WC 000403 | EXPERIENCE RATING MODIFICATION FACTOR ENDORSEMENT |
| WC 000404 | PENDING RATE CHANGE ENDORSEMENT |
| WC 000414 | NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT |
| WC 000419 | PREMIUM DUE DATE ENDORSEMENT |
| WC 990302B | VOLUNTARY COMPENSATION ENDORSEMENT FOREIGN |
| WC 990409 | NOTIFICATION OF PREMIUM ADJUSTMENT |
| | |
| WC 990661B | DEDUCTIBLE ENDORSEMENT |
| WC 990697 | EARLIER NOTICE OF CANCELLATION AND NON-RENEWAL ENDORSEMENT |
| WC 990773 | TRADE OR ECONOMIC SANCTIONS ENDORSEMENT |
| WC 999999A | SCHEDULE OF NAMED INSURED |
| WC 999999B | SCHEDULE OF OTHER WORKPLACES |
| WC 999999D | SCHEDULE OF FORMS AND ENDORSEMENTS |
| WC 000421B  AR | DOMESTIC TERRORISM, EARTHQUAKES, AND CATASTROPHIC INDUSTRIAL ACCIDENTS PREMIUM ENDORSEMENT |
| WC 000422   AR | FOREIGN TERRORISM PREMIUM ENDORSEMENT |

(Authorized Agent)

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR      72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.


### FORM AND ENDORSEMENT SCHEDULE


```
WC 030601A   AR ARKANSAS AMENDATORY ENDORSEMENT
WC 000422    DE FOREIGN TERRORISM PREMIUM ENDORSEMENT
WC 070601    DE DELAWARE NONRENEWAL ENDORSEMENT
WC 000421B   MD DOMESTIC TERRORISM, EARTHQUAKES, AND CATASTROPHIC
                INDUSTRIAL ACCIDENTS PREMIUM ENDORSEMENT
WC 000422    MD FOREIGN TERRORISM PREMIUM ENDORSEMENT
WC 190601C   MD MARYLAND CANCELATION ENDORSEMENT
WC 000421B   ME DOMESTIC TERRORISM, EARTHQUAKES, AND CATASTROPHIC
                INDUSTRIAL ACCIDENTS PREMIUM ENDORSEMENT
WC 000422    ME FOREIGN TERRORISM PREMIUM ENDORSEMENT
WC 180601    ME MAINE INSPECTION IMMUNITY ENDORSEMENT (TITLE 14 MAINE
                REVISED STATUTES ANNOTATED SECTION 167)
WC 180603A   ME MAINE CANCELATION AND NONRENEWAL ENDORSEMENT
WC 180604    ME MAINE FINAL PREMIUM AUDIT ENDORSEMENT
WC 180606    ME MAINE NOTICE OF FILING OF FIRST REPORTS OF INJURY WITHIN
                SEVEN DAYS ENDORSEMENT
WC 180607C   ME MAINE SUPPLEMENTAL BENEFITS FUND ENDORSEMENT
WC 000421B   NC DOMESTIC TERRORISM, EARTHQUAKES, AND CATASTROPHIC
                INDUSTRIAL ACCIDENTS PREMIUM ENDORSEMENT
WC 000422    NC FOREIGN TERRORISM PREMIUM ENDORSEMENT
WC 320301B   NC NORTH CAROLINA AMENDED COVERAGE ENDORSEMENT
WC 990678A   NC DEDUCTIBLE ENDORSEMENT STATE OF NORTH
                CAROLINA
WC 990303C   ND EMPLOYERS LIABILITY ENDORSEMENT (STOP-GAP
                COVERAGE)
WC 990646    ND NORTH DAKOTA AMENDATORY ENDORSEMENT
WC 990663A   ND DEDUCTIBLE ENDORSEMENT
WC 990442    OH STOP GAP COVERAGE - OHIO
WC 990647    OH OHIO CANCELLATION AND NONRENEWAL
                ENDORSEMENT
WC 990663A   OH DEDUCTIBLE ENDORSEMENT
```

_____
(Authorized Agent)

## Workers' Compensation and Employers' Liability Policy

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## FORM AND ENDORSEMENT SCHEDULE

```
WC 000421B   TN DOMESTIC TERRORISM, EARTHQUAKES, AND CATASTROPHIC
                INDUSTRIAL ACCIDENTS PREMIUM ENDORSEMENT
WC 000422    TN FOREIGN TERRORISM PREMIUM ENDORSEMENT
WC 410402    TN TENNESSEE PENDING LOSS COST AND ASSIGNED RISK RATE
                ENDORSEMENT
WC 990303C   WA EMPLOYERS LIABILITY ENDORSEMENT (STOP-GAP
                COVERAGE)
WC 990663A   WA DEDUCTIBLE ENDORSEMENT
WC 490301    WY WYOMING AMENDATORY ENDORSEMENT
WC 990303C   WY EMPLOYERS LIABILITY ENDORSEMENT (STOP-GAP
                COVERAGE)
WC 990664A   WY DEDUCTIBLE ENDORSEMENT STATE OF WYOMING
```

_(Authorized Agent)_

CKE-11676d                    COMPANY COPY                              WC 99 99 99D
3031

PREMIUM EXPOSURE SUMMARY

| INSURED | | | | | | | | | UNDERWRITING OFFICE | AUDIT TYPE | | RETRO | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MOUNTAIRE CORPORATION | | | | | | | | | DAU | INT ☐ | FIN ☐ | YES ☐ NO ☒ | |

| POLICY NUMBER | | AUDIT FREQUENCY | | | | | | TOTAL | POLICY SYMBOL | COMPANY CODE | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | E | M | Q | SA | A | NON ADT | | | | |
| C4  43 66 05 8 | | X | | | | | | | WLR | AAI | |
| CONCURRENT POLICIES | | | | | | | | | | | |

**TOTAL ESTIMATED ANNUAL PREMIUM**   812650

ADV. COMM. CALC.

| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) |
|---|---|---|---|---|---|---|---|---|
| STATE | EXPOSURE | PREMIUM SUBJECT TO PREMIUM DISCOUNT/ HIGH DEDUCTIBLE | DISCOUNT % | DISCOUNT AMOUNT | DEDUCTIBLE AMOUNT | PREMIUM | COMMISSION % | COMMISSION $ |
| | | | | | | | | |
| Total | | | | | | | | |

NON SUBJECT

REDACTED

| Policy Totals | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| AARO Adjustment | | | | | | | | |
| AARO Adjustment Surcharge | | | | | | | | |
| Policy Total Including AARO | | | | | | | | |

WC 99 95 31 (05/08)          DOC 6178     03-09-2009  DAU                    CK-2Z74 Ptd. in U.S.A.

PREMIUM EXPOSURE SUMMARY

| INSURED | | | | | | | | | | | | UNDERWRITING OFFICE | AUDIT TYPE | | RETRO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MOUNTAIRE CORPORATION | | | | | | | | | | | | DAU | INT ☐ | FIN ☐ | YES ☐ NO ☒ |

| POLICY NUMBER | AUDIT FREQUENCY | | | | | | TOTAL | POLICY SYMBOL | COMPANY CODE | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | E | M | Q | SA | A | NON ADT | | | | | |
| C4  43 66 05 8 CONCURRENT POLICIES | X | | | | | | | WLR | AAI | | |

**TOTAL ESTIMATED ANNUAL PREMIUM**    812650

ADV. COMM. CALC.

| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) |
|---|---|---|---|---|---|---|---|---|
| STATE | EXPOSURE | PREMIUM SUBJECT TO PREMIUM DISCOUNT/ HIGH DEDUCTIBLE | DISCOUNT % | DISCOUNT AMOUNT | DEDUCTIBLE AMOUNT | PREMIUM | COMMIS-SION % | COMMISSION $ |
| | | | | | | | | |
| Total | | | | | | | | |
| N O N  S U B J E C T | | REDACTED | | | | | | |
| Policy Totals | | | | | | | | |
| AARO Adjustment | | | | | | | | |
| AARO Adjustment Surcharge | | | | | | | | |
| Policy Total Including AARO | | | | | | | | |

WC 99 95 31 (05/08)          DOC 6178     03-09-2009   DAU                    CK-2Z74 Ptd. in U.S.A.



**ACE AMERICAN INSURAI   COMPANY**
NCCI CARRIER CODE
**12165**

# EXTENSION OF INFORMATION
# PAGE – CLASSIFICATION

| POLICY NUMBER | |
|---|---|
| Symbol:  WLR    Number:  C4 43 66 05 8 | ☐ New   ☒ Renewal   ☐ Rewrite |

| PREVIOUS POLICY NO. | |
|---|---|
| Symbol:  WLR    Number: C44485333 | ☐ Individual   ☐ Partnership<br>☒ Corporation   ☐ . |

## ARKANSAS

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis<br>Estimated Total Remuneration | Rate<br>Per $100 of Remuneration | Estimated Premium |
|---|---|---|---|---|
| THE ACE USA COMPANIES ARE REQUIRED TO PROVIDE ITS POLICYHOLDERS WITH CERTAIN ACCIDENT PREVENTION SERVICES AT NO ADDITIONAL COST AS REQUIRED BY ARK. CODE ANN. 11-9-409(D) AND AWCC RULE 32.  IF YOU WOULD LIKE MORE INFORMATION, CALL ACE USA'S LOSS CONTROL DIVISION AT TOLL FREE 1-866-357-3797.  IF YOU HAVE ANY QUESTIONS ABOUT THIS REQUIREMENT, CALL THE HEALTH AND SAFETY DIVISION, ARKANSAS WORKERS' COMPENSATION COMMISSION AT 1-800-622-4472. | | | | |
| REDACTED | | | | |
| Minimum, Estimated and Deposit Premiums are shown on the Information Page. | | | Total State Premium | |

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:   03/09/2009                                                    (PAGE 1 CONTINUED)

WC 99 04 18 (12/05)
3034

Copyright 1987 National Council on Compensation Insurance
COMPANY COPY



ISSUING COMPANY
**ACE AMERICAN INSURAI    COMPANY**
NCCI CARRIER CODE
**12165**

# EXTENSION OF INFORMATION
# PAGE – CLASSIFICATION

| POLICY NUMBER | | | |
|---|---|---|---|
| Symbol:  WLR      Number:  C4  43 66 05 8 | ☐ New | ☒ Renewal | ☐ Rewrite |

| PREVIOUS POLICY NO. | | |
|---|---|---|
| Symbol:  WLR      Number:  C44485333 | ☐ Individual | ☐ Partnership |
| | ☒ Corporation | ☐ |

## ARKANSAS

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis Estimated Total Remuneration | Rate Per $100 of Remuneration | Estimated Premium |
|---|---|---|---|---|
| REDACTED | | | | |

| | | | | |
|---|---|---|---|---|
| Minimum, Estimated and Deposit Premiums are shown on the Information Page. | | **Total State Premium** | 4928. |

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:   03/09/2009                                              (PAGE 2 LAST PAGE)

WC 99 04 18 (12/05)                  Copyright 1987 National Council on Compensation Insurance
3035                                             **COMPANY COPY**

## Workers' Compensation and Employers' Liability Policy

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK         AR   72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR   Number: C44366058 |
| Policy Period<br>03-01-2009   **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### DOMESTIC TERRORISM, EARTHQUAKES, AND CATASTROPHIC INDUSTRIAL ACCIDENTS PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of domestic terrorism, earthquakes, and/or a catastrophic industrial accident.

Your policy provides coverage for workers compensation losses caused by acts of domestic terrorism, earthquakes, and/or catastrophic industrial accident including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules or regulations.

The premium charge provides funding for the risk of earthquakes, catastrophic industrial accidents, and acts of domestic terrorism. It does not provide funding for acts of foreign terrorism as that term is defined in the Foreign Terrorism Premium Endorsement (WC 00 04 22), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- Domestic Terrorism:  All acts of terrorism, certified (as defined in the Terrorism Risk Insurance Act of 2002), or non-certified, that are outside the scope of Foreign Terrorism Premium Endorsement (WC 00 04 22), and where aggregate workers compensation losses are in excess of $50 million.

- Earthquake:  The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity where aggregate workers compensation losses from the single event are in excess of $50 million.

- Catastrophic Industrial Accident:  Any single event resulting in aggregate workers compensation losses in excess of $50 million.

**Schedule**

**Payroll**

9775300

**Rate**

Authorized Agent

WC 00 04 21 B (1/08)
3036

## Workers' Compensation and Employers' Liability Policy

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR    72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### FOREIGN TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of foreign terrorism.

Your policy provides coverage for workers compensation losses caused by acts of foreign terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules or regulations.

For purposes of this endorsement, an "act of foreign terrorism" is defined as:

  a.  Any act that is violent or dangerous to human life, property or infrastructure; and

  b.  The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers compensation losses caused by an act of foreign terrorism is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| **State** | **Rate per $100 of payroll** |
|---|---|
| AR | |

Countersigned By _____

WC 00 04 22  (01/06)
3037

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## ARKANSAS AMENDATORY ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Arkansas is shown in Item 3.A. of the Information Page.

### Part Two —— Employers Liability Insurance

**C.   Exclusions**

2.   Is replaced by:

punitive or exemplary damages because of bodily injury to an employee employed in violation of law; punitive or exemplary damages are defined by Arkansas Bulletin No. 4-82 as those damages which are imposed to punish a wrongdoer and to deter others from similar conduct;

### Part Six —— Conditions

**D.   Cancelation is replaced by:**

1.   You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2.   We may cancel this policy. If we cancel because you fail to pay all premium when due, we will mail or deliver to you and to the Arkansas Workers Compensation Commission not less than 10 days advance written notice stating when the cancelation is to take effect. If we cancel for any other reason, we will mail or deliver to you and to the Arkansas Workers Compensation Commission not less than 30 days advance written notice stating when the cancelation is to take effect. Mailing notice to you at your mailing address shown in item 1 of the Information Page will be sufficient notice.

3.   The policy period will end on the day and hour stated in the cancelation notice.

Authorized Agent

**ACE AMERICAN INSURANCE COMPANY**
NCCI CARRIER CODE
**12165**

# EXTENSION OF INFORMATION
## PAGE – CLASSIFICATION

| POLICY NUMBER | |
|---|---|
| Symbol:  WLR     Number:  C4  43 66 05 8 | ☐ New    ☒ Renewal    ☐ Rewrite |
| PREVIOUS POLICY NO. | |
| Symbol:  WLR     Number:  C44485333 | ☐ Individual    ☐ Partnership<br>☒ Corporation    ☐ |

## DELAWARE

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis | Rate | Estimated Premium |
|---|---|---|---|---|
| | | Estimated Total Remuneration | Per $100 of Remuneration | |
| REDACTED | | | | |

Minimum, Estimated and Deposit Premiums are shown on the Information Page.

| | Total State Premium |
|---|---|

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:   03/09/2009                                          (PAGE 1 LAST PAGE)

WC 99 04 .18 (12/05)
3039

Copyright 1987 National Council on Compensation Insurance
**COMPANY COPY**

**Workers' Compensation and Employers' Liability Policy**

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### FOREIGN TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of foreign terrorism.

Your policy provides coverage for workers compensation losses caused by acts of foreign terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules or regulations.

For purposes of this endorsement, an "act of foreign terrorism" is defined as:

a.   Any act that is violent or dangerous to human life, property or infrastructure; and

b.   The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers compensation losses caused by an act of foreign terrorism is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| **State** | **Rate per $100 of payroll** |
|---|---|
| DE | |

Countersigned By _____

WC 00 04 22  (01/06)
3040

## Workers' Compensation and Employers' Liability Policy

| Named Insured | Endorsement Number |
|---|---|
| MOUNTAIRE CORPORATION 1901 NAPA VALLEY DRIVE LITTLE ROCK          AR   72212 | Policy Number Symbol: WLR      Number: C44366058 |

| Policy Period 03-01-2009     TO 03-01-2010 | Effective Date of Endorsement 03-01-2009 |
|---|---|

Issued By (Name of Insurance Company)
ACE AMERICAN INSURANCE COMPANY

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### DELAWARE NONRENEWAL ENDORSEMENT

We may elect not to renew the policy. By certified mail we will mail to you, not less than 60 days advance written notice, when the nonrenewal will take effect. Mailing that notice to you at your mailing address, shown in Item 1 of the Information Page, will be sufficient to prove notice.

Authorized Agent



ISSUING COMPANY
**ACE AMERICAN INSURANCE COMPANY**
NCCI CARRIER CODE
**12165**

# E TENSION OF INFORMATION
## PAGE – CLASSIFICATION

| POLICY NUMBER | ☐ New | ☒ Renewal | ☐ Rewrite |
|---|---|---|---|
| Symbol: **WLR**    Number: **C4 43 66 05 8** | | | |
| PREVIOUS POLICY NO. | ☐ Individual | ☐ Partnership | |
| Symbol: **WLR**    Number: **C44485333** | ☒ Corporation | ☐ | |

## MARYLAND

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis Estimated Total Remuneration | Rate Per $100 of Remuneration | Estimated Premium |
|---|---|---|---|---|
| REDACTED | | | | |
| | | | | |
| Minimum, Estimated and Deposit Premiums are shown on the Information Page. | | **Total State Premium** | | |

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:   **03/09/2009**                                        (PAGE 1 LAST PAGE)

WC 99 04 18 (12/05)                Copyright 1987 National Council on Compensation Insurance
3042                                              **COMPANY COPY**

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR   Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## DOMESTIC TERRORISM, EARTHQUAKES, AND CATASTROPHIC INDUSTRIAL ACCIDENTS PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of domestic terrorism, earthquakes, and/or a catastrophic industrial accident.

Your policy provides coverage for workers compensation losses caused by acts of domestic terrorism, earthquakes, and/or catastrophic industrial accident including workers compensation benefit obligations dictated by state law.  Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules or regulations.

The premium charge provides funding for the risk of earthquakes, catastrophic industrial accidents, and acts of domestic terrorism.  It does not provide funding for acts of foreign terrorism as that term is defined in the Foreign Terrorism Premium Endorsement (WC 00 04 22), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- Domestic Terrorism:  All acts of terrorism, certified (as defined in the Terrorism Risk Insurance Act of 2002), or non-certified, that are outside the scope of Foreign Terrorism Premium Endorsement (WC 00 04 22), and where aggregate workers compensation losses are in excess of $50 million.

- Earthquake:  The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity where aggregate workers compensation losses from the single event are in excess of $50 million.

- Catastrophic Industrial Accident:  Any single event resulting in aggregate workers compensation losses in excess of $50 million.

### Schedule

| Payroll | Rate |
|---|---|
| 2275000 | |

Authorized Agent

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### FOREIGN TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of foreign terrorism.

Your policy provides coverage for workers compensation losses caused by acts of foreign terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules or regulations.

For purposes of this endorsement, an "act of foreign terrorism" is defined as:

a.  Any act that is violent or dangerous to human life, property or infrastructure; and

b.  The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers compensation losses caused by an act of foreign terrorism is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate per $100 of payroll |
|---|---|
| MD | |

Countersigned By _____

WC 00 04 22  (01/06)
3044

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| **Named Insured**<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | **Endorsement Number** |
| | **Policy Number**<br>Symbol: WLR   Number: C44366058 |
| **Policy Period**<br>03-01-2009   **TO** 03-01-2010 | **Effective Date of Endorsement**<br>03-01-2009 |
| **Issued By (Name of Insurance Company)**<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## MARYLAND CANCELLATION AND NONRENEWAL ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Maryland is shown in item 3.A. of the Information Page.

The Cancellation Condition of the policy is replaced by this Condition:

**D. Cancellation and Nonrenewal**

1. You may cancel this policy. You will mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel or nonrenew this policy as follows:

   a. If the policy is cancelled for nonpayment of premium, we will file with the Office of the Maryland Workers Compensation Commission's designee, and mail by certificate of mailing, not less than ten (10) days advance written notice stating when the cancellation will take effect.

   b. If the policy is cancelled for reasons other then nonpayment of premium or if the policy is nonrenewed, we will file with the Office of the Maryland Workers Compensation Commission's designee, and serve by certified mail or personal service upon you, not less than thirty (30) days advance written notice stating when the cancellation or nonrenewal will take effect.

   Mailing this notice to you at your mailing address last known to us will be sufficient to prove notice.

3. The effective dates of the cancellation or nonrenewal are determined as follows:

   a. Except for cancellation for non-payment of premium, the policy period will end on the day and hour stated in the cancellation or nonrenewal notice, or 30 days after the date the notice is received by the Maryland Workers Compensation Commission's designee, whichever date is later.

   b. For cancellation for non-payment of premium, the policy period will end on the day and hour stated in the cancellation notice, or 10 days after the date the notice is received by the Maryland Workers Compensation Commission's designee, whichever date is later.

_____
Authorized Agent

WC 19 06 01C  (10/05) Ptd. in U.S.A.          Copyright 1982, 1983; National Council on Compensation Insurance
3045



ISSUING COMPANY
**ACE AMERICAN INSURAI    COMPANY**
NCCI CARRIER CODE
**12165**

**E' 'ENSION OF INFORMATION
PAGE – CLASSIFICATION**

| POLICY NUMBER | |
|---|---|
| Symbol:  WLR     Number:  C4  43 66 05 B | ☐ New   ☒ Renewal   ☐ Rewrite |

| PREVIOUS POLICY NO. | |
|---|---|
| Symbol:  WLR     Number:  C44485333 | ☐ Individual   ☐ Partnership<br>☒ Corporation   ☐ |

## MAINE

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis | Rate | Estimated Premium |
|---|---|---|---|---|
| | | Estimated Total Remuneration | Per $100 of Remuneration | |
| REDACTED | | | | |

Minimum, Estimated and Deposit Premiums are shown on the Information Page.

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:   03/09/2009                                                (PAGE 1 LAST PAGE)

WC 99 04 18 (12/05)
3046

Copyright 1987 National Council on Compensation Insurance
**COMPANY COPY**

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR    72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### DOMESTIC TERRORISM, EARTHQUAKES, AND CATASTROPHIC INDUSTRIAL ACCIDENTS PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of domestic terrorism, earthquakes, and/or a catastrophic industrial accident.

Your policy provides coverage for workers compensation losses caused by acts of domestic terrorism, earthquakes, and/or catastrophic industrial accident including workers compensation benefit obligations dictated by state law.  Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules or regulations.

The premium charge provides funding for the risk of earthquakes, catastrophic industrial accidents, and acts of domestic terrorism.  It does not provide funding for acts of foreign terrorism as that term is defined in the Foreign Terrorism Premium Endorsement (WC 00 04 22), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- Domestic Terrorism:  All acts of terrorism, certified (as defined in the Terrorism Risk Insurance Act of 2002), or non-certified, that are outside the scope of Foreign Terrorism Premium Endorsement (WC 00 04 22), and where aggregate workers compensation losses are in excess of $50 million.

- Earthquake:  The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity where aggregate workers compensation losses from the single event are in excess of $50 million.

- Catastrophic Industrial Accident:  Any single event resulting in aggregate workers compensation losses in excess of $50 million.

**Schedule**

| Payroll | Rate |
|---|---|
| 53300 | |

_Wally Deel_
Authorized Agent

WC 00 04 21 B (1/08)
3047

**Workers' Compensation and Employers' Liability Policy**

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK         AR   72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: **WLR**    Number: C44366058 |
| Policy Period<br>03-01-2009    **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### FOREIGN TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of foreign terrorism.

Your policy provides coverage for workers compensation losses caused by acts of foreign terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules or regulations.

For purposes of this endorsement, an "act of foreign terrorism" is defined as:

  a.  Any act that is violent or dangerous to human life, property or infrastructure; and

  b.  The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers compensation losses caused by an act of foreign terrorism is shown in Item 4 of the Information Page or in the Schedule below.

<b>Schedule</b>

| State | Rate per $100 of payroll |
|---|---|
| ME | |

Countersigned By _____

WC 00 04 22  (01/08)
3048

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| **Named Insured**<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK      AR    72212 | **Endorsement Number** |
| | **Policy Number**<br>Symbol: WLR    Number: C44366058 |
| **Policy Period**<br>03-01-2009    **TO** 03-01-2010 | **Effective Date of Endorsement**<br>03-01-2009 |
| **Issued By (Name of Insurance Company)**<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### MAINE INSPECTION IMMUNITY ENDORSEMENT
### (TITLE 14 MAINE REVISED STATUTES ANNOTATED SECTION 167)

We, the insurance company, our agents, employees, or service contractors, are not liable for damages from injury, death or loss occurring as a result of any act or omission in the furnishing of or the failure to furnish insurance inspection services related to, in connection with or incidental to the issuance or renewal of a policy of property or casualty insurance.

This exemption from liability does not apply:

A. If the injury, loss or death occurred during the actual performance of inspection services and was proximately caused by our negligence or by the negligence of our agents, employees or service contractors;

B. To any inspection services required to be performed under the provisions of a written service contract or defined loss prevention program;

C. In any action against us, our agents, employees, or service contractors for damages proximately caused by our acts or omissions which are determined to constitute a crime, actual malice or gross negligence; or

D. If we fail to provide this written notice to the insured whenever a policy is issued or when new policy forms are issued upon renewal.

Authorized Agent

Copyright 1982-83, National Council on Compensation Insurance

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>**MOUNTAIRE CORPORATION**<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: **WLR**    Number: **C44366058** |
| Policy Period<br>**03-01-2009**    **TO** 03-01-2010 | Effective Date of Endorsement<br>**03-01-2009** |
| Issued By (Name of Insurance Company)<br>**ACE AMERICAN INSURANCE COMPANY** | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## MAINE CANCELATION AND NONRENEWAL ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Maine is shown in Item 3.A. of the Information Page.

The **Cancelation** Condition of the policy is replaced by this Condition:

**Cancelation**

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2.  We may cancel this policy. We must mail or deliver to you and to the Workers Compensation Board not less than 30 days advance written notice stating when the cancelation is to take effect. Mailing notice to you at your last known address will be sufficient to prove notice.

3.  The policy period will end on the day and hour started in the cancelation notice. If you have obtained a workers compensation and employers liability insurance policy from another insurance company, or have otherwise secured your obligation to provide compensation, and such insurance or other security becomes effective prior to the expiration of the notice period, the policy period will end on the effective date of such other insurance or security.

4.  If this policy has been renewed or has been in effect for 60 days or more, we may cancel only for one of the following reasons:

    a.  Nonpayment of premium;

    b.  Fraud or a material misrepresentation was made in obtaining the policy, continuing the policy or presenting a claim under the policy;

    c.  The risk accepted when the policy was issued has substantially increased;

    d.  Your failure to comply with reasonable loss control recommendations;

    e.  A substantial breach of contractual duties, conditions or warranties under the policy;

    f.  The Superintendent has determined that continuation of the policy could jeopardize our solvency or place us in violation of the law.

**Nonrenewal**
We may elect not to renew the policy. We will mail or deliver to you not less than 30 days advance written notice. A post office certificate of mailing to you at your last know address will be conclusive proof of receipt of that notice on the third calendar day after mailing.

_____<br>Authorized Agent

WC 18 06 03A  (6/95)<br>3050

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| **Named Insured**<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR    72212 | **Endorsement Number** |
| | **Policy Number**<br>Symbol: WLR    Number: C44366058 |
| **Policy Period**<br>03-01-2009    **TO** 03-01-2010 | **Effective Date of Endorsement**<br>03-01-2009 |
| **Issued By (Name of Insurance Company)**<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### MAINE FINAL PREMIUM AUDIT ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Maine is shown in item 3.A. of the Information Page.

Part Five (Premium), Condition E, Final Premium, and Condition G, Audit, are changed by adding these conditions:

**E. Final Premium**

We are required by Maine regulation to establish our final premium not later than 120 days after the policy period ends.

If we are unable to examine and audit your records because of your failure to cooperate, we will mail advance written notice to you stating the reasons for our inability to establish the final premium. Your final premium will be established no later than 120 days from the time we are able to complete the examination and audit of your records.

If we have not established the final premium within the 120-day time limitation, we may not bill or collect any additional premium that exceeds the latest billed premium for the policy period.

**G. Audit**

You may request a final premium audit to determine whether you are entitled to a refund, if we have not established the final premium within the 120-day time limit. You will mail or deliver written notice to us requesting the audit.

_____
Authorized Agent

Copyright 1988  National Council on Compensation Insurance.

## Workers' Compensation and Employers' Liability Policy

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR     Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### MAINE NOTICE OF FILING OF FIRST REPORTS OF INJURY WITHIN SEVEN DAYS

This endorsement applies only to the insurance provided by this policy because Maine is shown in Item 3.A of the Information Page.

Employer's First Report of Occupational Injury or Disease, form WCB-1, required to be filed for injuries arising out of and in the course of an employee's employment that has caused the employee to lose a day's work shall be reported to and received by the Workers' Compensation Board within SEVEN days after the employer receives notice or knowledge of the injury, as provided by 39-A M.R.S.A. sec. 303. First Reports of Injury can be mailed, electronically submitted or faxed to the Workers' Compensation Board at 207-287-5895.

Contact us immediately if an injury occurs which may be required to be reported to the Workers' Compensation Board.

_____
Authorized Agent

WC 18 06 06 (04/99)  Ptd. in U.S.A.
3052

| Workers' Compensation and Employers' Liability Policy | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## MAINE SUPPLEMENTAL BENEFITS FUND ENDORSEMENT

### This endorsement changes the policy. Please read it carefully.

This endorsement applies only to the insurance provided by the policy because Maine is shown in Item 3.A. of the Information Page.

We are required by the Maine Supplemental Benefits Fund, Chapter 448, to collect a surcharge for this policy to fund payments made in accordance with the reimbursement provisions of Section 355 of Title 39A. Supplementary assessments may be levied during this policy period if exigent conditions arise and the balance in the fund is inadequate to discharge reimbursement in a timely fashion. The Maine Supplemental Benefits Fund Oversight Committee will determine the premium surcharge and the Policyholders will be noticed accordingly. The surcharge applies to standard premium after application of premium credits for deductibles up to $5,000. The premium subject to surcharge will not be further reduced by premium credits for deductibles in excess of $5,000. The premium subject to surcharge is not subject to premium discount and expense constant. The surcharge is calculated for retrospectively rated policies in the same manner as it is calculated for large deductible policies, however, there will be no application of discount premium credits for retrospectively rated policies.

Schedule

Surcharge: <u>0.79%</u>

Authorized Agent

WC 18 06 07C (01/07)
3053



**ISSUING COMPANY**
**ACE AMERICAN INSURA**   **COMPANY**
NCCI CARRIER CODE
**12165**

**E** **TENSION OF INFORMATION**
**PAGE – CLASSIFICATION**

**POLICY NUMBER**
Symbol:  WLR     Number:  C4  43 66 05 8

**PREVIOUS POLICY NO.**
Symbol:  WLR     Number:  C44485333

☐ New     ☒ Renewal     ☐ Rewrite

☐ Individual     ☐ Partnership
☒ Corporation     ☐

## NORTH CAROLINA

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis | Rate | Estimated Premium |
|---|---|---|---|---|
| | | Estimated Total Remuneration | Per $100 of Remuneration | |
| REDACTED | | | | |

Minimum, Estimated and Deposit Premiums are shown on the Information Page.

**Total State Premium**

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:   03/09/2009                                   (PAGE 1 LAST PAGE)

WC 99 04 18 (12/05)
3054

Copyright 1987 National Council on Compensation Insurance
**COMPANY COPY**

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## DOMESTIC TERRORISM, EARTHQUAKES, AND CATASTROPHIC INDUSTRIAL ACCIDENTS PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of domestic terrorism, earthquakes, and/or a catastrophic industrial accident.

Your policy provides coverage for workers compensation losses caused by acts of domestic terrorism, earthquakes, and/or catastrophic industrial accident including workers compensation benefit obligations dictated by state law.  Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules or regulations.

The premium charge provides funding for the risk of earthquakes, catastrophic industrial accidents, and acts of domestic terrorism.  It does not provide funding for acts of foreign terrorism as that term is defined in the Foreign Terrorism Premium Endorsement (WC 00 04 22), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- Domestic Terrorism:  All acts of terrorism, certified (as defined in the Terrorism Risk Insurance Act of 2002), or non-certified, that are outside the scope of Foreign Terrorism Premium Endorsement (WC 00 04 22), and where aggregate workers compensation losses are in excess of $50 million.

- Earthquake:  The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity where aggregate workers compensation losses from the single event are in excess of $50 million.

- Catastrophic Industrial Accident:  Any single event resulting in aggregate workers compensation losses in excess of $50 million.

### Schedule

| Payroll | Rate |
|---|---|
| 70133400 | |

Authorized Agent

WC 00 04 21 B  (1/08)
3055

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| ·Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK           AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009   **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### FOREIGN TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of foreign terrorism.

Your policy provides coverage for workers compensation losses caused by acts of foreign terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules or regulations.

For purposes of this endorsement, an "act of foreign terrorism" is defined as:

a.  Any act that is violent or dangerous to human life, property or infrastructure; and

b.  The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers compensation losses caused by an act of foreign terrorism is shown in Item 4 of the Information Page or in the Schedule below.

**Schedule**

| **State** | **Rate per $100 of payroll** |
|---|---|
| NC | |

Countersigned By _____

WC 00 04 22  (01/06)
3056

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
| | Policy Number<br>Symbol: **WLR**      Number: **C44366058** |
| Policy Period<br>03-01-2009    **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE  AMERICAN  INSURANCE  COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## NORTH CAROLINA AMENDED COVERAGE ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because North Carolina is shown in item 3.A. of the Information Page.

The **Cancelation** Condition of the policy is replaced by this Condition:

**D.  Cancelation and Nonrenewal**

1.  You may cancel this policy.

    If you cancel this policy, you must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2.  You may cancel this policy.

    (a) If this policy has been in effect for fewer than 60 days and is not a renewal policy, we may cancel this policy for any reason by giving you at least 30 days prior written notice of cancelation and the reasons for cancelation by registered or certified mail, return receipt requested.

    (b) If this policy has been in effect for at least 60 days or is a renewal policy, we may not cancel this policy without your prior written consent, except for any one of the following reasons:

    (1)  Nonpayment of premium in accordance with the policy terms.

    (2)  An act or omission by you or your representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining the policy, continuing the policy, or presenting a claim under the policy.

    (3)  Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by you and us at the time of assumption of the risk.

    (4)  Substantial breach of contractual duties, conditions, or warranties that materially affects the insurability of the risk.

    (5)  A fraudulent act against us by you or your representative that materially affects the insurability of the risk.

    (6)  Willful failure by you or your representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us.

    (7)  Loss of facultative reinsurance or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30.

    (8)  Your conviction of a crime arising out of acts that materially affect the insurability of the risk.

    (9)  A determination by the Commissioner that the continuation of this policy would place us in violation of the laws of North Carolina.

    (10) You fail to meet the requirements contained in our corporate charter, articles of incorporation, or bylaws, when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

(c) If we cancel for any of the reasons listed in paragraph (b), we must provide you with at least 15 days prior written notice of cancelation stating the precise reason for cancelation.  We must provide this notice by registered or certified mail, return receipt requested, to you and any other person designated in the policy to receive notice of cancelation at the addresses shown in the policy or, if not indicated in the policy, at the last known addresses.  Whenever notice of cancelation is required to be given by registered or certified mail, cancelation will not be effective unless and until that method i s employed and completed.  Failure to send notice as provided in this paragraph to any other person designated in the policy to receive notice of cancelation invalidates the cancelation only as to that other person's interest.

(d) Cancelation for nonpayment of premium is not effective if the amount due is paid before the effective date stated in the notice of cancelation.

3. We may refuse to renew this policy.

(a) If this policy is for a term of one year or less, we must provide you with notice of nonrenewal at least 45 days prior to the expiration date of the policy.

(b) If this policy is for a term of more than one year or for an indefinite term, we must provide you with notice of nonrenewal at least 45 days prior to the anniversary date of the policy.

(c) The notice of nonrenewal must state the precise reason for nonrenewal. Failure to send this notice, as provided in paragraphs 3 and 5, to any other person designated in the policy to receive this notice invalidates the nonrenewal only as to that other person's interest.

(d) Any nonrenewal attempted or made that is not in compliance with paragraphs (a), (b) and (c) is not effective. Paragraphs (a), (b) and (c) do not apply if you have obtained insurance elsewhere, have accepted replacement coverage, or have requested or agreed to nonrenewal.

4. Whenever we lower coverage limits, raise deductibles, or raise premium rates for reasons within our exclusive control and other than at your request, we will mail you written notice of the change at least 30 days in advance of the effective date of the change.  As used in this paragraph, the phrase, "reasons within our exclusive control" does not mean experience modification changes, exposure changes, or loss cost rate changes.

5. We must provide the notice required by paragraphs 3 and 4 by mail to you and any other person designated in the policy to receive this notice at the addresses shown in the policy or, if not indicated in the policy, at the last known addresses.  Mailing copies of the notice by regular first-class mail satisfies the notice requirements of paragraphs 3, 4 and 5.

6. We will also send copies of the notice required by this endorsement to the agent or broker of record, though failure to send copies of the notice to the agent or broker of record will not invalidate a cancelation or nonrenewal.  Mailing copies of the notice by regular first-class mail to the agent or broker of record satisfies the requirements of this paragraph.

Authorized Agent

**Workers' Compensation and Employers' Liability Policy**

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK              AR    72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## DEDUCTIBLE ENDORSEMENT
## STATE OF NORTH CAROLINA

1.  This agreement is between you and us. It does not change the rights of others under this Policy.

2.  We will pay and you will reimburse us for all payments we make on your behalf as benefits under Part One - Workers' Compensation Insurance of this Policy or as damages under Part Two - Employers' Liability Insurance of this Policy up to the amount of the Deductible Limits shown in the Schedule.

3.  When used in this endorsement:

    "Incident Deductible Limit" shall mean the amount of benefits or damages because of (a) bodily injury by disease applied separately to each employee or (b) bodily injury by accident applied separately to each occurence, to which this insurance applies and for which you have a duty to reimburse us under this Policy.

    "Aggregate Deductible Limit" shall mean the most you must reimburse us for the sum of all benefits or damages to which this insurance applies.

4.  Your failure to reimburse us for such payments could make the policy subject to cancellation. We must mail by registered or certified mail not less than 30 days advance written notice to you stating when the cancelation is to take effect.

5.  We will provide investigation, administration, adjustment and settlement services, and shall provide the defense of claims or suits for which this Policy provides coverage.

6.  You will reimburse us for all expenses, costs and interest which we pay in connection with the investigation, administration, adjustment, settlement or defense of any claim or suit arising from coverages under this Policy.
    Check one box only:

    ☐ These expenses, costs and interest are separate from, and in addition to, the Incident Deductible Limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 11.

    ☒ These expenses, costs and interest are part of, and included in , the Incident Deductible limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 11.

7.  You will also reimburse us for all assessments which are not included in the Policy premium that we may incur including those based on the total amounts associated with the Deductible obligation of this Endorsement. These assessments are also separate from, and in addition to, the Aggregate Deductible Limit shown below in the Schedule in Paragraph 11.

8.  Under Part Two - Employers' Liability Insurance, the terms of this Policy, including those with respect to (a) our right and duty with respect to the defense of suits and (b) your duties in the event of an injury, apply irrespective of the application of any Deductible Limit. The Deductible Limit is within, and does not increase, the applicable Limits of Liability under Part Two - Employers' Liability Insurance of this Policy.

9.  If we cancel this policy, the Aggregate Deductible Limit shown (if any) in the Schedule will be reduced to a pro-rata amount based on the time this Policy was in force. If you cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will not be reduced if you cancel this Policy for any reason other than retiring from business. If you cancel this Policy as a result of your retiring from business, the Aggregate Deductible Limit will be reduced to a pro-rata amount based on the time this Policy was in force.

**CONTINUED ON REVERSE SIDE**

**10. Cancelation**

Paragraph D. Cancelation of PART SIX - CONDITIONS of the Policy is extended to include the following Item 5;

5.  If you fail to deliver an amended or additional or substitute collateral required by us to secure your obligations under this Deductible Endorsement, we will cancel this policy in accordance with items 2. and 3 above.

**11.**                                    **SCHEDULE**

Incident Deductible Limit                    Aggregate Deductible Limit

$__                                         $_____

12. All terms, conditions, and limitations of this Policy not inconsistent with this Endorsement continue to apply.

Named Insured: MOUNTAIRE CORPORATION _____

Accepted and Agreed to by: _____

Title: _____

_____
Authorized Agent



ISSUING COMPANY
**ACE AMERICAN INSURANCE COMPANY**
NCCI CARRIER CODE
**12165**

**EXTENSION OF INFORMATION
PAGE – CLASSIFICATION**

| POLICY NUMBER | |
|---|---|
| Symbol: WLR    Number: C4  43 66 05 8 | ☐ New   ☒ Renewal   ☐ Rewrite |
| PREVIOUS POLICY NO. | |
| Symbol: WLR    Number: C44485333 | ☐ Individual   ☐ Partnership<br>☒ Corporation   ☐ |

## NORTH DAKOTA

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis | Rate | Estimated Premium |
|---|---|---|---|---|
| | | Estimated Total Remuneration | Per $100 of Remuneration | |
| REDACTED | | | | |

Minimum, Estimated and Deposit Premiums are shown on the Information Page.  **Total State Premium**

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:   03/09/2009                                         (PAGE 1 LAST PAGE)

WC 99 04 18 (12/05)                     Copyright 1987 National Council on Compensation Insurance
   3061                                              **COMPANY COPY**

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## EMPLOYERS LIABILITY ENDORSEMENT
### (STOP-GAP COVERAGE)

This endorsement applies only to your operations in the State(s) of ND

Part One — Workers Compensation Insurance does not apply in these states.

Part Two — Employers Liability Insurance applies in these states as though they were shown in item 3A of the Information Page.

Item C — Exclusions, under Part Two — Employers Liability Insurance is changed by adding the following:

This insurance does not cover:

13. bodily injury to any member of the flying crew of any aircraft;

14. bodily injury to an employee when you are deprived of common law defenses or are subject to penalty because of your failure to secure your obligations under the workers compensation law of any state shown in the Schedule or otherwise fail to comply with that law.

15. Claims against you if you are subject to the requirements of any workers compensation or occupational disease law and you:

— are deprived of a defense or subjected to a penalty because you fail to make premium payments or to comply with other provisions of the law; or

— are not legally qualified self-insured or a member or subscriber in good standing of a Fund established by a state or other governmental body for workers compensation and occupational disease insurance.

G.   Limits of Liability under Part Two—Employers Liability Insurance is replaced by the following:

G.   Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in the Schedule. They apply as explained below.

1. Bodily Injury By Accident. The limit shown for "Bodily Injury by Accident — Each Accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury By Disease. The limit shown for "Bodily Injury by Disease — Policy Limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "Bodily Injury by Disease — Each Employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

**EMPLOYERS LIABILITY ENDORSE. .ENT**
**(STOP-GAP COVERAGE)**
**Continued**

**Limits of Liability**

| | | |
|---|---|---|
| Bodily Injury By Accident | $ 1,000,000 | each accident |
| Bodily Injury By Disease | $ 1,000,000 | policy limit |
| Bodily Injury By Disease | $ 1,000,000 | each employee |

Authorized Agent

3063

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK     AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009   **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## NORTH DAKOTA AMENDATORY ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because North Dakota is shown in item 3.A. of the Information Page.

Part Five (Premium), Condition E, Final Premium, is changed by adding these conditions:

**E. Final Premium**

We are required by North Dakota regulation to establish our final premium not later than 180 days after the policy period ends.

If we are unable to examine and audit your records because of your failure to cooperate, we will mail advance written notice to you stating the reasons for our inability to establish the final premium. Your final premium will be established no later than 180 days from the time we are able to complete the examination and audit of your records.

If we have not established the final premium within the 180-day time limitation, we may not bill or collect any additional premium that exceeds the latest billed premium for the policy period.

Condition D, Cancellation, Part Six Conditions, is replaced by the following:

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect. You may also cancel by returning this policy to us or to any of our authorized agents.

2. We may cancel this policy. We must mail or deliver to you not less than thirty days advance written notice stating when the cancellation is to take effect. But if we are canceling because you failed to pay your premium or because you failed to furnish the payroll information that we requested, we will give you only ten days notice. Mailing or delivering that notice to you at your mailing address shown in item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice or on the day and hour you returned the policy to us or to one of our authorized agents.

4. Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

_Wally Dell_
Authorized Agent

CKE-8T02 (Ed. 4/93) Ptd. in U.S.A.<br>3064     Copyright 1988 National Council on Compensation Insurance.     WC 99 06 46

### Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| **Named Insured**<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK            AR    72212 | **Endorsement Number** |
| | **Policy Number**<br>Symbol: WLR    Number: C44366058 |
| **Policy Period**<br>03-01-2009    **TO** 03-01-2010 | **Effective Date of Endorsement**<br>03-01-2009 |
| **Issued By (Name of Insurance Company)**<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## DEDUCTIBLE ENDORSEMENT
### STATE OF NORTH DAKOTA

#### Employers' Liability Insurance

1.  This agreement is between you and us. It does not change the rights of others under this Policy.

2.  We will pay and you will reimburse us for all payments we make on your behalf as damages under Part Two - Employers' Liability Insurance of this Policy up to the amount of the Deductible Limits shown in the Schedule.

3.  When used in this Endorsement:

    "Incident Deductible Limit" shall mean the amount of damages because of (a) bodily injury by disease applied separately to each employee or (b) bodily injury by accident applied separately to each occurrence, to which this insurance applies and for which you have a duty to reimburse us under this Policy.

    "Aggregate Deductible Limit" shall mean the most you must reimburse us for the sum of all damages to which this insurance applies.

4.  We will provide investigation, administration, adjustment and settlement services, and shall provide the defense of claims or suits for which this Policy provides coverage.

5.  You will reimburse us for all expenses, costs and interest which we pay in connection with the investigation, administration, adjustment, settlement or defense of any claim or suit arising from coverages under this Policy.

    Check one box only:

    [ ]   These expenses, costs and interest are separate from, and in addition to, the Incident Deductible Limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

    [X]   These expenses, costs and interest are part of, and included in, the Incident Deductible limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

6.  You will also reimburse us for all assessments which are not included in the Policy premium that we may incur including those based on the total amounts associated with the Deductible obligation of this Endorsement. These assessments are also separate from, and in addition to, the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

7.  Under Part Two - Employers' Liability Insurance, the terms of this Policy, including those with respect to (a) our right and duty with respect to the defense of suits and (b) your duties in the event of an injury, apply irrespective of the application of any Deductible Limit. The Deductible Limit is within, and does not increase, the applicable Limits of Liability under Part Two - Employers' Liability Insurance of this Policy.

8.  If we cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will be reduced to a pro-rata amount based on the time this Policy was in force. If you cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will not be reduced if you cancel this Policy for any reason other than retiring from business. If you cancel this Policy as a result of your retiring from business, the Aggregate Deductible Limit will be reduced to a pro-rata amount based on the time this Policy was in force.

**CONTINUED ON REVERSE SIDE**

9.  Cancelation

Paragraph D. Cancelation of PART SIX - CONDITIONS of the Policy is extended to include the following Item 5;

5.  If you fail to deliver an amended or additional or substitute collateral required by us to secure your obligations under this Deductible Endorsement, or if you fail to reimburse us for any of your obligations under this Deductible Endorsement, we may cancel this Policy in accordance with items 2., and 3., and 4. above.

10.                                          SCHEDULE

     Incident Deductible Limit                              Aggregate Deductible Limit

     $ _____ 2,000,000                                  $ _____

11. All terms, conditions, and limitations of this Policy not inconsistent with this Endorsement continue to apply.

     Named Insured: <u>MOUNTAIRE CORPORATION</u> _____

     Accepted and Agreed to by: _____

               Title: _____

                                                _____
                                                Authorized Agent



ISSUING COMPANY
**ACE AMERICAN INSURAI     COMPANY**
NCCI CARRIER CODE
**12165**

**EXTENSION OF INFORMATION
PAGE – CLASSIFICATION**

POLICY NUMBER
Symbol: **WLR**     Number: **C4  43 66 05 8**

PREVIOUS POLICY NO.
Symbol: **WLR**     Number: **C44485333**

☐ New   ☒ Renewal   ☐ Rewrite

☐ Individual   ☐ Partnership
☒ Corporation   ☐

## OHIO

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis | Rate | Estimated Premium |
|---|---|---|---|---|
| | | Estimated Total Remuneration | Per $100 of Remuneration | |
| REDACTED | | | | |
| Minimum, Estimated and Deposit Premiums are shown on the Information Page. | | Total State Premium | | |

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:   03/09/2009                                    (PAGE 1 LAST PAGE)

WC 99 04 18 (12/05)
3067

Copyright 1987 National Council on Compensation Insurance
**COMPANY COPY**

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009   **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## STOP GAP COVERAGE - OHIO
### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement applies only to work in the State of Ohio.

A.  Part One (Workers' Compensation Insurance) does not apply to work in the State of Ohio.

B.  Part Two (Employer's Liability Insurance) applies to work in Ohio as though it was shown in item 3A of the Information Page.

C.  Part Two (Employers Liability Insurance) C. Exclusions 5. is deleted in its entirety and replaced with:

5.  Bodily injury intentionally caused or aggravated by you. However:

   a.  This exclusion does not apply to bodily injury alleged or determined to have been committed by you or at your direction with the belief that an injury is substantially certain to occur; and

   b.  We agree to defend any claim, proceeding or suit against you for bodily injury alleged to be intentionally caused or aggravated by you.

D.  Part Two (Employers Liability Insurance) C. Exclusions is changed by adding these exclusions:

13.  bodily injury to any member of the flying crew of any aircraft.

14.  bodily injury to any employee when you are deprived of common law defenses or are subject to penalty because of your failure to secure your obligations under the workers' compensation law of any state or otherwise fail to comply with that law.

15.  claims against you if you are subject to the requirements of any workers' compensation or occupational disease law and you:

   a)  are deprived of a defense or subjected to a penalty because you fail to make premium payments or to comply with other provisions of the law; or

   b)  are not a legally qualified self-insurer or a member or subscriber in good standing of a Fund established by a state or other governmental body for workers' compensation and occupational disease insurance.

E.  Part Two (Employers Liability Insurance) G. Limits of Liability is deleted in its entirety and replaced with the following:

G.  Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in the Schedule. They apply as explained below.

1.  Bodily Injury by Accident. The limit shown for "Bodily Injury by Accident - Each Accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2.  Bodily Injury by Disease. The limit shown for "Bodily Injury by Disease Policy Limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "Bodily Injury by Disease - Each Employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from bodily injury by accident.

3.  We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

Limits of Liability

| | | |
|---|---|---|
| Bodily Injury by Accident | $ 1,000,000 | each accident |
| Bodily Injury by Disease | $ 1,000,000 | policy limit |
| Bodily Injury by Disease | $ 1,000,000 | each employee |

Authorized Agent

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## OHIO CANCELLATION AND NONRENEWAL ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Ohio is shown in item 3.A of the Information Page.

The Cancellation Condition of the policy is replaced by these two Conditions.

**Cancellation**

1.  You may cancel this policy. You will mail or deliver advance written notice to us, stating when the cancellation is to take effect.

2.  We may cancel this policy. We will mail or deliver to you, by registered mail, not less than 30 days advance written notice stating when the cancellation is to take effect. Mailing this notice to you at your mailing address as shown in item 1 of the Information Page will be sufficient to prove notice.

3.  The policy period will end on the day and hour stated in the cancellation notice.

**Nonrenewal**

1.  We may elect not to renew the policy. We will mail to you not less than 30 days advance written notice stating when the nonrenewal will take effect. Mailing that notice to you at your mailing address shown in item 1 of the Information Page will be sufficient to prove notice.

_Wally Dill_

Authorized Agent

CKE-8T19 (Ed. 4/93) Ptd. in U.S.A.          Copyright 1982-83  National Council on Compensation Insurance.          WC 99 06 47
3070

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK     AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR     Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### DEDUCTIBLE ENDORSEMENT
### STATE OF OHIO

#### Employers' Liability Insurance

1.  This agreement is between you and us. It does not change the rights of others under this Policy.

2.  We will pay and you will reimburse us for all payments we make on your behalf as damages under Part Two - Employers' Liability Insurance of this Policy up to the amount of the Deductible Limits shown in the Schedule.

3.  When used in this Endorsement:

    "Incident Deductible Limit" shall mean the amount of damages because of (a) bodily injury by disease applied separately to each employee or (b) bodily injury by accident applied separately to each occurrence, to which this insurance applies and for which you have a duty to reimburse us under this Policy.

    "Aggregate Deductible Limit" shall mean the most you must reimburse us for the sum of all damages to which this insurance applies.

4.  We will provide investigation, administration, adjustment and settlement services, and shall provide the defense of claims or suits for which this Policy provides coverage.

5.  You will reimburse us for all expenses, costs and interest which we pay in connection with the investigation, administration, adjustment, settlement or defense of any claim or suit arising from coverages under this Policy.

    Check one box only:

    ☐ These expenses, costs and interest are separate from, and in addition to, the Incident Deductible Limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

    ☒ These expenses, costs and interest are part of, and included in, the Incident Deductible limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

6.  You will also reimburse us for all assessments which are not included in the Policy premium that we may incur including those based on the total amounts associated with the Deductible obligation of this Endorsement. These assessments are also separate from, and in addition to, the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

7.  Under Part Two - Employers' Liability Insurance, the terms of this Policy, including those with respect to (a) our right and duty with respect to the defense of suits and (b) your duties in the event of an injury, apply irrespective of the application of any Deductible Limit. The Deductible Limit is within, and does not increase, the applicable Limits of Liability under Part Two - Employers' Liability Insurance of this Policy.

8.  If we cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will be reduced to a pro-rata amount based on the time this Policy was in force. If you cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will not be reduced if you cancel this Policy for any reason other than retiring from business. If you cancel this Policy as a result of your retiring from business, the Aggregate Deductible Limit will be reduced to a pro-rata amount based on the time this Policy was in force.

**CONTINUED ON REVERSE SIDE**

9.  Cancelation

Paragraph D. Cancelation of PART SIX - CONDITIONS of the Policy is extended to include the following Item 5;

5.  If you fail to deliver an amended or additional or substitute collateral required by us to secure your obligations under this Deductible Endorsement, or if you fail to reimburse us for any of your obligations under this Deductible Endorsement, we may cancel this Policy in accordance with items 2., and 3., and 4. above.

10.                                          SCHEDULE

| Incident Deductible Limit | Aggregate Deductible Limit |
|---|---|
| $ ` 2,000,000 | $ |

11. All terms, conditions, and limitations of this Policy not inconsistent with this Endorsement continue to apply.

Named Insured: MOUNTAIRE CORPORATION

Accepted and Agreed to by:

Title:

_Authorized Agent_



ISSUING COMPANY
**ACE AMERICAN INSURANCE COMPANY**
NCCI CARRIER CODE
**12165**

**EXTENSION OF INFORMATION
PAGE – CLASSIFICATION**

POLICY NUMBER
Symbol: **WLR**   Number: **C4 43 66 05 8**

PREVIOUS POLICY NO.
Symbol: **WLR**   Number: **C44485333**

☐ New   ☒ Renewal   ☐ Rewrite

☐ Individual   ☐ Partnership
☒ Corporation   ☐

## TENNESSEE

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis | Rate | Estimated Premium |
| --- | --- | --- | --- | --- |
| | | Estimated Total Remuneration | Per $100 of Remuneration | |
| **REDACTED** | | | | |

Minimum, Estimated and Deposit Premiums are shown on the Information Page.

**Total State Premium**

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:   03/09/2009

(PAGE 1 LAST PAGE)

WC 99 04 18 (12/05)
3073

Copyright 1987 National Council on Compensation Insurance
**COMPANY COPY**

## Workers' Compensation and Employers' Liability Policy

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## DOMESTIC TERRORISM, EARTHQUAKES, AND CATASTROPHIC INDUSTRIAL ACCIDENTS PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of domestic terrorism, earthquakes, and/or a catastrophic industrial accident.

Your policy provides coverage for workers compensation losses caused by acts of domestic terrorism, earthquakes, and/or catastrophic industrial accident including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules or regulations.

The premium charge provides funding for the risk of earthquakes, catastrophic industrial accidents, and acts of domestic terrorism. It does not provide funding for acts of foreign terrorism as that term is defined in the Foreign Terrorism Premium Endorsement (WC 00 04 22), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- Domestic Terrorism: All acts of terrorism, certified (as defined in the Terrorism Risk Insurance Act of 2002), or non-certified, that are outside the scope of Foreign Terrorism Premium Endorsement (WC 00 04 22), and where aggregate workers compensation losses are in excess of $50 million.

- Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity where aggregate workers compensation losses from the single event are in excess of $50 million.

- Catastrophic Industrial Accident: Any single event resulting in aggregate workers compensation losses in excess of $50 million.

### Schedule

| Payroll | Rate |
|---|---|
| 77100 | |

Authorized Agent

WC 00 04 21 B (1/08)
3074

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: **WLR**    Number: C44366058 |
| Policy Period<br>03-01-2009   **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### FOREIGN TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of foreign terrorism.

Your policy provides coverage for workers compensation losses caused by acts of foreign terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules or regulations.

For purposes of this endorsement, an "act of foreign terrorism" is defined as:

a.  Any act that is violent or dangerous to human life, property or infrastructure; and

b.  The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers compensation losses caused by an act of foreign terrorism is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

**State**

TN

**Rate per $100 of payroll**

Countersigned By _____

WC 00 04 22  (01/06)
3075

---

### Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| **Named Insured**<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK            AR   72212 | **Endorsement Number** |
| | **Policy Number**<br>Symbol: WLR      Number: C44366058 |
| **Policy Period**<br>03-01-2009    **TO** 03-01-2010 | **Effective Date of Endorsement**<br>03-01-2009 |
| **Issued By (Name of Insurance Company)**<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## TENNESSEE PENDING LOSS COST AND ASSIGNED RISK RATE ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Tennessee is shown in Item 3.A. of the Information Page.

The premium for the policy is determined (in part) by the product of loss costs developed and filed by the National Council on Compensation Insurance, Inc., and/or an assigned risk loss cost multiplier developed by the Tennessee Department of Commerce and Insurance.

A loss cost filing and/or a change to the assigned risk loss cost multiplier is being considered by the proper regulatory authority. The approval and/or modification of either (or both) may result in rates different from the rates shown on the policy. If it does, we will issue an endorsement to show the new rates and their effective date.

_____
Authorized Agent

WC 41 04 02 (7/03)
3076



ISSUING COMPANY
**ACE AMERICAN INSURANCE   COMPANY**
NCCI CARRIER CODE
12165

# EXTENSION OF INFORMATION
# PAGE – CLASSIFICATION

POLICY NUMBER
Symbol:  WLR     Number:  C4  43 66 05 8

PREVIOUS POLICY NO.
Symbol:  WLR     Number:  C44485333

☐ New    ☒ Renewal    ☐ Rewrite

☐ Individual      ☐ Partnership
☒ Corporation    ☐

## WASHINGTON

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis Estimated Total Remuneration | Rate Per $100 of Remuneration | Estimated Premium |
|---|---|---|---|---|
| REDACTED | | | | |

Minimum, Estimated and Deposit Premiums are shown on the Information Page. | Total State Premium |

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:   03/09/2009                                    (PAGE 1 LAST PAGE)

WC 99 04 18 (12/05)                 Copyright 1987 National Council on Compensation Insurance
3077                                         COMPANY COPY

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR      Number: C44366058 |
| Policy Period<br>03-01-2009   **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the Information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## EMPLOYERS LIABILITY ENDORSEMENT
## (STOP-GAP COVERAGE)

This endorsement applies only to your operations in the State(s) of WA _____

Part One —— Workers Compensation Insurance does not apply in these states.

Part Two —— Employers Liability Insurance applies in these states as though they were shown in item 3A of the Information Page.

Item C —— Exclusions, under Part Two —— Employers Liability Insurance is changed by adding the following:

This insurance does not cover:

13. bodily injury to any member of the flying crew of any aircraft;

14. bodily injury to an employee when you are deprived of common law defenses or are subject to penalty because of your failure to secure your obligations under the workers compensation law of any state shown in the Schedule or otherwise fail to comply with that law.

15. Claims against you if you are subject to the requirements of any workers compensation or occupational disease law and you:

—— are deprived of a defense or subjected to a penalty because you fail to make premium payments or to comply with other provisions of the law; or

—— are not legally qualified self-insured or a member or subscriber in good standing of a Fund established by a state or other governmental body for workers compensation and occupational disease insurance.

G. Limits of Liability under Part Two——Employers Liability Insurance is replaced by the following:

G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in the Schedule. They apply as explained below.

1. Bodily Injury By Accident. The limit shown for "Bodily Injury by Accident —— Each Accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury By Disease. The limit shown for "Bodily Injury by Disease —— Policy Limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "Bodily Injury by Disease —— Each Employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. **We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.**

**EMPLOYERS LIABILITY ENDORSMENT**
**(STOP-GAP COVERAGE)**
**Continued**

Limits of Liability

| | | |
|---|---|---|
| Bodily Injury By Accident | $ 1,000,000 | each accident |
| Bodily Injury By Disease | $ 1,000,000 | policy limit |
| Bodily Injury By Disease | $ 1,000,000 | each employee |

Authorized Agent

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| **Named Insured**<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR   72212 | **Endorsement Number** |
| | **Policy Number**<br>Symbol: WLR    Number: C44368058 |
| **Policy Period**<br>03-01-2009   **TO** 03-01-2010 | **Effective Date of Endorsement**<br>03-01-2009 |
| **Issued By (Name of Insurance Company)**<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### DEDUCTIBLE ENDORSEMENT
### STATE OF <u>WASHINGTON</u>

#### Employers' Liability Insurance

1.  This agreement is between you and us. It does not change the rights of others under this Policy.

2.  We will pay and you will reimburse us for all payments we make on your behalf as damages under Part Two - Employers' Liability Insurance of this Policy up to the amount of the Deductible Limits shown in the Schedule.

3.  When used in this Endorsement:

    "Incident Deductible Limit" shall mean the amount of damages because of (a) bodily injury by disease applied separately to each employee or (b) bodily injury by accident applied separately to each occurrence, to which this insurance applies and for which you have a duty to reimburse us under this Policy.

    "Aggregate Deductible Limit" shall mean the most you must reimburse us for the sum of all damages to which this insurance applies.

4.  We will provide investigation, administration, adjustment and settlement services, and shall provide the defense of claims or suits for which this Policy provides coverage.

5.  You will reimburse us for all expenses, costs and interest which we pay in connection with the investigation, administration, adjustment, settlement or defense of any claim or suit arising from coverages under this Policy.

    Check one box only:

    ☐  These expenses, costs and interest are separate from, and in addition to, the Incident Deductible Limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

    ☒  These expenses, costs and interest are part of, and included in, the Incident Deductible limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

6.  You will also reimburse us for all assessments which are not included in the Policy premium that we may incur including those based on the total amounts associated with the Deductible obligation of this Endorsement. These assessments are also separate from, and in addition to, the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

7.  Under Part Two - Employers' Liability Insurance, the terms of this Policy, including those with respect to (a) our right and duty with respect to the defense of suits and (b) your duties in the event of an injury, apply irrespective of the application of any Deductible Limit. The Deductible Limit is within, and does not increase, the applicable Limits of Liability under Part Two - Employers' Liability Insurance of this Policy.

8.  If we cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will be reduced to a pro-rata amount based on the time this Policy was in force. If you cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will not be reduced if you cancel this Policy for any reason other than retiring from business. If you cancel this Policy as a result of your retiring from business, the Aggregate Deductible Limit will be reduced to a pro-rata amount based on the time this Policy was in force.

**CONTINUED ON REVERSE SIDE**

9. **Cancelation**

   Paragraph D. Cancelation of PART SIX - CONDITIONS of the Policy is extended to include the following Item 5;

   5. If you fail to deliver an amended or additional or substitute collateral required by us to secure your obligations under this Deductible Endorsement, or if you fail to reimburse us for any of your obligations under this Deductible Endorsement, we may cancel this Policy in accordance with items 2., and 3., and 4. above.

10.                                          **SCHEDULE**

   Incident Deductible Limit                              Aggregate Deductible Limit

   $_____2,000,000____                                 $_____

11. All terms, conditions, and limitations of this Policy not inconsistent with this Endorsement continue to apply.


          Named Insured: MOUNTAIRE CORPORATION_____

          Accepted and Agreed to by:_____

                      Title:_____


                                                          _Wally Del_____
                                                          **Authorized Agent**



ACE AMERICAN INSURAN   COMPANY
NCCI CARRIER CODE
12165

# EXTENSION OF INFORMATION
# PAGE – CLASSIFICATION

**POLICY NUMBER**
Symbol: WLR   Number: C4 43 66 05 8

☐ New  ☒ Renewal  ☐ Rewrite

**PREVIOUS POLICY NO.**
Symbol: WLR   Number: C44485333

☐ Individual  ☐ Partnership
☒ Corporation  ☐

## WYOMING

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis — Estimated Total Remuneration | Rate — Per $100 of Remuneration | Estimated Premium |
|---|---|---|---|---|
| REDACTED | | | | |

| | | | |
|---|---|---|---|
| Minimum, Estimated and Deposit Premiums are shown on the Information Page. | **Total State Premium** | | **15.** |

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:  03/09/2009

(PAGE 1 LAST PAGE)

WC 99 04 18 (12/05)
3082

Copyright 1987 National Council on Compensation Insurance
**COMPANY COPY**

**Workers' Compensation and Employers' Liability Policy**

| Named Insured | Endorsement Number |
|---|---|
| MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK            AR    72212 | **Policy Number**<br>Symbol: WLR    Number: C44366058 |
| **Policy Period**<br>03-01-2009    **TO** 03-01-2010 | **Effective Date of Endorsement**<br>03-01-2009 |
| **Issued By (Name of Insurance Company)**<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## WYOMING AMENDATORY ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Wyoming is shown in Item 3.A of the Information Page.

### PART TWO – EMPLOYERS LIABILITY INSURANCE

D.      We Will Defend is amended by addition of the following:

The tender of policy limits before judgment or settlement does not relieve us of the duty to defend.

### PART SIX -- CONDITIONS

D.      Cancelation is amended to read:

1.      You may cancel this policy. You must mail or deliver advance written notice to us, stating when the cancelation is to take effect.

2.      We may cancel this policy. If the policy has been in effect for 60 days or more, or is a renewal of a previously existing policy for a term longer than 60 days, we may cancel only for one of the following reasons:

a.      Failure to pay premium when due.
b.      The policy was issued because of a material misrepresentation of fact.
c.      There is a substantial change in the risk assumed, except to the extent that we should have reasonably foreseen or contemplated the change at the time that the policy was written.
d.      There is a substantial breach of contractual duties, conditions or warranties.

3.      We will deliver to you and your agent, or mail to you and your agent written notice of cancelation at your last known address. Proof of mailing shall be sufficient proof of notice.

4.      If we cancel because you do not pay all premium when due, we will mail the notice of cancelation at least 10 days before the cancelation is to take effect. If we cancel for any other reason, except a material misrepresentation of fact, we will mail the notice of cancelation not less than 45 days before the cancelation is to take effect. Our notice will state the reasons for cancelation.

**Nonrenewal**

We may elect not to renew the policy. We will deliver to you and your agent, or mail to you and your agent, written notice at your last known address, not less than 45 days prior to the expiration or anniversary date of the policy. Our notice of nonrenewal will state the reasons for nonrenewal.

_Wally Dal_
Authorized Agent

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK      AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR   Number: C44366058 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## EMPLOYERS LIABILITY ENDORSEMENT
## (STOP-GAP COVERAGE)

This endorsement applies only to your operations in the State(s) of <u>WY</u>

Part One — Workers Compensation Insurance does not apply in these states.

Part Two — Employers Liability Insurance applies in these states as though they were shown in item 3A of the Information Page.

Item C — Exclusions, under Part Two — Employers Liability Insurance is changed by adding the following:

This insurance does not cover:

13. bodily injury to any member of the flying crew of any aircraft;

14. bodily injury to an employee when you are deprived of common law defenses or are subject to penalty because of your failure to secure your obligations under the workers compensation law of any state shown in the Schedule or otherwise fail to comply with that law.

15. Claims against you if you are subject to the requirements of any workers compensation or occupational disease law and you:

— are deprived of a defense or subjected to a penalty because you fail to make premium payments or to comply with other provisions of the law; or

— are not legally qualified self-insured or a member or subscriber in good standing of a Fund established by a state or other governmental body for workers compensation and occupational disease insurance.

G.   Limits of Liability under Part Two—Employers Liability Insurance is replaced by the following:

G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in the Schedule. They apply as explained below.

1. Bodily Injury By Accident. The limit shown for "Bodily Injury by Accident — Each Accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury By Disease. The limit shown for "Bodily Injury by Disease — Policy Limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "Bodily Injury by Disease — Each Employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. **We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.**

WC 99 03 03C

**EMPLOYERS LIABILITY ENDORSEMENT**
**(STOP-GAP COVERAGE)**
**Continued**

**Limits of Liability**

| | | |
|---|---|---|
| Bodily Injury By Accident | $ 1,000,000 | each accident |
| Bodily Injury By Disease | $ 1,000,000 | policy limit |
| Bodily Injury By Disease | $ 1,000,000 | each employee |

Authorized Agent

3085

**Workers' Compensation and Employers' Liability Policy**

| Named Insured | Endorsement Number |
|---|---|
| MOUNTAIRE CORPORATION | |
| 1901 NAPA VALLEY DRIVE | **Policy Number** |
| LITTLE ROCK        AR    72212 | Symbol: WLR      Number: C44366058 |
| **Policy Period** | **Effective Date of Endorsement** |
| 03-01-2009   **TO** 03-01-2010 | 03-01-2009 |

Issued By (Name of Insurance Company)
ACE AMERICAN INSURANCE COMPANY

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## DEDUCTIBLE ENDORSEMENT
## STATE OF WYOMING

1.  This agreement is between you and us. It does not change the rights of others under this Policy.

2.  We will pay and you will reimburse us for all payments we make on your behalf as damages under Part Two - Employers' Liability Insurance of this Policy up to the amount of the Deductible Limits shown in the Schedule.

3.  When used in this Endorsement:

    "Incident Deductible Limit" shall mean the amount of damages because of (a) bodily injury by disease applied separately to each employee or (b) bodily injury by accident applied separately to each occurrence, to which this insurance applies and for which you have a duty to reimburse us under this Policy.

    "Aggregate Deductible Limit" shall mean the most you must reimburse us for the sum of all damages to which this insurance applies.

4.  We will provide investigation, administration, adjustment and settlement services, and shall provide the defense of claims or suits for which this Policy provides coverage.

5.  You will also reimburse us for all assessments which are not included in the Policy premium that we may incur including those based on the total amounts associated with the Deductible obligation of this Endorsement. These assessments are also separate from, and in addition to, the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

6.  Under Part Two - Employers' Liability Insurance, the terms of this Policy, including those with respect to (a) our right and duty with respect to the defense of suits and (b) your duties in the event of an injury, apply irrespective of the application of any Deductible Limit. The Deductible Limit is within, and does not increase, the applicable Limits of Liability under Part Two - Employers' Liability Insurance of this Policy.

7.  If we cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will be reduced to a pro-rata amount based on the time this Policy was in force. If you cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will not be reduced if you cancel this Policy for any reason other than retiring from business. If you cancel this Policy as a result of your retiring from business, the Aggregate Deductible Limit will be reduced to a pro-rata amount based on the time this Policy was in force.

8.  Cancelation

    Paragraph D. Cancelation of PART SIX - CONDITIONS of the Policy is extended to include the following Item 5;

    5.  If you fail to deliver an amended or additional or substitute collateral required by us to secure your obligations under this Deductible Endorsement, or if you fail to reimburse us for any of your obligations under this Deductible Endorsement, we may cancel this Policy in accordance with items 2., and 3., and 4. above.

**CONTINUED ON REVERSE SIDE**

9. **SCHEDULE**

**Incident Deductible Limit**                                      **Aggregate Deductible Limit**

$ _____ 2,000,000 _____ .                                          $ _____

10. All terms, conditions, and limitations of this Policy not inconsistent with this Endorsement continue to apply.

Named Insured: MOUNTAIRE CORPORATION _____

Accepted and Agreed to by: _____

Title: _____

Authorized Agent

ACE

ISSUING COMPANY
**ACE AMERICAN INSURA.   COMPANY**
NCCI CARRIER CODE
**12165**

**EXTENSION OF INFORMATION
PAGE – CLASSIFICATION**

POLICY NUMBER
Symbol: WLR    Number: C4 43 66 05 8

PREVIOUS POLICY NO.
Symbol: WLR    Number: C44485333

☐ New   ☒ Renewal   ☐ Rewrite

☐ Individual   ☐ Partnership
☒ Corporation   ☐

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis Estimated Total Remuneration | Rate Per $100 of Remuneration | Estimated Premium |
|---|---|---|---|---|
| FOREIGN VOLUNTARY | | | | 0. |
| Minimum, Estimated and Deposit Premiums are shown on the Information Page. | | **Total State Premium** | | 0. |

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY
INFORMATION PAGE UNLESS OTHERWISE STATED.**
ISSUE DATE:   03/09/2009                                              (PAGE 1 LAST PAGE)

WC 99 04 18 (12/05)
3088

Copyright 1987 National Council on Compensation Insurance
**COMPANY COPY**

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK      AR    72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## VOLUNTARY COMPENSATION ENDORSEMENT
## FOREIGN

This endorsement adds Foreign Voluntary Compensation Insurance to the Policy.

### A. How this Insurance Applies

This insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must be sustained by a person who is your employee included in the group of employees described in the Schedule.

2. The bodily injury must occur in the course of the insured employee's employment by you in the country or countries designated in the Schedule or while being transported to or from the United States of America, its territories or possessions, or Canada, and the employment must be necessary or incidental to work in a country listed in the Schedule.

3. This insurance applies only to employees you hire within the limits of the United States of America while they are traveling or temporarily residing outside the United States of America, its territories or possessions or Canada for a period no longer than thirty days.

4. We will reimburse you for the benefits required by this endorsement if we are not permitted to pay the benefits directly to persons entitled to them.

### B. We will Pay

1. We will pay an amount equal to the benefits that would be required of you if you and your employees described in the Schedule were subject to the workers' compensation law shown in itme 1 of the Schedule. We will pay those amounts to the persons who would be entitled to them under the law.

2. Provided a separate specific premium is charged and indicated, we will pay such additional expenses as reasonably may be incurred over and above normal transportation costs for repatriation of employees suffering from bodily injury or diseases covered by this endorsement (including the bodies of employees injured fatally) from a Designated Country to a destination in the United States of America or Canada provided that such injuries make repatriation necessary in the opinion of competent medical authorities. Our liability is limited to the amount shown in the schedule with respect to any one employee.

### C. Exclusions

This insurance does not cover:

1. Any obligation imposed by a workers compensation or occupational disease law, or any similar law.

2. Bodily injury intentionally caused or aggravated by you.

3. Any obligation imposed by the United States Longshoremen's and Harbor Workers' Compensation Act.

4. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942) any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

C. Exclusions (Continued)

    5. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws.

    6. Bodily injury to a master or member of the crew of any vessel.

D. Before We Pay

    Before we pay benefits to the persons entitled to them, they must:

    1. Release you and us, in writing, of all responsibility for the injury or death.

    2. Transfer to us their right to recover from others who may be responsible for the injury or death.

    3. Cooperate with us and do everything necessary to enable us to enforce the right to recover from others.

    If the persons entitled to the benefits of this insurance fail to do those things, our duty to pay ends at once. If they claim damages from you or from us for the injury or death, our duty to pay ends at once.

E. Recovery From Others

    If we make a recovery from others, we will keep an amount equal to our expenses of recovery and the benefits we paid. We will pay the balance to the persons entitled to it. If the persons entitled to the benefits of this insurance make a recovery from others, they must reimburse us for the benefits we paid them.

F. Employers Liability Insurance

    Part Two (Employers Liability Insurance) applies to bodily injury covered by this endorsement as though the country shown in the Schedule were shown in item 3.A of the information Page.

SCHEDULE

| A. Employees | Designated Country and/or Location of Operations | Designated Workers' Compensation Law |
|---|---|---|
| ANY US EMPLOYEE WHILE TEMPORARILY OUTSIDE THE UNITED STATES OR CANADA | ANYWHERE ELSE IN THE WORLD UNLESS SUBJECT TO TRADE/ECONOMIC SANCTIONS BY US | STATE OF HIRE |

B. REPATRIATION LIMIT $ _____     REPATRIATION PREMIUM $ _____ . 00

_Wally Del_
Authorized Agent



## ACE INA PRIVACY POLICY

The ACE INA group of companies strongly believes in maintaining the privacy of information we collect about individuals. We want you to understand how and why we use and disclose the collected information. The following provides details of our practices and procedures for protecting the security of nonpublic personal information that we have collected about individuals. This privacy statement applies to policies underwritten by the ACE INA group member companies listed below.

## INFORMATION WE COLLECT

The information we collect will vary depending on the type of product or service individuals seek or purchase, and may include:

- Information we receive from individuals, such as their name, address, age, phone number, social security number, assets, income, or beneficiaries;

- Information about individuals' transactions with us, with our affiliates, or with others, such as policy coverage, premium, payment history, motor vehicle records; and

- Information we receive from a consumer reporting agency, such as a credit history.

## INFORMATION WE DISCLOSE

We do not disclose any personal information to anyone except as is necessary in order to provide our products or services to a person, or otherwise as we are required or permitted by law.

We may disclose any of the information that we collect to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

## THE RIGHT TO VERIFY THE ACCURACY OF INFORMATION WE COLLECT

Keeping our information accurate and up to date is important to us. Individuals may see and correct their personal information that we collect except for information relating to a claim or a criminal or civil proceeding.

## CONFIDENTIALITY AND SECURITY

We restrict access to personal information to our employees, our affiliates' employees, or others who need to know that information to service the account or in the course of conducting our normal business operations. We maintain physical, electronic, and procedural safeguards to protect personal information.



## CONTACTING US

If you have any questions about this privacy statement or would like to learn more about how we protect privacy, please write to us at ACE INA Customer Services, P.O. Box 1000, 436 Walnut Street, Philadelphia, PA 19106-3703. Please include the policy number on any correspondence with us.

ACE American Insurance Company
ACE Fire Underwriters Insurance Company
ACE Indemnity Insurance Company
ACE Property and Casualty Insurance Company
Atlantic Employers Insurance Company
Bankers Standard Fire and Marine Company
Bankers Standard Insurance Company
Century Indemnity Company
Illinois Union Insurance Company
Indemnity Insurance Company of North America
Insurance Company of North America
Pacific Employers Insurance Company
Westchester Fire Insurance Company
Westchester Surplus Lines Insurance Company
ESIS, Inc.



## ACE Producer Compensation
## Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

WC 99 03 42 (10/06)

3098

## NOTICE TO OUR MAINE WORKERS' COMPENSATION POLICYHOLDERS

The ACE USA Companies are required by Maine law (Sec. A-4 MRSA 2362 -B) to offer workplace health and safety consultation to policyholders with an experience rating factor of one or more as part of the workers' compensation insurance policy.  Through the workplace health and safety consultation we will advise and assist you in the following:

    1. Review of your past loss experience to determine causes and trends;
    2. Review of your potential loss exposures including occupational health exposures;
    3. Review of your current loss control program, if any;
    4. Recommendations for your control of actual or potential exposures;

To obtain any of the safety consultation services, please complete the section below and send it to:

        **National Manager, Jurisdictional Services**
        **ACE USA Risk Control Services**
        **P.O. Box 1000**
        **Philadelphia, PA 19105-1000**

You are required by the law to request this service within 30 days of your receipt of the offer. If you need more information about the services available, you may call toll free at 866-357-3797.

| Business Operation: | | |
|---|---|---|
| Company Name: | | |
| Street Address: | | |
| City: | State: ME | Zip: |
| Telephone: | Policy No: | |
| Person to Contact: | | |
| Title: | | |
| Signature: | | |

WC 99 98 43B  (2/06)
3097

# NOTICE TO OUR ARKANSAS

## WORKERS' COMPENSATION POLICYHOLDERS

The ACE USA Companies are required to provide its policyholders with certain accident prevention services at no additional cost as required by Ark. Code Ann. §11-9-409(d) and AWCC Rule 32. If you would like more information call toll free 866-357-3797 or contact ACE USA's loss control division at

National Manager of Jurisdictional Services
ACE USA Risk Control Services
PO Box 1000
Philadelphia, PA 19105-1000

If you have any questions about this requirement, call the Health and Safety Division, Arkansas Workers' Compensation Commission at 1-800-622-4472.

| | | |
|---|---|---|
| Business Operation: | | |
| Loss Control Services Desired: | | |
| | | |
| Company Name: | | |
| Street Address: | | |
| City: | State: AR | Zip: |
| Telephone: | Policy No: | |
| Person to Contact: | | |
| Title: | | |
| Signature: | | |

WC 99 98 54E  (2/06)
3098

**WORKERS COMPENSATION INSURANCE POLICYHOLDER NOTICE**
**TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT OF 2007**

On December 26, 2007, Congress enacted the Terrorism Risk Insurance Program Reauthorization Act of 2007 (TRIPRA) that amended the definition of an "act of terrorism" to include domestic terrorism. This means that domestic acts of terrorism can be certified as "acts of terrorism" within the federal program and the federal program covers such domestic acts of terrorism.

As a result of eliminating the distinction between foreign and domestic terrorism the following modifications will be made to your workers compensation insurance policy and sent to you when we have completed the re-programming of our policy rating and issuance system:

- References to "Foreign Terrorism" and "Domestic Terrorism, Earthquakes, and Catastrophic Industrial Accidents (DTEC) will be replaced by "Terrorism" and "Catastrophe (other than Certified Acts of Terrorism)."

- The Domestic Terrorism, Earthquakes, and Catastrophic Industrial Accidents Premium Endorsement, and the Foreign Terrorism Premium Endorsement will be revised to reflect certain changes required to address losses from "terrorism" and "catastrophes (other than certified acts of terrorism)." The Terrorism Risk Insurance Program Reauthorization Act Endorsement will be eliminated.

- The premium charge for domestic terrorism that is currently included in the Domestic Terrorism, Earthquakes, and Catastrophic Industrial Accidents (DTEC) (code 9741) charge shown on each state's "Extension of Information Page" will be removed and included in the "Terrorism" (code 9740) charge on the "Extension of Information Page." All terrorism premium collected (both foreign and domestic) will be included in code 9740, and code 9752 (applicable in only six states) will be eliminated because the premium associated with Code 9752 will now be included in code 9740.

- Because of these amendments, there may be a change in premium dependent on Exposure State.

These changes apply to new and renewal policies with effective dates on and after the dates shown below. (In-force policies will not be impacted until the policy renewal date subsequent to September 1, 2008 or January 1, 2009 for CA and CT.)

| States | New/Renewal Policies Effective On/After |
|---|---|
| AL, AK, AR, AZ, CO, DC, DE, FL, GA, HI, IA, ID, IL, IN, KS, KY, LA, ME, MD, MS, MO, MN, MT, NC, NE, NH, NJ, NM, NV, NY, OK, OR, PA, RI, SC, SD, TN, UT, VA, VT, WV | September 1, 2008 |
| CA, CT | January 1, 2009 |

If you have questions about the impact on your policy, please contact your insurance agent or broker.

**This Notice does not form a part of your insurance contract and has been prepared in conjunction with the implementation of the changes to your policy discussed above.**



**Stephens**

Jackson T. Stephens, 1923-2005
Chairman Emeritus In Perpetuity

October 8, 2010

Deborah Baker
1901 Napa Valley Drive
Little Rock AR 72212

Re:  09/10 Workers Compensation Endorsements
      10/11 Workers Compensation Endorsements

Dear Deb,

Please find attached endorsements to the 2009/2010 Workers Compensation policies,
endorsements to the 2010/2011 Workers Compensation policies, as well as the NCCI
Workers Compensation Experience Rating worksheet processed July 8, 2010.

**09/10 Workers Compensation Endorsements:**
   1)  Amending Experience Rating to     (WI Only)
   2)  Deleting Cameron Ltd. Partnership as a named insured (WI Only)
   3)  Amending Experience Rating of     d adding Terrorism Forms (All States)

**10/11 Workers Compensation Endorsements:**
   1)  Adding PA Merit Rating Plan Endorsement (All States except WI)
   2)  Amending Experience Rating to     (All States except WI)
   3)  Amending Experience Rating to     (WI Only)

Please add these items to your policy binders and give us a call if you have any questions
or concerns.

Respectfully,

Allison Harpole
Customer Service Representative
Stephens Insurance, LLC

Enclosures

**Workers' Compensation and Employers' Liability Policy**

| Named Insured | Endorsement Number |
|---|---|
| YOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR   72212 | |
| | Policy Number<br>Symbol: SCF    Number: C44366095 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |

Issued By (Name of Insurance Company)
ACE AMERICAN INSURANCE COMPANY

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## POLICY INFORMATION PAGE ENDORSEMENT

The following item(s)

| | |
|---|---|
| ☐ Insured's Name | ☐ Item 3.A. States |
| ☐ Policy Number | ☐ Item 3.B. Limits |
| ☐ Effective Date | ☐ Item 3.C. States |
| ☐ Expiration Date | ☐ Item 3.D. Endorsement Numbers |
| ☐ Insured's Mailing Address | ☐ Item 4. * Class, Rate, Other |
| ☒ Experience Modification | ☐ Audit Frequency |
| ☐ Producer's Name | ☐ Carrier Servicing Office |
| ☐ Change in Workplace(s) of Insured | ☐ Interstate/Intrastate Risk I.D. Number |
| ☐ Insured's Legal Status | ☐ Carrier Name and Number |

) is changed to read:

IN CONSIDERATION OF PREMIUM TO BE ADJUSTED BY AUDIT,
YOUR POLICY IS AMENDED TO READ AS FOLLOWS:

INTERSTATE EXPERIENCE MODIFICATION FACTOR IS AMENDED TO
READ:        FOR THE FOLLOWING STATES:
THIS EXPERIENCE MODIFICATION FACTOR IS EFFECTIVE 03-01-2009 TO 03-01-2010
AND IS FINAL.


YOUR INTERSTATE EXPERIENCE MODIFICATION IS AMENDED TO FINAL.

)

*See next page for Item 4. changes, if any.        POSTBAIII                        (PAGE  1 LAST PAGE)

Copyright 1987 National Council on Compensation Insurance.
06-10-2010  DAU
INSURED COPY

WC 99 06 00 A

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: SCF     Number: C44366095 |
| Policy Period<br>03-01-2009   TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## POLICY INFORMATION PAGE ENDORSEMENT

The following item(s)

| | |
|---|---|
| ☒ Insured's Name | ☐ Item 3.A. States |
| ☐ Policy Number | ☐ Item 3.B. Limits |
| ☐ Effective Date | ☐ Item 3.C. States |
| ☐ Expiration Date | ☐ Item 3.D. Endorsement Numbers |
| ☐ Insured's Mailing Address | ☐ Item 4. * Class, Rate, Other |
| ☐ Experience Modification | ☐ Audit Frequency |
| ☐ Producer's Name | ☐ Carrier Servicing Office |
| ☐ Change in Workplace(s) of Insured | ☐ Interstate/Intrastate Risk I.D. Number |
| ☐ Insured's Legal Status | ☐ Carrier Name and Number |

is changed to read:

```
INSUREDS NAME (CONTINUED - DELETED):
    ADDITIONAL INSURED NAME:
        CAMERON LTD. PARTNERSHIP
```

*See next page for Item 4. changes, if any.          POSTBAIII                    (PAGE 1 LAST PAGE)

CKE-1U76 Ptd. In U.S.A.
838

Copyright 1987 National Council on Compensation Insurance.<br>05-07-2009  DAU

WC 99 06 00 A

INSURED COPY

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| Named Insured<br>DUNTAIRE CORPORATION<br>.901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR     Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### POLICY INFORMATION PAGE ENDORSEMENT

The following item(s)

| | |
|---|---|
| ☐ Insured's Name | ☒ Item 3.A. States |
| ☐ Policy Number | ☒ Item 3.B. Limits |
| ☐ Effective Date | ☐ Item 3.C. States |
| ☐ Expiration Date | ☒ Item 3.D. Endorsement Numbers |
| ☐ Insured's Mailing Address | ☒ Item 4. *Class, Rate, Other |
| ☒ Experience Modification | ☐ Audit Frequency |
| ☐ Producer's Name | ☐ Carrier Servicing Office |
| ☐ Change in Workplace(s) of Insured | ☐ Interstate/Intrastate Risk I.D. Number |
| ☐ Insured's Legal Status | ☐ Carrier Name and Number |

) is changed to read:

IN CONSIDERATION OF PREMIUM TO BE ADJUSTED BY AUDIT,
YOUR POLICY IS AMENDED TO READ AS FOLLOWS:

INTERSTATE EXPERIENCE MODIFICATION FACTOR IS AMENDED TO
READ:          FOR THE FOLLOWING STATES:
SC
THIS EXPERIENCE MODIFICATION FACTOR IS EFFECTIVE 03-01-2009 TO 03-01-2010
AND IS FINAL.


YOUR INTERSTATE EXPERIENCE MODIFICATION IS AMENDED TO FINAL.

ITEM 3.A. STATES (ADDED):
PA SC


THE FOLLOWING ENDORSEMENT NUMBER(S) ARE ADDED/REVISED   AND
BECOME PART OF THE   POLICY:
    990409      NOTIFICATION OF PREMIUM ADJUSTMENT

    990773      TRADE OR ECONOMIC SANCTIONS ENDORSEMENT
    000419   PA PREMIUM DUE DATE ENDORSEMENT


                    SEE ATTACHED SCHEDULE

*See next page for item 4. changes, if any.                    (PAGE   1 LAST PAGE)

## Workers' Compensation and Employers' Liability Policy

| Named Insured | Endorsement Number |
|---|---|
| OUNTAIRE CORPORATION <br> ,901 NAPA VALLEY DRIVE <br> LITTLE ROCK         AR   72212 | Policy Number <br> Symbol: WLR   Number: C44366058 |

| Policy Period <br> 03-01-2009   TO 03-01-2010 | Effective Date of Endorsement <br> 03-01-2009 |
|---|---|

Issued By (Name of Insurance Company)
ACE AMERICAN INSURANCE COMPANY

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## POLICY INFORMATION PAGE ENDORSEMENT

The following item(s)

| | |
|---|---|
| ☐ Insured's Name | ☒ Item 3.A. States |
| ☐ Policy Number | ☒ Item 3.B. Limits |
| ☐ Effective Date | ☐ Item 3.C. States |
| ☐ Expiration Date | ☒ Item 3.D. Endorsement Numbers |
| ☐ Insured's Mailing Address | ☒ Item 4. Class, Rate, Other |
| ☒ Experience Modification | ☐ Audit Frequency |
| ☐ Producer's Name | ☐ Carrier Servicing Office |
| ☐ Change in Workplace(s) of Insured | ☐ Interstate/Intrastate Risk I.D. Number |
| ☐ Insured's Legal Status | ☐ Carrier Name and Number |

) is changed to read:

THE CATASTROPHE PROVISIONS FOR TERRORISM - NOT PART OF STANDARD PREMIUM
FOR THE STATE OF PA IS AMENDED TO

THE CATASTROPHE PROVISIONS FOR CATASTROPHE (OTHER THAN CERTIFIED ACTS OF
FOR THE STATE OF SC IS AMENDED TO

THE CATASTROPHE PROVISIONS FOR TERRORISM - NOT PART OF STANDARD PREMIUM
FOR THE STATE OF SC IS AMENDED TO

THE CATASTROPHE PROVISIONS FOR TERRORISM - NOT PART OF STANDARD PREMIUM
FOR THE STATE OF TN IS AMENDED TO

)

### SEE ATTACHED SCHEDULE

*See next page for Item 4. changes, if any.        P0STBAIII                    (PAGE 3 CONTINUED)

CKE-1U76 Ptd. In U.S.A.          Copyright 1987 National Council on Compensation Insurance.          WC 99 06 00 A
778                                    06-08-2010  DAU
INSURED COPY

**Workers' Compensation and Employers' Liability Policy**

| Named Insured | Endorsement Number |
|---|---|
| COUNTAIRE CORPORATION .901 NAPA VALLEY DRIVE LITTLE ROCK          AR    72212 | Policy Number Symbol: WLR      Number: C44366058 |

| Policy Period 03-01-2009    TO 03-01-2010 | Effective Date of Endorsement 03-01-2009 |

| Issued By (Name of Insurance Company) ACE AMERICAN INSURANCE COMPANY |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

This endorsement is not applicable in CA, DE, ME, MI, NJ, PA, TX.

Authorized Agent

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>'COUNTAIRE CORPORATION<br>/901 NAPA VALLEY DRIVE<br>LITTLE ROCK    AR  72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009   **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## PREMIUM DUE DATE ENDORSEMENT

This endorsement is used to amend:

Section D. of Part Five of the policy is replaced by this provision.

**PART FIVE**
**PREMIUM**

D. **Premium is amended to read:**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid. **The due date for audit and retrospective premiums is the date of the billing.**

For the states of MA, OR, refer to state specific endorsements.
This endorsement is not applicable in AZ, CA.

_Authorized Agent_

CKE-10129 (01/01)  Ptd. in U.S.A.
780

WC 00 04 19

**Workers' Compensation and Employers' Liability Policy**

| Named Insured | Endorsement Number |
|---|---|
| YOUNTAIRE CORPORATION 1901 NAPA VALLEY DRIVE LITTLE ROCK          AR   72212 | |

| | Policy Number Symbol: WLR   Number: C44366058 |
|---|---|

| Policy Period 03-01-2009    TO 03-01-2010 | Effective Date of Endorsement 03-01-2009 |
|---|---|

| Issued By (Name of Insurance Company) ACE AMERICAN INSURANCE COMPANY |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## NOTIFICATION OF PREMIUM ADJUSTMENT

For the states and lines of business in which regulatory approval has been granted for the NCCI Large Risk Alternative Rating Option, the ISO Large Risk Alternative Rating Option, or the independently filed ACE Large Risk Rating Plan, the premiums for this policy will be adjusted in accordance with the Notice of Election, signed by you.

_____
Authorized Agent

**Workers' Compensation and Employers' Liability Policy**

| Named Insured | Endorsement Number |
|---|---|
| COUNTAIRE CORPORATION<br>7901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Policy Number<br>Symbol: WLR    Number: C44366058 |

| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
|---|---|

Issued By (Name of Insurance Company)
ACE AMERICAN INSURANCE COMPANY

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## DEDUCTIBLE ENDORSEMENT

1. This agreement is between you and us. It does not change the rights of others under this Policy.

2. We will pay and you will reimburse us for all payments we make on your behalf as benefits under Part One - Workers' Compensation Insurance of this Policy or as damages under Part Two - Employers' Liability Insurance of this Policy up to the amount of the Deductible Limits shown in the Schedule.

3. When used in this Endorsement:

   "Incident Deductible Limit" shall mean the amount of benefits or damages because of (a) bodily injury by disease applied separately to each employee or (b) bodily injury by accident applied separately to each occurrence, to which this insurance applies and for which you have a duty to reimburse us under this Policy.

   "Aggregate Deductible Limit" shall mean the most you must reimburse us for the sum of all benefits or damages to which this insurance applies.

4. We will provide investigation, administration, adjustment and settlement services, and shall provide the defense of claims or suits for which this Policy provides coverage.

5. You will reimburse us for all expenses, costs and interest which we pay in connection with the investigation, administration, adjustment, settlement or defense of any claim or suit arising from coverages under this Policy.
   Check one box only:

   ☐ These expenses, costs and interest are separate from, and in addition to, the Incident Deductible Limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

   ☒ These expenses, costs and interest are part of, and included in, the Incident Deductible limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

6. You will also reimburse us for all assessments which are not included in the Policy premium that we may incur including those based on the total amounts associated with the Deductible obligation of this Endorsement. These assessments are also separate from, and in addition to, the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

7. Under Part Two - Employers' Liability Insurance, the terms of this Policy, including those with respect to (a) our right and duty with respect to the defense of suits and (b) your duties in the event of an injury, apply irrespective of the application of any Deductible Limit. The Deductible Limit is within, and does not increase, the applicable Limits of Liability under Part Two - Employers' Liability Insurance of this Policy.

8. If we cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will be reduced to a pro-rata amount based on the time this Policy was in force. If you cancel this Policy, the Aggregate Deductible Limit shown (if any) in the Schedule will not be reduced if you cancel this Policy for any reason other than retiring from business. If you cancel this Policy as a result of your retiring from business, the Aggregate Deductible Limit will be reduced to a pro-rata amount based on the time this Policy was in force.

**CONTINUED ON REVERSE SIDE**

**Workers' Compensation and Employers' Liability Policy**

| Named Insured |
| --- |
| JOUNTAIRE CORPORATION |
| /901 NAPA VALLEY DRIVE |
| LITTLE ROCK          AR   72212 |

| Endorsement Number |
| --- |

| Policy Number |
| --- |
| Symbol: WLR    Number: C44366058 |

| Policy Period |
| --- |
| 03-01-2009     TO 03-01-2010 |

| Effective Date of Endorsement |
| --- |
| 03-01-2009 |

| Issued By (Name of Insurance Company) |
| --- |
| ACE  AMERICAN  INSURANCE  COMPANY |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of policy remain unchanged.

This endorsement is not applicable in: AZ, FL, MN, NJ, TN, WI.

Authorized Agent

WC 99 07 73  (11/06)
784

**ACE AMERICAN INSURANCE COMPANY**
NCCI CARRIER CODE
**12165**

**EXTENSION OF INFORMATION**
**PAGE – CLASSIFICATION**

| POLICY NUMBER | |
|---|---|
| Symbol:  WLR    Number: C4 43 66 05 8 | ☐ New   ☒ Renewal   ☐ Rewrite |
| PREVIOUS POLICY NO. | |
| Symbol:  WLR    Number: C44485333 | ☐ Individual   ☐ Partnership<br>☒ Corporation   ☐ |

## PENNSYLVANIA

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis Estimated Total Remuneration | Rate Per $100 of Remuneration | Estimated Premium |
|---|---|---|---|---|
| SALESPERSON - OUTSIDE | 951 | IF ANY | | 0. |
| ESTIMATED STANDARD POLICY PREMIUM | | | | 0. |
| CATASTROPHE PROVISIONS FOR TERRORISM - NOT PART OF STANDARD PREMIUM | 9740 | | - - | 0. |
| CATASTROPHE PROVISIONS FOR CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) | 9741 | | | 0. |
| TOTAL | | | | 0. |

| Minimum, Estimated and Deposit Premiums are shown on the Information Page. | Total State Premium | 0. |
|---|---|---|

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:   06/08/2010                                    (PAGE 1 LAST PAGE)

WC 99 04 18 (12/05)
785

Copyright 1987 National Council on Compensation Insurance
INSURED COPY

## Workers' Compensation and Employers' Liability Policy

| Named Insured<br>YOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR     Number: C44366058 |
| Policy Period<br>03-01-2009     TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of a Catastrophe (other than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism). This premium charge does not provide funding for Certified Acts of Terrorism contemplated under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 A), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- Catastrophe (other than Certified Acts of Terrorism): Any single event, resulting from an Earthquake, Noncertified Act of Terrorism, or Catastrophic Industrial Accident, which results in aggregate workers compensation losses in excess of $50 million.

- Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity.

- Noncertified Act of Terrorism: An event that is not certified as an Act of Terrorism by the Secretary of Treasury pursuant to the Terrorism Risk Insurance Act of 2002 (as amended) but that meets all of the following criteria:

   a.   It is an act that is violent or dangerous to human life, property, or infrastructure;

   b.   The act results in damage within the United States, or outside of the United States in the case of the premises of United States missions or air carriers or vessels as those terms are defined in the Terrorism Risk Insurance Act of 2002 (as amended); and

   c.   It is an act that has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

- Catastrophic Industrial Accident: A chemical release, large explosion, or small blast that is localized in nature and affects workers in a small perimeter the size of a building.

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism) is shown in Item 4 of the Information Page or in the Schedule below.

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>YOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR   72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007. It serves to notify you of certain limitations under the Act, and that your insurance carrier is charging premium for losses that may occur in the event of an Act of Terrorism.

Your policy provides coverage for workers compensation losses caused by Acts of Terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

**Definitions**

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States, as meeting all of the following requirements:

a.   The act is an act of terrorism.

b.   The act is violent or dangerous to human life, property or infrastructure.

c.   The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

d.   The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (and, except for Pennsylvania, including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR     Number: C44366058 |
| Policy Period<br>03-01-2009     **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### SPECIAL PENNSYLVANIA ENDORSEMENT-INSPECTION OF MANUALS

The manuals of rules, rates, rating plans and classifications are approved pursuant to the provisions of  Section 654  of the Insurance Company Law of May 17, 1921, P.L. 682, as amended, and are on file with the Insurance Commissioner of the Commonwealth of Pennsylvania.

Wally Del

Authorized Agent

WC 37 06 01   (4/84) Ptd. in U.S.A.
788

Workers' Compensation and Employers' Liability Policy

| Named Insured<br>MOUNTAIRE CORPORATION<br>/901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

# PENNSYLVANIA NOTICE
## (INSURANCE CONSULTATION SERVICES EXEMPTION ACT)

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incidental to the application for, issuance, renewal or continuation of, a policy of insurance.

1.  surveys;

2.  consultation or advice; or

3.  inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1.  if the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2.  to consultation services required to be performed under a written service contract not related to a policy of insurance; or

3.  if any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

Authorized Agent

**Workers' Compensation and Employers' Liability Policy**

| Named Insured | Endorsement Number |
|---|---|
| OUNTAIRE CORPORATION<br>901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR    72212 | **Policy Number**<br>Symbol: WLR    Number: C44366058 |
| **Policy Period**<br>03-01-2009    **TO** 03-01-2010 | **Effective Date of Endorsement**<br>03-01-2009 |
| **Issued By (Name of Insurance Company)**<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## PENNSYLVANIA ACT 86 - 1986 ENDORSEMENT

### NONRENEWAL NOTICE OF INCREASE OF PREMIUM, and RETURN OF UNEARNED PREMIUM

This endorsement applies only to the insurance provided by the policy because Pennsylvania is shown in Item 3.A. of the Information Page.

The policy conditions are amended by adding the following regarding nonrenewal, notice of increase in premium, and return of unearned premium.

**Nonrenewal**

1. We may elect not to renew the policy. We will mail to each named insured, by first class mail, not less than 60 days advance notice stating when the nonrenewal will take effect. Mailing that notice to you at your mailing address last known to us will be sufficient to prove notice.
2. Our notice of nonrenewal will state our specific reasons for not renewing.
3. If we have indicated our willingness to renew, we will not send you a notice of nonrenewal. However, the policy will still terminate on its expiration date if:
   a. you notify us or the agent or broker who procured this policy that you do not want the policy renewed; or
   b. you fail to pay all premiums when due; or
   c. you obtain other insurance as a replacement of the policy.

**Notice of Increase in Premium**

1. We will provide you with not less than 30 days advance notice of an increase in renewal premium of this policy, if it is our intent to offer such renewal.
2. The above notification requirement will be satisfied if we have issued a renewal policy more than 30 days prior to its effective date.
3. If a policy has been written or is to be written on a retrospective rating plan basis, the notice of increase in premium provisions of this endorsement does not apply.

**Return of Unearned Premium**

1. If this policy is cancelled and there is unearned premium due you:
   a. If the company cancels, the unearned premium will be returned to you within 10 business days after the effective date of cancellation.
   b. If you cancel, the unearned premium will be returned within 30 days after the effective date of cancellation.
2. Because this policy was written on the basis of an estimated premium and is subject to a premium audit, the unearned premium specified in 1a. and 1b. above, if any, shall be returned on an estimated basis. Upon our completion of computation of the exact premium, an additional return premium or charge will be made to you within 15 days of the final computation.
3. These return or unearned premium provisions shall not apply if this policy is written on a retrospective rating plan basis.

_Wally DSel_
Authorized Agent

WC 37 06 03A   (8/95) Ptd. in U.S.A.

**Workers' Compensation and Employers' Liability Policy**

| Named Insured<br>MOUNTAIRE CORPORATION<br>/901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR   72212 | Endorsement Number |
|---|---|
| | Policy Number<br>Symbol: WLR     Number: C44366058 |
| Policy Period<br>03-01-2009     TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## DEDUCTIBLE ENDORSEMENT
## STATE OF PENNSYLVANIA

1.  This agreement is between you and us. It does not change the rights of others under this Policy.

2.  We will pay and you will reimburse us for all payments we make on your behalf as benefits under Part One - Workers' Compensation Insurance of this Policy or as damages under Part Two - Employers' Liability Insurance of this Policy up to the amount of the Deductible shown in the Schedule.

3.  When used in this endorsement:

    "Incident Deductible Limit" shall mean the amount of benefits or damages because of (a) bodily injury by disease applied separately to each employee or (b) bodily injury by accident applied separately to each occurrence, to which this insurance applies and for which you have a duty to reimburse us under this Policy.

    "Aggregate Deductible Limit" shall mean the most you must reimburse us for the sum of all benefits or damages to which this insurance applies.

4.  Your failure to reimburse us for such payments is equivalent to nonpayment of premium and could make the policy subject to cancellation.

5.  We will provide investigation, administration, adjustment and settlement services, and shall provide the defense of claims or suits for which this Policy provides coverage.

6.  At your option, the expenses, costs and interest which we pay in connection with the claim or suit activities described in Paragraph 5 above are handled as follows (check one box only):

    ☐ You will not reimburse us for these claim or suit expenses, costs and interest which we pay.

    ☐ You will reimburse us for all expenses, costs and interest which we pay in connection with the investigation, administration, adjustment, settlement or defense of any claim or suit arising from coverages under this Policy. These expenses, costs and interest are separate from, and in addition to, the Incident Deductible Limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

    ☒ You will reimburse us for all expenses, costs and interest which we pay in connection with the investigation, administration, adjustment, settlement or defense of any claim or suit arising from coverages under this Policy. These expenses, costs and interest are part of, and included in, the Incident Deductible Limit and the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

7.  You will reimburse us for all assessments which are not included in the Policy premium that we may incur including those based on the total amounts associated with the Deductible obligation of this Endorsement. These assessments are also separate from, and in addition to, the Aggregate Deductible Limit shown below in the Schedule in Paragraph 10.

8.  Under Part Two - Employers' Liability Insurance, the terms of this Policy, including those with respect to (a) our right and duty with respect to the defense of suits and (b) your duties in the event of an injury, apply irrespective of the application of any Deductible Limit. The Deductible Limit is within, and does not increase, the applicable Limits of Liability under Part Two - Employers Liability Insurance of this Policy.

**CONTINUED ON REVERSE SIDE**



**ACE AMERICAN INSURANCE COMPANY**
NCCI CARRIER CODE
**12165**

# EXTENSION OF INFORMATION
## PAGE – CLASSIFICATION

| POLICY NUMBER<br>Symbol:  WLR     Number:  C4  43 66 05 8 | ☐ New   ☒ Renewal   ☐ Rewrite |
|---|---|
| PREVIOUS POLICY NO.<br>Symbol:  WLR     Number: C44485333 | ☐ Individual   ☐ Partnership<br>☒ Corporation  ☐ |

## SOUTH CAROLINA

Complete Item 4. of the Information Page

| Classifications | Code No. | Premium Basis<br>Estimated Total Remuneration | Rate<br>Per $100 of Remuneration | Estimated Premium |
|---|---|---|---|---|
| SALESPERSONS, COLLECTORS, MESSENGERS - OUTSIDE | 8742 | IF ANY | .94 | 0. |
| PREMIUM SUBJECT TO EXPERIENCE MODIFICATION | | | | 0. |
| APPLICABLE EXPERIENCE MODIFICATION | | | | ` |
| PREMIUM ADJUSTED BY EXPERIENCE MODIFICATION | | | | 0. |
| ESTIMATED STANDARD POLICY PREMIUM | | | | 0. |
| CATASTROPHE PROVISIONS FOR TERRORISM - NOT PART OF STANDARD PREMIUM | 9740 | | .020 | 0. |
| CATASTROPHE PROVISIONS FOR CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) | 9741 | | .020 | 0. |
| TOTAL | | | | 0. |

| Minimum, Estimated and Deposit Premiums are shown on the Information Page. | Total State Premium | 0. |
|---|---|---|

**THIS EXTENSION OF INFORMATION PAGE IS EFFECTIVE FOR THE POLICY PERIOD INDICATED ON THE POLICY INFORMATION PAGE UNLESS OTHERWISE STATED.**

ISSUE DATE:  06/08/2010                                   (PAGE 1 LAST PAGE)

WC 99 04 18 (12/05)
792

Copyright 1987 National Council on Compensation Insurance
INSURED COPY

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>/901 NAPA VALLEY DRIVE<br>LITTLE ROCK          AR    72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR    Number: C44366058 |
| Policy Period<br>03-01-2009    TO 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of a Catastrophe (other than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism). This premium charge does not provide funding for Certified Acts of Terrorism contemplated under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 A), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- Catastrophe (other than Certified Acts of Terrorism): Any single event, resulting from an Earthquake, Noncertified Act of Terrorism, or Catastrophic Industrial Accident, which results in aggregate workers compensation losses in excess of $50 million.

- Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity.

- Noncertified Act of Terrorism: An event that is not certified as an Act of Terrorism by the Secretary of Treasury pursuant to the Terrorism Risk Insurance Act of 2002 (as amended) but that meets all of the following criteria:

    a.   It is an act that is violent or dangerous to human life, property, or infrastructure;

    b.   The act results in damage within the United States, or outside of the United States in the case of the premises of United States missions or air carriers or vessels as those terms are defined in the Terrorism Risk Insurance Act of 2002 (as amended); and

    c.   It is an act that has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

- Catastrophic Industrial Accident: A chemical release, large explosion, or small blast that is localized in nature and affects workers in a small perimeter the size of a building.

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism) is shown in Item 4 of the Information Page or in the Schedule below.

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DRIVE<br>LITTLE ROCK        AR    72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR      Number: C44366058 |
| Policy Period<br>03-01-2009      **TO** 03-01-2010 | Effective Date of Endorsement<br>03-01-2009 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007. It serves to notify you of certain limitations under the Act, and that your insurance carrier is charging premium for losses that may occur in the event of an Act of Terrorism.

Your policy provides coverage for workers compensation losses caused by Acts of Terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

**Definitions**

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

a.   The act is an act of terrorism.

b.  The act is violent or dangerous to human life, property or infrastructure,

c.   The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

d.   The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (and, except for Pennsylvania, including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.



**ACE USA**

ACE USA COMPANIES
CENTRALIZED OPERATIONS
1 BEAVER VALLEY ROAD
WILMINGTON, DE          19803

19803
1-800-352-4462

# Important Notice To Insured

Subject: Workmen's Compensation Coverage in
         State of Pennsylvania

Gentlemen:

Act No. 12, Laws of 1972 of the Commonwealth of Pennsylvania became effective April 8, 1972. Several provisions and changes in the act are of the utmost importance to you as an employer.

Section 438 of the Act reads as follows: "An employer shall report all injuries received by employees in the course of or resulting from their employment immediately to the employer's insurer. If the employer is self-insured such injuries shall be reported to the person responsible for management of the employer's compensation program.

"An employer shall report such injuries to the Department of Labor and Industry by filing directly with the department on the form it prescribes a report of injury within forty-eight hours for every injury resulting in death, and within three days after the date of injury for all other injuries except those resulting in disability continuing less than the day, shift, or turn in which the injury was received. A copy of this report to the department shall be mailed to the employer's insurer forthwith.

"Reports of injuries filed with the department under this section shall not be evidence against the employer or the employer's insurer in any proceeding either under this act or otherwise. Such reports may be made available by the department to other State or Federal agencies for study or informational purposes."

Section 439 provides as follows: "Every employer shall keep a record of each injury to any of his employees as reported to him or which he otherwise has knowledge. Such record shall include a description of the injury, a statement of any time during which the injured person was unable to work because of the injury, and a description of the manner in which the injury occurred. These records shall be available for inspection by the department or by any governmental agency at reasonable times."

Since Section 406.1 provides that the first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employee's disability, it is important that you comply with the reporting requirements that are emphasized above.

**Notice To Policyholders**

**ace usa**

The laws and regulations of most states require that workers' compensation insurance carriers notify each insured or prospective insured of the availability of deductible programs. For this reason, deductible election forms are included with the policy for these programs, which consist of so-called "small deductibles", generally for deductible amounts of $10,000 or less.

Your policy has been issued, according to your request, with a large deductible/reimbursement rating plan. For this reason, you do not need to complete or return these election forms.

We thank you for your business!

The ACE USA Companies



**ace usa**

# Notice To
# Policyholder

RE: LOSS CONTROL SERVICE

ACE USA and its affiliated companies take pleasure in informing you of the availability of "Loss Control Services" available to the policyholder. Depending upon the size, complexity and needs of your operation, we are prepared to provide "Loss Control Service" reasonably commensurate with the exposures, hazards and experience presented by your business. This program is intended to promote occupational safety and health and to control or reduce losses to employees. It does not relieve employers of their responsibility for furnishing safe places of employment.

For further information or assistance, please contact your insurance agent.

# NOTICE TO OUR PENNSYLVANIA

## WORKER'S COMPENSATION POLICYHOLDERS

The ACE USA Companies are required by Pennsylvania law to notify you that accident and illness prevention services are available to you. The law requires that the services shall be adequate to furnish accident prevention required by the nature of your operations and shall include surveys, recommendations, training programs, consultations, analyses of accident causes, industrial hygiene and industrial health services. We are also required by law to use qualified personnel to perform the above loss control services. A 5% premium discount is available for those policyholders who have a certified workplace safety committee.

If you are interested in obtaining any of the loss control services listed above or obtaining information on developing a certified workplace safety committee, please complete the section below and mail to:

National Manager, Jurisdictional Services
ACE USA Risk Control Services
P.O. Box 1000
Philadelphia, PA 19105-1000

If you need more information about these services, you may call toll free at 866-357-3797.

| Business Operation: | | |
|---|---|---|
| Loss Control Services Desired: | | |
| | | |
| Company Name: | | |
| Street Address: | | |
| City: | State: PA | Zip: |
| Telephone: | Policy No: | |
| Person to Contact: | | |
| Title: | | |
| Signature: | | |

WC 99 98 58B  (02/06)
798



**ace usa**

## IMPORTANT — PLEASE READ CAREFULLY

TO: WORKMEN'S COMPENSATION POLICYHOLDERS

Pursuant to the provisions of the South Carolina Workmen's Compensation Act and an order of the Industrial Commission, it is required that every employer shall keep a record of all injuries fatal or otherwise received by his employees in the course of their employment. This record is to be kept on blanks which are approved by the Commission.

Within 10 days after the occurrence and knowledge thereof of an injury to an employee which requires medical or surgical attention or causes his absence from work, a report thereof must be made in writing and mailed to the Industrial Commission on Employer's First Report forms which may be procured from your agent.

> **THIS REPORT SHOULD BE MADE IN DUPLICATE AND MAILED TO THE ACE USA CLAIMS OFFICE LISTED BELOW. WE WILL FORWARD IT TO THE INDUSTRIAL COMMISSION FOR YOU.**

In addition, it is most essential that the correct address of the injured employee and any witnesses be given on the report. In all cases, street addresses or Post Office Box numbers must be supplied.

In view of the fact that the South Carolina Workmen's Compensation Act provides for a fine of not less than $5.00 and not more than $25.00 for each refusal or neglect of an employer to make the required report, we wish to take this opportunity of stressing the importance of your complying with this requirement of the Act.

Very truly yours,

_____

_____                          CLAIMS OFFICE:

_____                          _____

_____                          _____

_____                          _____

_____

_____

CK-0894h  (01/98)  Ptd. in U.S.A.                          WC 99 98 60A
0

## Workers' Compensation and Employers' Liability Policy

| | |
|---|---|
| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DR.<br>LITTLE ROCK       AR 72212 | Endorsement Number |
| | Policy Number<br>Symbol: WLR     Number: C4570984A |
| Policy Period<br>03-01-2010 TO 03-01-2011 | Effective Date of Endorsement<br>03-01-2010 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### POLICY INFORMATION PAGE ENDORSEMENT

The following item(s)

| | |
|---|---|
| ☐ Insured's Name | ☐ Item 3.A. States |
| ☐ Policy Number | ☐ Item 3.B. Limits |
| ☐ Effective Date | ☐ Item 3.C. States |
| ☐ Expiration Date | ☒ Item 3.D. Endorsement Numbers |
| ☐ Insured's Mailing Address | ☒ Item 4. *Class, Rate, Other |
| ☐ Experience Modification | ☐ Audit Frequency |
| ☐ Producer's Name | ☐ Carrier Servicing Office |
| ☐ Change in Workplace(s) of Insured | ☐ Interstate/Intrastate Risk I.D.Number |
| ☐ Insured's Legal Status | ☐ Carrier Name and Number |

is changed to read:

IN CONSIDERATION OF PREMIUM TO BE ADJUSTED BY AUDIT,
YOUR POLICY IS AMENDED TO READ AS FOLLOWS:


THE FOLLOWING ENDORSEMENT NUMBER(S) ARE ADDED/REVISED  AND
BECOME PART OF THE  POLICY:
    370405    PA PENNSYLVANIA MERIT RATING PLAN ENDORSEMENT


THE MERIT RATING CREDIT
FOR THE STATE OF PA IS AMENDED TO


See next page for Item 4. changes, if any.          POSTBAIII          (PAGE 1 LAST PAGE)

Copyright 1987 National Council on Compensation Insurance.<br>09-07-2010 DAU<br>INSURED COPY

WC 99 06 00 A

**Workers' Compensation and Employers' Liability Policy**

| Named Insured<br>MOUNTAIRE CORPORATION<br>1901 NAPA VALLEY DR.<br>LITTLE ROCK      AR  72212 | Endorsement Number |
| --- | --- |
| | Policy Number<br>Symbol: WLR     Number: C4570984A |
| Policy Period<br>03-01-2010 TO 03-01-2011 | Effective Date of Endorsement<br>03-01-2010 |
| Issued By (Name of Insurance Company)<br>ACE AMERICAN INSURANCE COMPANY | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## PENNSYLVANIA MERIT RATING PLAN ENDORSEMENT

This endorsement applies to the insurance provided by this policy because Pennsylvania is shown in Item 3.A of the Information page.

The premium for this insurance may be subject to merit rating because your premium may be less than the amount necessary to be eligible for the uniform Experience Rating Plan.

The following premium discount or surcharge will be applied to your manual premium based on your claims during the most recent two year period for which statistics are available.

1.   A 5% credit (**discount**) will be applied if you had no compensable employee lost-time injuries – **Statistical Code 9885.**

2.   A credit or debit will be applied if you had one (1) compensable employee lost-time injury – **Statistical Code 9884.**

3.   A 5% debit (**surcharge**) will be applied if you had two (2) or more compensable employee lost-time injuries – Statistical Code 9886.



Authorized Agent

WC 37 04 05

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>**MOUNTAIRE CORPORATION**<br>1901 NAPA VALLEY DR.<br>LITTLE ROCK      AR 72212 | Endorsement Number |
| | Policy Number<br>Symbol: **WLR**   Number: **C4570984A** |
| Policy Period<br>**03-01-2010 TO** 03-01-2011 | Effective Date of Endorsement<br>**03-01-2010** |
| Issued By (Name of Insurance Company)<br>**ACE AMERICAN INSURANCE COMPANY** | |
| Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy. | |

## POLICY INFORMATION PAGE ENDORSEMENT

**The following item(s)**

| | |
|---|---|
| ☐ Insured's Name | ☐ Item 3.A. States |
| ☐ Policy Number | ☐ Item 3.B. Limits |
| ☐ Effective Date | ☐ Item 3.C. States |
| ☐ Expiration Date | ☐ Item 3.D. Endorsement Numbers |
| ☐ Insured's Mailing Address | ☒ Item 4. *Class, Rate, Other |
| ☒ Experience Modification | ☐ Audit Frequency |
| ☐ Producer's Name | ☐ Carrier Servicing Office |
| ☐ Change in Workplace(s) of Insured | ☐ Interstate/Intrastate Risk I.D.Number |
| ☐ Insured's Legal Status | ☐ Carrier Name and Number |

**is changed to read:**

IN CONSIDERATION OF PREMIUM TO BE ADJUSTED BY AUDIT,
YOUR POLICY IS AMENDED TO READ AS FOLLOWS:

INTERSTATE EXPERIENCE MODIFICATION FACTOR IS AMENDED TO
READ:       /   FOR THE FOLLOWING STATES:
AR MD ME NC SC TN
THIS EXPERIENCE MODIFICATION FACTOR IS EFFECTIVE 03-01-2010 TO 03-01-2011
AND IS FINAL.


YOUR INTERSTATE EXPERIENCE MODIFICATION IS AMENDED TO FINAL.

* See next page for Item 4. changes, if any.          POSTBAIII                    (PAGE 1 LAST PAGE)

CKE-1U76 Ptd. in U.S.A.          Copyright 1987 National Council on Compensation Insurance.          WC 99 06 00 A<br>07-09-2010 DAU<br>INSURED COPY

**Workers' Compensation and Employers' Liability Policy**

| | |
|---|---|
| Named Insured<br>**MOUNTAIRE CORPORATION**<br>**1901 NAPA VALLEY DR.**<br>**LITTLE ROCK      AR  72212** | Endorsement Number |
| | Policy Number<br>**Symbol: SCF    Number: C45709851** |
| Policy Period<br>**03-01-2010 TO 03-01-2011** | Effective Date of Endorsement<br>**03-01-2010** |
| Issued By (Name of Insurance Company)<br>**ACE AMERICAN INSURANCE COMPANY** | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## POLICY INFORMATION PAGE ENDORSEMENT

The following item(s)

| | |
|---|---|
| ☐ Insured's Name | ☐ Item 3.A. States |
| ☐ Policy Number | ☐ Item 3.B. Limits |
| ☐ Effective Date | ☐ Item 3.C. States |
| ☐ Expiration Date | ☐ Item 3.D. Endorsement Numbers |
| ☐ Insured's Mailing Address | ☒ Item 4. *Class, Rate, Other |
| ☒ Experience Modification | ☐ Audit Frequency |
| ☐ Producer's Name | ☐ Carrier Servicing Office |
| ☐ Change in Workplace(s) of Insured | ☐ Interstate/Intrastate Risk I.D.Number |
| ☐ Insured's Legal Status | ☐ Carrier Name and Number |

Is changed to read:

```
IN CONSIDERATION OF PREMIUM TO BE ADJUSTED BY AUDIT,
YOUR POLICY IS AMENDED TO READ AS PER THE ATTACHED SCHEDULE:

INTERSTATE EXPERIENCE MODIFICATION FACTOR IS AMENDED TO
READ:         FOR THE FOLLOWING STATES:
WI
THIS EXPERIENCE MODIFICATION FACTOR IS EFFECTIVE 03-01-2010 TO 03-01-2011
AND IS FINAL.


YOUR INTERSTATE EXPERIENCE MODIFICATION IS AMENDED TO FINAL.
```

See next page for Item 4. changes, if any.        POSTBAIII        (PAGE 1 LAST PAGE)

CKE-1U76 Ptd. in U.S.A.        Copyright 1987 National Council on Compensation Insurance.        **WC 99 06 00 A**
07-09-2010 DAU
INSURED COPY

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Jul-29  09:58:13
60CV-16-4170
C06D02 : 48 Pages

NORTH CAROLINA            IN THE GENERAL COURT OF JUSTICE

                                   SUPERIOR COURT DIVISION

ROBESON COUNTY            12 CVS    12CV  01673

| | |
|---|---|
| BRIAN BLUE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) **COMPLAINT** |
| v. | ) |
| | ) |
| MOUNTAIRE FARMS, INC., | ) |
| MOUNTAIRE FARMS OF NORTH | ) |
| CAROLINA CORP., MOUNTAIRE FARMS, | ) |
| LLC, CHARLES BRANTON, DANIEL | ) **JURY TRIAL DEMANDED** |
| PATE, JAMES LANIER, ROBERT | ) |
| GARROUTTE, a/k/a ROBERT | ) |
| GARROUTTE, JR., CHRISTOPHER SMITH, | ) |
| HALLEY ONDONA, THOMAS SAUFLEY, | ) |
| DETRA SWAIN, As Executrix of the Estate | ) |
| of Clifton Swain, THE ESTATE OF | ) |
| CLIFTON SWAIN, and BRADFORD | ) |
| SCOTT HANCOX, Public Administrator of | ) |
| Cumberland County, North Carolina, and as | ) |
| Successor or substitute Personal | ) |
| Representative | ) |
| And/ or Administrator And/or Collector of the | ) |
| Estate of Clifton Swain, | ) |
| | ) |
| Defendants. | |

Plaintiff, Brian Blue, complaining of Defendants named herein, alleges and says:

## PARTIES AND JURISDICTION

1. Plaintiff Brian Blue is a citizen and resident of Robeson County, North Carolina.

2. Defendant Mountaire Farms, Inc. is a corporation organized under the laws of Delaware that is authorized to do business in North Carolina, and at all times relevant to this action did maintain operations and conduct business in North Carolina, including in Robeson County, North Carolina.

EXHIBIT
B

3.   Defendant Mountaire Farms of North Carolina Corp. is a corporation organized under the laws of Delaware that is authorized to do business in North Carolina, and at all times relevant to this action did maintain operations and conduct business in North Carolina, including in Robeson County, North Carolina.

4.   Defendant Mountaire Farms, LLC is a limited liability company organized under the laws of Arkansas that is authorized to do business in North Carolina, and at all times relevant to this action did maintain operations and conduct business in North Carolina, including in Robeson County, North Carolina.

5.   Defendant Mountaire Farms, Inc., Defendant Mountaire Farms of North Carolina Corp., and Defendant Mountaire Farms, LLC are associated companies that maintain close business relationships and work together on common business projects and objectives.   Accordingly, Plaintiff hereafter refers to Defendant Mountaire Farms, Inc., Defendant Mountaire Farms of North Carolina Corp., and Defendant Mountaire Farms, LLC collectively as "Defendant Mountaire."

6.   Upon information and belief, Defendant Charles Branton is a citizen and resident of Hoke County, North Carolina.

7.   Upon information and belief, Defendant Daniel Pate is a citizen and resident of Hoke County, North Carolina.

8.   Upon information and belief, Defendant James Lanier is a citizen and resident of Robeson County, North Carolina.

9.   Upon information and belief, Defendant Robert Garroutte is a citizen and resident of Robeson County, North Carolina.   Upon information and belief, Defendant Robert Garroutte is

2

also known as Robert Garroutte, Jr. Plaintiff hereafter refers to said Defendant as "Defendant Garroutte."

10. Upon information and belief, Defendant Christopher Smith is a citizen and resident of Robeson County, North Carolina.

11. Upon information and belief, Defendant Halley Ondona is a citizen and resident of Moore County, North Carolina.

12. Upon information and belief, Defendant Thomas Saufley is a citizen and resident of Cumberland County, North Carolina.

13. Upon information and belief, Defendant Detra Swain is a citizen and resident of Cumberland County, North Carolina, and is and/or has served as the duly-appointed Executrix of the Estate of Clifton Swain (Cumberland County Estate File Number 09-E-828), after said Estate was established in Cumberland County, North Carolina, following the death of Clifton Swain on June 20, 2009.

14. Upon information and belief, Defendant The Estate of Clifton Swain (Cumberland County Estate File Number 09-E-828) is an Estate that was established in Cumberland County, North Carolina after the death of Clifton Swain on June 20, 2009.

15. Defendant Bradford Scott Hancox is a citizen and resident of Cumberland County, North Carolina, and is the Public Administrator of Cumberland County, North Carolina. Upon information and belief, Defendant Bradford Scott Hancox has been recently been appointed by the Clerk of Cumberland County as substitute Personal Representative and/ or Administrator and/or Collector of the Estate of Clifton Swain.

16. This Court has jurisdiction over the parties to and the subject matter of this action, and venue is proper in this Court.

3

## FACTUAL PREDICATE TO IMPOSITION OF LIABILITY

17. Plaintiff hereby incorporates the allegations of the previous paragraphs of this Complaint by reference as if fully set forth herein.

### DEFENDANT MOUNTAIRE'S POULTRY PROCESSING PLANT

18. At all times relevant to this action, Defendant Mountaire has operated a poultry processing plant in Lumber Bridge, Robeson County, North Carolina. Defendant Mountaire purchased said poultry processing plant from Piedmont Poultry Company, Inc. in 1996.

19. Upon taking over the subject poultry processing plant in Lumber Bridge, North Carolina in 1996, Defendant Mountaire instituted a plan to increase the level of production at that facility. By 1999, Defendant Mountaire roughly doubled the production of said poultry processing plant.

20. At all times relevant to this action, Defendant Mountaire has used ammonia as a refrigerant in its poultry processing plant in Lumber Bridge, North Carolina.

21. Although ammonia is a natural gas, exposure to high levels of it is dangerous and potentially lethal.

22. The Clean Air Act, 42 U.S.C. § 112 (1990), ("the Act") regulates releases of hazardous chemicals. Under the Act, the Environmental Protection Agency ("EPA") enacted 40 C.F.R. § 68, which requires certain facilities to develop and implement a Risk Management Plan that includes a hazard assessment and an accident prevention program.

23. The EPA is authorized to delegate its authority to implement and enforce the requirements of the Act to state agencies, pursuant to 42 U.S.C. § 112(I). In North Carolina, the EPA delegated its Federal authority to the North Carolina Division of Air Quality ("NCDAQ"), pursuant to 15A N. C. Admin. Code 2D.2100 (adopting 40 C.F.R. § 68 by reference).

4

24. Ammonia is a substance regulated by the Act. At all times relevant to this action, Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina has been subject to 40 C.F.R. § 68 because it is a stationary source that contains more than 10,000 pounds of ammonia, a substance regulated by the Act, in a single process.

25. Pursuant to the Act, at all times relevant to this action, Defendant Mountaire was required to have a Risk Management Plan, to institute and maintain training requirements, to perform certain maintenance on various items of equipment, to follow certain management of change procedures, and to comply with various other requirements.

26. At all times relevant to this action, multiple aspects of Defendant Mountaire's operations at its poultry processing plant in Lumber Bridge, North Carolina were subject to the provisions of 28 C.F.R. § 1910.147, which regulates the control of hazardous energy through the process of locking out or tagging out certain machines and equipment.

27. At all times relevant to this action, multiple aspects of Defendant Mountaire's operations at its poultry processing plant in Lumber Bridge, North Carolina were subject to the provisions of 28 C.F.R. § 1910.119, which regulates process safety management of highly hazardous chemicals that may cause harm upon their release.

28. At all times relevant to this action, Defendant Mountaire also had a culture at its poultry processing plant in Lumber Bridge, North Carolina of prioritizing profitability and business objectives over the safety of its employees, although Defendant Mountaire knew that its corporate culture was substantially certain to cause serious injury or death to some of its employees.

29. At all times relevant to this action, Defendant Mountaire's culture at its poultry processing plant in Lumber Bridge, North Carolina of prioritizing profitability and business

5

objectives over the safety of its employees caused various management-level and supervisory employees of Defendant Mountaire, including certain managers and supervisors with authority over safety and maintenance named as Defendants herein, to assign, delegate, and perform tasks in a manner that Defendant Mountaire knew were substantially certain to cause serious injury or death to some of its employees.

30. At all times relevant to this action, Defendant Mountaire had a culture at its poultry processing plant in Lumber Bridge, North Carolina that caused certain racial minorities to be intimidated and fearful of challenging the authority or requests of their supervisors.

31. The culture that Defendant Mountaire had at is poultry processing plant in Lumber Bridge, North Carolina caused racial minority employees to fear refusing to perform jobs assigned to them by managers or supervisors, even when the employees receiving those job assignments were unqualified, unfit, or not properly trained to perform such jobs, for fear that Defendant Mountaire would terminate those employees as a result thereof.

32. Defendant Thomas Saufley, Defendant Halley Ondona, Defendant Christopher Smith, Defendant Robert Garroutte, Defendant James Lanier, Defendant Daniel Pate, and Defendant Charles Branton were aware of and participated in Defendant Mountaire's failure to comply with applicable regulations and safety standards as well as its dangerous and inappropriate corporate culture, and said Defendants were aware of and participated in the threats posed to Defendant Mountaire's employees as a result thereof, as discussed herein.

## DEFENDANT MOUNTAIRE'S FAULTY RISK MANAGEMENT PLAN

33. At all times relevant to this action, Defendant Mountaire was required to have a Risk Management Plan at its poultry processing plant in Lumber Bridge, North Carolina that complied with the requirements of the Act.

34. At all times relevant to this action, Defendant Mountaire failed to have a Risk Management Plan at its poultry processing plant in Lumber Bridge, North Carolina that complied with the requirements of the Act.

35. At all times relevant to this action, Defendant Mountaire deliberately disregarded its obligation to comply with the Act and knowingly operated its poultry processing plant in Lumber Bridge, North Carolina without a Risk Management Plan that complied with the requirements of the Act.

36. Defendant Mountaire's deliberate disregard of its obligation to operate its poultry processing plant in Lumber Bridge, North Carolina with a proper Risk Management Plan was related to its corporate culture of prioritizing profitability and business objectives over the safety of its employees.

37. At all times relevant to this action, and prior to June 20, 2009, Defendant Mountaire, by and through its officers, directors, employees, and agents, including by not limited to certain Defendants named herein, knew that its deliberate failure to institute a Risk Management Plan at its poultry processing plant in Lumber Bridge, North Carolina that complied with the Act was substantially certain to cause serious injury or death to its employees.

38. In March 2008, NCDAQ issued a Notice of Violation to Defendant Mountaire at its poultry processing plant in Lumber Bridge, North Carolina for multiple violations of the Risk Management Plan required by the Act.

39. NCDAQ issued Defendant Mountaire a penalty of Four Thousand Five Hundred and Six Dollars ($4,506.00) in June 2008, as a result Defendant Mountaire's above-referenced violation of the Act's Risk Management Plan.  Defendant Mountaire paid that penalty in July 2008.

7

40. Thus, by 2008, Defendant Mountaire had actual notice that its Risk Management Plan at its poultry processing plant in Lumber Bridge, North Carolina did not comply with the Act.

41. In March 2009, NCDAQ issued a Notice of Violation to Defendant Mountaire at its poultry processing plant in Lumber Bridge, North Carolina for its failure to meet stipulations imposed by and to provide notice to NCDAQ.

42. Following the above-referenced Notices of Violation, Defendant Mountaire willfully, wantonly, and recklessly failed to make any material changes to its Risk Management Plan at its poultry processing plant in Lumber Bridge, North Carolina until after June 20, 2009.

43. Defendant Saufley, as Complex Safety and Health Manager for Defendant Mountaire at its poultry processing plant in Lumber Bridge, North Carolina, had ultimate authority over and responsibility for safety and health, including the safety and health of Defendant Mountaire's employees, at said poultry processing plant on June 20, 2009 and for a previous duration of time.

44. Defendant Saufley was aware on and before June 20, 2009 that Defendant Mountaire did not have a Risk Management Plan at its poultry processing plant in Lumber Bridge, North Carolina that complied with the Act, and that said failure was substantially certain to cause serious injury or death to one or more employees at said location.

45. Defendant Ondona, as Engineering Maintenance Manager for Defendant Mountaire at its poultry processing plant in Lumber Bridge, North Carolina, was directly responsible for implementing the Risk Management Plan at said location in June 2009.

46. Defendant Ondona was aware before June 20, 2009 that Defendant Mountaire did not have a Risk Management Plan at its poultry processing plant in Lumber Bridge, North Carolina that complied with the Act, and that said failure was substantially certain to cause serious injury or death to one or more employees at said location.

47. Defendant Smith, as Maintenance Manager for Defendant Mountaire at its poultry processing plant in Lumber Bridge, North Carolina, was aware before June 20, 2009 that Defendant Mountaire did not have a Risk Management Plan at its poultry processing plant in Lumber Bridge, North Carolina that complied with the Act, and that said failure was substantially certain to cause serious injury or death to one or more employees at said location.

48. Defendant Garroutte, as Maintenance Manager for Defendant Mountaire at its poultry processing plant in Lumber Bridge, North Carolina, was aware before June 20, 2009 that Defendant Mountaire did not have a Risk Management Plan at its poultry processing plant in Lumber Bridge, North Carolina that complied with the Act, and that said failure was substantially certain to cause serious injury or death to one or more employees at said location.

49. Upon information and belief, despite having the actual knowledge described above, Defendant Saufley, Defendant Ondona, Defendant Smith, and Defendant Garroutte willfully, wantonly, and recklessly failed to take feasible, necessary, and appropriate action(s) to implement a Risk Management Plan at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina that complied with the Act in order to further Mountaire's corporate culture of maximizing profitability and business objectives over the safety of its workers, even though their inaction(s) in these areas was substantially certain to cause serious injury or death to an employee or employees.

### DEFENDANT MOUNTAIRE'S FAILURE TO PROVIDE SAFETY TRAINING

50. At all times relevant to this action, Defendant Mountaire was required to institute, maintain, or monitor training procedures and requirements related to safety that complied with the requirements of the Act at its poultry processing plant in Lumber Bridge, North Carolina.

51. At all times relevant to this action, Defendant Mountaire failed to institute, maintain, or monitor training procedures and requirements related to safety that complied with the requirements of the Act at its poultry processing plant in Lumber Bridge, North Carolina.

52. At all times relevant to this action, Defendant Mountaire deliberately disregarded its obligation to comply with the Act and knowingly operated its poultry processing plant in Lumber Bridge, North Carolina without training procedures and requirements related to safety that complied with the requirements of the Act.

53. At all times relevant to this action, and prior to June 20, 2009, Defendant Mountaire, by and through its officers, directors, employees, and agents, including by not limited to certain Defendants named herein, knew that its deliberate failure to institute training procedures and requirements related to safety that complied with the Act was substantially certain to cause serious injury or death to employees at its poultry processing plant in Lumber Bridge, North Carolina.

54. At all times relevant to this action, and prior to June 20, 2009, Defendant Mountaire knew that many of its employees who worked with and in close proximity to dangerous machines and equipment, including votators containing ammonia, had not received or complied with the safety training required by the Act, and did not have adequate safety training to work in said environment at its poultry processing plant in Lumber Bridge, North Carolina.

55. Despite Defendant Mountaire's actual knowledge prior to June 20, 2009 that many of its employees or agents at its poultry processing plant in Lumber Bridge, North Carolina who worked with and in close proximity to dangerous machines and equipment, including votators containing ammonia, had not received or complied with the safety training required by the Act, and did not have adequate safety training to work in such environment, Defendant Mountaire

willfully, wantonly, and recklessly allowed its untrained employees to work with and in close proximity to votators and other dangerous machinery.

56. At all times relevant to this action, and prior to June 20, 2009, Defendant Mountaire's employees at its poultry processing plant in Lumber Bridge, North Carolina suffered from numerous injuries on the job, including numerous injuries involving exposure to chemicals in the three years preceding June 20, 2009, and Defendant Mountaire had actual knowledge that its high rate of injuries was related directly to its failure to institute and maintain training procedures and requirements related to safety that complied with the requirements of the Act.

57. At all times relevant to this action, and prior to June 20, 2009, through its own internal records, Defendant Mountaire had actual knowledge that many of its employees or agents at its poultry processing plant in Lumber Bridge, North Carolina who worked with and in close proximity to dangerous machines and equipment using ammonia, including votators containing ammonia, had not received or complied with the safety training required by the Act, and did not have adequate safety training to work in such environment.

58. At all times relevant to this action, and prior to June 20, 2009, Defendant Mountaire disregarded, ignored, and willfully, wantonly, and recklessly failed to maintain proper records related to the safety training of its employees at its poultry processing plant in Lumber Bridge, North Carolina.

59. At all times relevant to this action, and prior to June 20, 2009, Defendant Mountaire's employees at its poultry processing plant in Lumber Bridge, North Carolina suffered from numerous injuries on the job, including numerous injuries involving exposure to chemicals in the three years preceding June 20, 2009, and Defendant Mountaire had actual knowledge that its

11

high rate of injuries was related directly to its failure to maintain proper records related to the safety training of its employees at its poultry processing plant in Lumber Bridge, North Carolina.

60. Upon information and belief, at all times relevant to this action, and prior to June 20, 2009, Defendant Saufley, Defendant Ondona, Defendant Smith, Defendant Garroutte, and Defendant Lanier had actual knowledge that many of Defendant Mountaire's employees or agents at its poultry processing plant in Lumber Bridge, North Carolina who worked with and in close proximity to dangerous machines and equipment, including votators containing ammonia, had not received or complied with the safety training required by the Act, and did not have adequate safety training to work in such environment.

61. Upon information and belief, at all times relevant to this action, and prior to June 20, 2009, Defendant Saufley, Defendant Ondona, Defendant Smith, Defendant Garroutte, and Defendant Lanier had actual knowledge that Defendant Mountaire's high rate of injuries at its poultry processing plant in Lumber Bridge, North Carolina was related directly to Defendant Mountaire's failure to institute and maintain training procedures and requirements related to safety that complied with the requirements of the Act.

62. Upon information and belief, at all times relevant to this action, and prior to June 20, 2009, Defendant Saufley, Defendant Ondona, Defendant Smith, Defendant Garroutte, and Defendant Lanier had actual knowledge that Defendant Mountaire's high rate of injuries at its poultry processing plant in Lumber Bridge, North Carolina was related directly to its failure to maintain proper records related to the safety training of its employees.

63. Upon information and belief, despite having the actual knowledge described above, Defendant Saufley, Defendant Ondona, Defendant Smith, Defendant Garroutte, and Defendant Lanier willfully and wantonly failed to take feasible, necessary, and appropriate action(s) to

improve the state of safety training or records thereof at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina in order to further Mountaire's corporate culture of maximizing profitability and business objectives over the safety of its workers, even though their inaction(s) in these areas was substantially certain to cause serious injury or death to an employee or employees.

## DEFENDANT MOUNTAIRE'S FAILURE TO CONTROL DANGEROUS EQUIPMENT

64. At all times relevant to this action, Defendant Mountaire was required to control hazardous energy through the process of locking out, tagging out, labeling, and otherwise marking and protecting certain machines and equipment, including its votators, control valves, and piping containing ammonia at its poultry processing plant in Lumber Bridge, North Carolina.

65. At all times relevant to this action, Defendant Mountaire failed to have a procedure at its poultry processing plant in Lumber Bridge, North Carolina to lock out, tag out, label, or otherwise mark and protect its votators, control valves, and piping containing ammonia that complied with applicable OSHA requirements.

66. At all times relevant to this action, Defendant Mountaire deliberately disregarded its obligation to comply with applicable OSHA requirements and knowingly operated its poultry processing plant in Lumber Bridge, North Carolina without a procedure to lock out, tag out, label, or otherwise mark and protect its votators, control valves, and piping containing ammonia that complied with applicable OSHA requirements.

67. At all times relevant to this action, and prior to June 20, 2009, Defendant Mountaire knew that its deliberate failure to lock out, tag out, label, or otherwise mark and protect its votators, control valves, and piping containing ammonia at its poultry processing plant in

13

Lumber Bridge, North Carolina that complied with applicable OSHA requirements was substantially certain to cause serious injury or death.

68. Prior to June 20, 2009, Defendant Mountaire had been cited and fined multiple times by the Occupational Safety and Health Administration ("OSHA") for violations involving failures to lock out, tag out, label, or otherwise mark and protect dangerous equipment and devices at its poultry processing plant in Lumber Bridge, North Carolina.

69. In April 2004, OSHA cited Defendant Mountaire for a failure to lock out or tag out equipment that was subject to lock out and tag out guidelines, and for instructing its maintenance department not to use necessary and required lock out or tag out procedures at its poultry processing plant in Lumber Bridge, North Carolina.

70. In April 2009, OSHA cited Defendant Mountaire multiple times for failing to provide written lock out or tag our procedures in circumstances when it was required to do so at its poultry processing plant in Lumber Bridge, North Carolina.

71. Upon information and belief, prior to June 20, 2009, there were various other incidents involving Defendant Mountaire's failure to have a procedure at its poultry processing plant in Lumber Bridge, North Carolina to lock out, tag out, label, or otherwise mark and protect its votators, control valves, and piping containing ammonia that complied with applicable OSHA requirements that caused Defendant Mountaire to know that its operations involving locking out, tagging out, labeling, or otherwise marking and protecting its votators, control valves, and piping containing ammonia was ineffective, dangerous, and substantially certain to cause serious injury or death. Upon information and belief, many of the incidents referenced above did not result in any formal documentation of any sort of action by any governmental agency.

72. Upon information and belief, on June 20, 2009, Defendant Mountaire did not have new or conspicuous danger labels or safety instructions on its votators at its poultry processing plant in Lumber Bridge, North Carolina.

73. Upon information and belief, on June 20, 2009, Defendant Mountaire did not have any identification tags on many of the control valves for its votators at its poultry processing plant in Lumber Bridge, North Carolina.

74. Upon information and belief, at all times relevant to this action, and prior to June 20, 2009, Defendant Saufley, Defendant Ondona, Defendant Smith, Defendant Garroutte, Defendant Lanier, Defendant Pate, and Defendant Branton had actual knowledge that Defendant Mountaire failed to have a procedure at its poultry processing plant in Lumber Bridge, North Carolina to lock out, tag out, label, or otherwise mark and protect its votators, control valves, and piping containing ammonia that complied with applicable OSHA requirements.

75. Upon information and belief, at all times relevant to this action, and prior to June 20, 2009, Defendant Saufley, Defendant Ondona, Defendant Smith, Defendant Garroutte, Defendant Lanier, Defendant Pate, and Defendant Branton had actual knowledge that Defendant Mountaire's high rate of injuries at its poultry processing plant in Lumber Bridge, North Carolina was related directly to its failure to lock out, tag out, label, or otherwise mark and protect its votators, control valves, and piping containing ammonia that complied with applicable OSHA requirements.

76. Upon information and belief, at all times relevant to this action, and prior to June 20, 2009, Defendant Saufley, Defendant Ondona, Defendant Smith, Defendant Garroutte, Defendant Lanier, Defendant Pate, and Defendant Branton willfully and wantonly failed to take feasible, necessary, and appropriate action to improve the state of locking out, tagging out, labeling, or

otherwise marking and protecting its votators, control valves, and piping containing ammonia at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina in order to further Mountaire's corporate culture of maximizing profitability and business objectives over the safety of its workers, even though their inaction(s) in these areas was substantially certain to cause serious injury or death to an employee or employees.

### DEFENDANT MOUNTAIRE'S RECKLESS HANDLING OF AMMONIA

77. At all times relevant to this action, Defendant Mountaire used pieces of equipment called "votators" that used substantial quantities of ammonia to keep poultry at an appropriately cool temperature at its poultry processing plant in Lumber Bridge, North Carolina.

78. At all times relevant to this action, Defendant Mountaire supplied ammonia to its votators at its poultry processing plant in Lumber Bridge, North Carolina via the use of a system of piping.

79. At all times relevant to this action, the votators Defendant Mountaire used in its poultry processing plant in Lumber Bridge, North Carolina contained a high volume of concentrated ammonia, unless Defendant Mountaire had drained those votators of ammonia.

80. At all times relevant to this action, the votators Defendant Mountaire used in its poultry processing plant in Lumber Bridge, North Carolina had certain control valves designed to be used when the votators were not filled with ammonia.

81. At all times relevant to this action, Defendant Mountaire had the capacity to drain the ammonia from the votators used in its poultry processing plant in Lumber Bridge, North Carolina.

82. At all times relevant to this action, Defendant Mountaire was required to comply with the requirements of the Act for safely operating and maintaining the mechanical integrity of its ammonia-based refrigeration system.

83. At all times relevant to this action, Defendant Mountaire failed to address or comply with the requirements of the Act for safely operating and maintaining the mechanical integrity of its ammonia-based refrigeration system.

84. At all times relevant to this action, Defendant Mountaire deliberately disregarded its obligation to comply with the requirements of the Act and knowingly operated its poultry processing plant in Lumber Bridge, North Carolina without addressing its need to safely operate and maintain the mechanical integrity of its ammonia-based refrigeration system.

85. From 1996, when Defendant Mountaire purchased the subject poultry processing plant in Lumber Bridge, North Carolina from Piedmont Poultry Company, Inc., through June 20, 2009, Defendant Mountaire experienced significant problems, and its employees suffered from numerous serious injuries, related to the safety of its votators as well as with various other aspects of its ammonia-based refrigeration system at said location.

86. In particular, on November 8, 1998, there was a release of 600 pounds of ammonia from Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina.

87. As a result of the ammonia release on November 8, 1998, Defendant Mountaire had actual notice that there was a serious risk of a substantial and dangerous release of ammonia at its poultry processing plant in Lumber Bridge, North Carolina.

88. Upon information and belief, prior to June 20, 2009, there were various incidents involving ammonia-based refrigeration at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina that caused Defendant Mountaire to know that its operations

17

involving ammonia-based refrigeration were ineffective, dangerous, and substantially certain to cause serious injury or death. Upon information and belief, many of the incidents referenced above did not result in any formal documentation or any sort of action by any governmental agency.

89. The use of ammonia in refrigeration systems constitutes an inherently dangerous activity, and Defendant Mountaire was aware of the inherently dangerous nature of its ammonia-based refrigeration system prior to and on June 20, 2009.

90. The ammonia-based refrigeration system Defendant Mountaire employed at all times relevant to this action, including on June 20, 2009, posed a substantial risk of causing serious injury or death, and Defendant Mountaire was aware of the substantial risk that its handling of ammonia would cause serious injury or death prior to and on June 20, 2009.

91. Prior to June 20, 2009, Defendant Mountaire was aware that organizations such as the International Institute of Ammonia Refrigeration ("IIAR") and the Refrigerating Engineers and Technicians Association ("RETA") had developed industry standards for safely handling and working with of ammonia in refrigeration systems.

92. Prior to June 20, 2009, Defendant Mountaire did not to adopt or follow any particular standards for handling and working with its ammonia-based refrigeration system in its poultry processing plant in Lumber Bridge, North Carolina.

93. Prior to and on June 20, 2009, Defendant Mountaire had in place a computerized maintenance management system.

94. Defendant Mountaire used the computerized maintenance management system that it had in place prior to and on June 20, 2009 to generate work orders for maintenance tasks that Defendant Mountaire assigned for its employees to complete.

95. Defendant Mountaire's computerized maintenance management system that it had in place prior to and on June 20, 2009 did not make any distinction between work orders involving hazardous chemicals (such as ammonia) or specialized activities (such as refrigeration) from other work orders.

96. At all times relevant to this action, and on June 20, 2009, Defendant Mountaire was aware that its computerized maintenance management system did not make any distinction between work orders involving hazardous chemicals (such as ammonia) or specialized activities (such as refrigeration) from other work orders.

97. At all times relevant to this action, and on June 20, 2009, Defendant Mountaire employed in its Lumber Bridge, North Carolina poultry processing plant refrigeration technicians who possessed specialized training and/or experience with matters related to refrigeration, including the use of ammonia-based refrigeration thereabouts.

98. At all times relevant to this action, and on June 20, 2009, Defendant Mountaire required the refrigeration technicians it employed in its Lumber Bridge, North Carolina poultry processing plant to have training and certification(s) related to the safe and proper servicing and handling of ammonia-based refrigeration systems.

99. At all times relevant to this action, and on June 20, 2009, Defendant Mountaire had particular employee(s), agent(s), or independent contractor(s) who were trained and competent to work safely with the ammonia-based refrigeration system that Defendant Mountaire had at its poultry processing plant in Lumber Bridge, North Carolina.

100. At all times relevant to this action, and on June 20, 2009, Defendant Mountaire was aware that the failure of its computerized maintenance management system to make any distinction between work orders involving hazardous chemicals (such as ammonia) or

specialized activities (such as refrigeration) from other work orders caused certain work orders designated and required to be performed by the particular employee(s), agent(s), or independent contractor(s) who were trained and competent to work safely with the ammonia-based refrigeration system that Defendant Mountaire had at its poultry processing plant in Lumber Bridge, North Carolina to be assigned to certain of its employee(s), agents(s), or independent contractors who did not possess the knowledge, skill, and qualification to complete such work orders involving ammonia in a safe and proper manner.

101. At all times relevant to this action, and on June 20, 2009, Defendant Mountaire knew that shortcomings with its computerized maintenance management system and its system of assigning work orders periodically caused unqualified people to attempt to perform work orders involving its ammonia-based refrigeration system in a manner that was dangerous and substantially certain to lead to serious injury or death.

102. At all times relevant to this action, and on June 20, 2009, Defendant Mountaire knew that shortcomings with its computerized maintenance management system caused work orders involving its ammonia-based refrigeration system to be received by area maintenance managers and superintendents who were likely not to assign such work orders to particular employee(s), agent(s), or independent contractor(s) who were trained and competent to work safely with the ammonia-based refrigeration system that Defendant Mountaire had at its poultry processing plant in Lumber Bridge, North Carolina.

103. At all times relevant to this action, and on June 20, 2009, Defendant Lanier had actual knowledge that work orders involving the ammonia-based refrigeration system at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina needed to be assigned to particular employee(s), agent(s), or independent contractor(s) who were trained and competent to

20

work safely with said ammonia-based refrigeration system, but were not being assigned to those particular employee(s), agent(s), or independent contractor(s) who were trained and competent to work safely with said ammonia-based refrigeration system.

104. At all times relevant to this action, and on June 20, 2009, Defendant Lanier participated in the process of assigning work orders involving the ammonia-based refrigeration system at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina not being assigned to particular employee(s), agent(s), or independent contractor(s) who were trained and competent to work safely with said ammonia-based refrigeration system.

105. At all times relevant to this action, and on June 20, 2009, Defendant Pate had actual knowledge that work orders involving the ammonia-based refrigeration system at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina were not being assigned to particular employee(s), agent(s), or independent contractor(s) who were trained and competent to work safely with said ammonia-based refrigeration system.

106. At all times relevant to this action, and on June 20, 2009, Defendant Pate participated in the process of assigning work orders involving the ammonia-based refrigeration system at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina not being assigned to particular employee(s), agent(s), or independent contractor(s) who were trained and competent to work safely with said ammonia-based refrigeration system.

107. At all times relevant to this action, and on June 20, 2009, Defendant Branton had actual knowledge that work orders involving the ammonia-based refrigeration system at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina were not being assigned to particular employee(s), agent(s), or independent contractor(s) who were trained and competent to work safely with said ammonia-based refrigeration system.

108. At all times relevant to this action, and on June 20, 2009, Defendant Branton participated in the process of assigning work orders involving the ammonia-based refrigeration system at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina not being assigned to particular employee(s), agent(s), or independent contractor(s) who were trained and competent to work safely with said ammonia-based refrigeration system.

109. Sometime in or around April or May 2009, one or more inspector(s) from the United States Department of Agriculture ("USDA") ordered Defendant Mountaire to replace an inner sleeve on a particular votator, which Defendant Mountaire designated as "votator number two," at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina.

110. The USDA ordered Defendant Mountaire to replace the inner sleeve on "votator number two" at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina because "votator number two" was pitted and otherwise did not meet USDA standards for sanitation.

111. In addition, at that time "votator number two" at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina was in poor condition and had been leaking ammonia for some period of time.

112. When in April or May 2009 the USDA ordered Defendant Mountaire to replace an inner sleeve on "votator number two" at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina, the USDA gave Defendant Mountaire a deadline of on or about June 20, 2009 to replace the inner sleeve on "votator number two."

113. Upon information and belief, before the USDA ordered Defendant Mountaire to replace an inner sleeve on "votator number two" at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina, Defendant Mountaire had not established, and did not follow,

22

any regular schedule of maintenance for the inner sleeves of its votators at its poultry processing plant in Lumber Bridge, North Carolina.

114. After the USDA ordered Defendant Mountaire in April or May 2009 to replace an inner sleeve on "votator number two" at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina, Defendant Mountaire ordered a replacement inner sleeve for "votator number two" to be delivered to its poultry processing plant in Lumber Bridge, North Carolina.

115. Sometime in April, May, or June 2009, a replacement inner sleeve for "votator number two" arrived at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina, and Defendant became aware that said part had arrived thereabouts.

116. After the USDA ordered Defendant Mountaire in April 2009 to replace an inner sleeve on "votator number two" at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina, Defendant Ondona, as an employee and agent of Defendant Mountaire acting in the due course of his employment, erroneously, willfully, wantonly, and recklessly determined that the inner sleeve on "votator number two" was "field serviceable," meaning capable of being serviced in the normal course of Defendant Mountaire's operations.

117. Upon information and belief, Defendant Ondona willfully, wantonly, and recklessly, without concern for or consideration of the safety of Defendant Mountaire's employees, made the above-referenced determination about the servicing of "votator number two" without making a reasonable, necessary, or appropriate inquiry into that subject, with the knowledge that the repair of "votator number two" involved and implicated numerous safety concerns and was substantially certain to cause serious injury or death if not performed by a trained, experienced, and competent person.

23

118. Defendant Mountaire, by and through Defendant Ondona, and possibly other employee(s) and agent(s) of Defendant Mountaire, made a conscious decision not to contract the replacement of the inner sleeve of "votator number two" to a specialist or independent contractor, but rather to have the regular maintenance staff at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina perform that repair, on the premises of said plant, and in the normal course of operations thereabouts.

119. In June 2009, Defendant Mountaire used its computerized maintenance management system in place at that time to a generate work order for the replacement of the inner sleeve for "votator number two" at its poultry processing plant in Lumber Bridge, North Carolina.

120. When in June 2009 Defendant Mountaire generated a work order for the replacement of the inner sleeve for "votator number two" at its poultry processing plant in Lumber Bridge, North Carolina, it did not take any action to assign that particular work order to any of its particular employee(s), agent(s), or independent contractor(s), including the employee(s), agent(s), or independent contractor(s) who were trained and competent to work safely with the ammonia-based refrigeration system that Defendant Mountaire had at its poultry processing plant in Lumber Bridge, North Carolina in June 2009.

121. When in June 2009 Defendant Mountaire generated a work order for the replacement of the inner sleeve for "votator number two" at its poultry processing plant in Lumber Bridge, North Carolina, it did not take any action to assign that particular work order to any of its particular employee(s), agent(s), independent contractor(s), or refrigeration technicians who Defendant Mountaire had in place at the time who were trained and competent to work safely with the ammonia-based refrigeration system that Defendant Mountaire had at its poultry processing plant in Lumber Bridge, North Carolina.

122. When in June 2009 Defendant Mountaire generated a work order for the replacement of the inner sleeve for "votator number two" at its poultry processing plant in Lumber Bridge, North Carolina, Defendant Lanier received said work order and provided said work order to Defendant Pate and/or Defendant Branton to assign to a particular employee of Defendant Mountaire to implement and complete.

123. When in June 2009 Defendant Lanier received the work order for the replacement of the inner sleeve for "votator number two" at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina, Defendant Lanier was aware that said work order needed to be assigned to refrigeration technician(s) or qualified independent contractor(s), but Defendant Lanier took no action to have said work order assigned to refrigeration technician(s) or qualified independent contractor(s).

124. As of and before June 20, 2009, Defendant Branton and Defendant Pate had developed accurate and well-deserved reputations for not working to promote safety or implement and enforce safety measures or regulations in an appropriate, reasonable, or proper manner, and Defendant Lanier was aware that Defendant Branton and Defendant Pate each had such reputations at said time.

125. When in June 2009 Defendant Mountaire generated a work order for the replacement of the inner sleeve for "votator number two" at its poultry processing plant in Lumber Bridge, North Carolina, Defendant Pate and Defendant Branton each received and reviewed said work order before the morning of June 20, 2009, as such Defendant Pate and Defendant Branton each were aware of the contents of said work order before the morning of June 20, 2009.

126. On June 20, 2009, Defendant Mountaire was under a time constraint to replace the inner sleeve in "votator number two" at its poultry processing plant in Lumber Bridge, North Carolina,

as failed to abide by the USDA's order would have resulted in the risk that the USDA might shut down said poultry processing plant until Defendant Mountaire completed said repair.

127. On June 20, 2009, Defendant Mountaire had scheduled certain refrigeration technicians it employed in its Lumber Bridge, North Carolina poultry processing plant to work that day, and said refrigeration technicians did in fact report to work thereabouts at said time, and were available to Defendant Mountaire to perform repairs on "votator number two."

128. To replace the inner sleeve on "votator number two" in a safe and appropriate manner, Defendant Mountaire had to remove the ammonia in the system from "votator number two" prior to accessing the inner sleeve of said votator.

129. Remove the ammonia in the system from "votator number two" prior to accessing the inner sleeve of said votator would have been very costly to Defendant Mountaire.

130. Defendant Mountaire and its managers and supervisors, including certain Defendants named herein, chose not to perform the work order for "votator number two" with qualified refrigeration technicians in an attempt to keep its poultry processing plant in Lumber Bridge, North Carolina open and operating for as long as possible, rather than properly draining the ammonia from said votator, which would have required substantial time and effort and would have caused Defendant Mountaire to experience financial losses.

## THE INCIDENT OF JUNE 20, 2009

131. Plaintiff hereby incorporates the allegations of the previous paragraphs of this Complaint by reference as if fully set forth herein.

132. In or around May 2007, Defendant Mountaire, through its agents and employees, hired and began to employ Plaintiff Brian Blue to work as a mechanic and welder in Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina.

133. In or around 2001, Defendant Mountaire, through its agents and employees, hired and began to employ Clifton Swain as a mechanic to work in Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina.

134. Upon information and belief, Clifton Swain had never been trained in the field of refrigeration systems, including ammonia-based refrigeration systems, when Defendant Mountaire hired him.

135. Defendant Mountaire did not provide Clifton Swain with any training in the field of refrigeration systems, including ammonia-based refrigeration systems.

136. At all times relevant to this action, Defendant Mountaire had actual and constructive notice that Clifton Swain did not possess any training in the field of refrigeration or ammonia-based refrigeration.

137. On Saturday, June 20, 2009, Plaintiff Blue and Clifton Swain both were scheduled to work at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina,

138. On Saturday, June 20, 2009, at about 8:00 a.m., Plaintiff Blue and Clifton Swain both reported to work at their respective jobs, in the course and scope of their work for and employment with Defendant Mountaire at its poultry processing plant in Lumber Bridge, North Carolina.

139. On June 20, 2009, Defendant Branton was the supervisor for Defendant Mountaire with direct authority over Plaintiff Blue and Clifton Swain.

140. On June 20, 2009, Defendant Branton undertook to supervise, monitor, and instruct Plaintiff Blue and Clifton Swain, in the course and scope of Defendant Branton's work for and employment with Defendant Mountaire.

27

141. On June 20, 2009, at approximately 8:30 a.m., Defendant Charles Branton provided Plaintiff Blue and Clifton Swain with separate written work orders.

142. The written work order that Defendant Branton provided to Clifton Swain on June 20, 2009 instructed Swain to replace the inner sleeve on "votator number two" at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina.

143. On June 20, 2009, by and through the above-referenced written work order, Defendant Branton ordered Clifton Swain to replace the inner sleeve of "votator number two" without having anyone shut down the ammonia system or do anything else to shut down the ammonia thereto.

144. To safely and properly replace the inner sleeve on "votator number two," Defendant Mountaire was required to remove the ammonia in the system from "votator number two," and remove the ammonia from all of the supply lines to and from "votator number two" prior to accessing the inner sleeve of the votator.

145. Moreover, in the "MDM room" where "votator number two" was located, there were three other votators that were connected to the same ammonia gas lines as "votator number two" in one large continuous loop. The ammonia supply lines were connected to a large ammonia storage tank outside the building and a separate tank with a lock-out / tag-out valve that was used to drain off the ammonia when it was necessary to remove the ammonia from the system to service any part of the ammonia lines or votators.

146. Moreover, to safely and properly perform the service of replacing the sleeve on "votator number two," it would take approximately a day to properly drain the ammonia out of the supply lines and votators. Then, it would then take several hours to dismantle "votator number two" and reassemble it with the new inner sleeve, assuming there were no unforeseen complications.

Finally, it would take approximately twelve hours to pressurize the system with ammonia again so it could be reused again.

147. During the approximately two days that it would take to drain the ammonia out of the system, repair votator number two, and re-pressurize the system, Defendant Mountaire would have had to shut down the rest of its poultry processing plant in Lumber Bridge, North Carolina.

148. In order to timely comply with the USDA order requiring Mountaire to replace the inner sleeve on "votator number two," Defendant Saufley, Defendant Ondona, Defendant Smith, Defendant Garroutte, Defendant Lanier, Defendant Pate, and Defendant Branton, as agents of Defendant Mountaire and each other, willfully, wantonly, and recklessly determined that inner sleeve should be replaced on June 20, 2009, a Saturday, in order to maximize production and to avoid interfering with the work week.

149. Upon information and belief, Defendant Saufley, Defendant Ondona, Defendant Smith, Defendant Garroutte, Defendant Lanier, Defendant Pate, and Defendant Branton, as agents of Defendant Mountaire and each other, willfully, wantonly, and recklessly knew that "votator number two" was scheduled to be moved by an independent contractor the weekend following June 20, 2009, that the ammonia system would have be drained down for the votator to be moved at that time, and that the inner sleeve could have been replaced the following weekend.

150. However, upon information and belief, because of the corporate culture of maximizing profit and productivity over the health and safety of its employees, Defendant Mountaire, by and through its agents, determined that they needed to comply with the USDA order so as not to be subject to additional sanctions from the USDA, and caused a work order to be issued for the inner sleeve to be replaced on June 20, 2009 instead.

151. Upon information and belief, Defendant Saufley, Defendant Ondona, Defendant Smith, Defendant Garroutte, Defendant Lanier, Defendant Pate, and Defendant Branton, as agents of Defendant Mountaire and each other, willfully, wantonly, and recklessly caused a work order to be issued to Clifton Swain to replace the inner sleeve on votator number two without any understanding about how to perform a repair involving extremely hazardous ammonia under that was maintained under high pressure.

152. On June 20, 2009, at about 8:30 a.m., Defendant Branton passed out the work orders, including the order for Clifton Swain to replace the inner sleeve of "votator number two." Defendant Branton issued the work order to Defendant Swain with the knowledge that "votator number two" was serviced by high pressure ammonia lines, although Defendant Branton did not possess any understanding of how to perform that repair in a safe, proper, or prudent manner.

153. By assigning said work order to Defendant Swain, Defendant Branton willfully, wantonly, and recklessly ordered Defendant Clifton Swain to replace the inner sleeve on votator number two even though Defendant Branton knew that Defendant Swain was only a mechanic, that Defendant Swain was not trained in refrigeration or the handling of pressurized ammonia and that there were other employees at Defendant Mountaire who had experience and training in hazardous materials that should have been assigned the work order.

154. When Clifton Swain received the written work order from Defendant Branton on June 20, 2009, instructing Clifton Swain to replace the inner sleeve on "votator number two," Clifton Swain stated to Plaintiff Blue and others that he did not know how to perform that task and that he might need some assistance from Plaintiff Blue or others in performing that task.

155. Plaintiff Blue, in response to the above-referenced statement by Clifton Swain, instructed Clifton Swain that the work order called for Clifton Swain to perform a job designed for a refrigeration technician, and that as such, he should not attempt to perform that work order.

156. Furthermore, Plaintiff Blue, in response to the above-referenced statement by Clifton Swain, instructed Clifton Swain that the work order he had received could not be completed safely or appropriately unless and until all of the ammonia had been drained out of "votator number two."

157. Clifton Swain, in response to the above-referenced statements by Plaintiff Blue, expressed his fear that Defendant Branton would terminate his employment with Defendant Mountaire if he did not complete the work order himself or asked for assistance in completing said work order.

158. Upon information and belief, Clifton Swain's response to this situation was related to the culture involving racial minorities at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina, as Clifton Swain was a racial minority.

159. Upon information and belief, Clifton Swain attempted to replace the sleeve on "votator number two" at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina because he feared that if he refused to do so or communicated that he needed assistance with this task, Defendant Branton would terminate him from his position of employment with Defendant Mountaire.

160. Upon information and belief, Defendant Branton or another agent of Defendant Mountaire, willfully and wantonly and recklessly ordered Clifton Swain to remove or twist a valve on the supply line for "votator number two," because Defendant Branton or another agent

31

of Defendant Mountaire guessed that was the proper method to empty that device of ammonia prior to disconnecting the votator and replacing the inner sleeve.

161. In reality, there was no ammonia shut off valve on the high pressure ammonia lines servicing the individual votators, including "votator number two." Instead, the four votators in the MDM room were on a continuous loop of high pressure ammonia and the whole system needed to be drawn down prior to disconnecting and disassembling a single votator machine. Each ammonia line did have one valve on it, an excess pressure release valve, which could be used to vent excess ammonia from the system once the ammonia had been properly drained down to the storage tanks outside the building.

162. Defendants to this action, including Defendant Saufley, Defendant Ondona, Defendant Smith, Defendant Garroutte, Defendant Lanier, Defendant Pate, and Defendant Branton, as agents of Defendant Mountaire and each other, willfully, wantonly, and recklessly failed to drain down the ammonia system from the votators the night before the work order was issued to Defendant Swain to replace the inner sleeve on "votator number two."

163. Upon information and belief, on June 20, 2009, Defendant Branton did not know how to properly replace the inner sleeve on a votator, and Defendant Branton was aware that he did not know how to safely replace the inner sleeve on a votator or how to properly drain off the high pressure ammonia lines before servicing any of the votator machines.

164. In addition, on June 20, 2009, Defendant Branton and/or other agents of Mountaire willfully, wantonly, and recklessly ordered Clifton Swain to replace the inner sleeve of "votator number two" with the use of a ladder because a votator is a tall cylinder that stands some eight feet tall, and it is anchored on top of a three-to-four foot high pedestal. Additionally, the high pressure ammonia lines are attached near the top of the votator, some twelve feet about the

32

ground. However, Defendant Swain was ordered to use this ladder without having anyone stabilize or stop said ladder and assist him, and without employing any fall protection, in violation of various applicable safety regulations and standards in order to maximize profitability and business objectives over the safety of Defendant Mountaire's employees, even though this misconduct was substantially certain to cause serious injury or death to an employee or employees of Defendant Mountaire.

165. Defendant Branton and/or other agents of Defendant Mountaire willfully and wantonly ordered Swain to replace the inner sleeve and failed to provide Defendant Swain with any safety equipment, which was necessary to be used for the servicing of the high pressure ammonia lines such as goggles, masks, respirators, gloves and/or other protective clothing in order to service votator number two in order to maximize profitability and business objectives over the safety of its workers, even though their inaction(s) in these areas was substantially certain to cause serious injury or death to an employee or employees.

166. On June 20, 2009, a few moments before 9:40 a.m., Clifton Swain called Plaintiff Blue on a portable radio device and requested that Plaintiff Blue come to assist him in replacing the inner sleeve on "votator number two." Plaintiff Blue went to look for Defendant Swain over the portable radio, but could not find him in the MDM room. However, Plaintiff Blue did see Defendant's Swains tools and a ladder near "votator number two."

167. When Plaintiff Blue returned to look for Defendant Swain at about 11:30 AM, Plaintiff Blue Plaintiff Blue walked past Defendant Branton, who was watching Clifton Swain attempt to replace the inner sleeve on "votator number two" outside of the MDM room in a position of safety, but otherwise offering no assistance to Defendant Swain while Defendant Swain attempted to complete the repair of "votator number two."

33

168. Upon information and belief, Defendant Branton watched Clifton Swain unscrewing the excess pressure release valve in a counter-clockwise manner from the supply line itself with a large wrench, after Defendant Branton instructed Clifton Swain to unscrew the same valve under the apparent belief that this would somehow cut off the ammonia gas to "votator number two."

169. When Plaintiff Blue saw Defendant Swain up on top of a ladder, some ten to twelve feet above the ground near the top of the votator, and noticed that no one was supporting the base of the ladder as required by the policies and procedures of Defendant Mountaire. Plaintiff Blue walked past Defendant Branton and walked over to the bottom of the ladder to brace it for Defendant Swain.

170. When Plaintiff Blue looked up to see what Defendant Swain was doing, i.e. unscrewing the excess pressure release valve from the ammonia supply line, he yelled out to warn Defendant Swain to stop.

171. Although Plaintiff Blue yelled out to Clifton Swain to stop what he was doing, Plaintiff Blue was unable to assist Clifton Swain, and the excess pressure release valve, being partially unscrewed from the ammonia line, was forced out of the ammonia line under high pressure of the ammonia behind it, striking Defendant Swain in the chest and vaulting him off the ladder onto the ground some ten-to-twelve feet below.

172. Additionally, a large amount of liquid ammonia showered Clifton Swain and Plaintiff Blue and poison ammonia gas filled the room and a substantial portion of Defendant Mountaire's poultry processing plant.

173. Plaintiff Blue was also knocked to ground after being covered with liquid ammonia. When he realized what had happened he reached over to Defendant Swain and encouraged him to flee. However, Defendant Swain was foaming at the mouth, and part of his ear broke off in

34

Plaintiff Blue's hand, as he tried to shake him. Most of Defendant Swain's face had been frozen solid by the liquid ammonia. Plaintiff Blue, while calling for help on the radio, crawled out of the MDM room and made it to the doorway where he was dragged out of the room by co-workers and evacuated for medical treatment.

174. Tragically, Clifton Swain was killed at approximately 9:40 a.m. on June 20, 2009, as the result of the explosion and release of ammonia from "votator number two."

175. Additionally, as a result of the ammonia release, Plaintiff Blue was exposed to and ingested a high volume of ammonia, and suffered permanent and substantial damage to his lungs and respiratory system, as well as extensive burning to his skin and eyes, and other permanent and painful and debilitating physical and emotional injuries and damages. As a result of his injuries, Plaintiff Blue underwent extensive medical treatment including, but not limited to, a double lung transplant.

### FIRST CAUSE OF ACTION-*Woodson* Claim Against Defendant Mountaire

176. Plaintiff hereby incorporates the allegations of the previous paragraphs of this Complaint by reference as if fully set forth herein.

177. The willful, wanton, and reckless negligent misconduct of Defendant Mountaire, as described herein, was a proximate cause of Plaintiff Blue's serious, painful, permanent, and life-altering injuries, as described herein.

178. The willful, wanton, and reckless negligent misconduct of Defendant Mountaire, as described herein, was substantially certain to cause serious injury or death to an employee, such as Plaintiff Blue, and as such, properly gives rise to an action in tort against Defendant Mountaire Farms pursuant to *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991).

179. Defendant Mountaire knew that its willful, wanton, and reckless misconduct, as described herein, violated the Act and other applicable standards of care, including but not limited to:

    a. Giving Clifton Swain, a regular mechanic who lacked any training or experiencing working with ammonia-based refrigeration, a work order to replace the inner sleeve of a votator;

    b. Ordering the replacing of an inner sleeve in a votator without a work order evidencing a standard operating procedure that would require shutdown, isolation, and pump out of the ammonia inside the votator;

    c. Failing to inspect or test the votator's inner sleeve prior to repair;

    d. Failing to have a system that follows recognized and generally established practices for inspecting and testing their votators;

    e. Failing to have a Pre-Startup Safety Review that verified standard operating procedures, updates to mechanical integrity procedures, or updates to emergency planning and response procedures;

    f. Failing to have a Pre-Startup Safety Review that failed to verify that system operators had been properly trained;

    g. Failing to have an Emergency Response Program that complied with the Act; and

    h. Failing to take necessary and reasonable measures under the circumstances then presented, in a manner to be proven at the trial of this matter.

180. Defendant Mountaire committed numerous willful, wanton, and reckless OSHA violations during the incident that resulted in Plaintiff's Blue's injuries, including:

    a. OSHA cited and fined Defendant Mountaire $2,450.00 (serious violation) under CFR § 1910.134(f)(2) for not fit testing the air purifying equipment that

employees maintaining refrigeration equipment, such as Clifton Swain, were required to wear;

b.   OSHA cited and fined Defendant Mountaire $6,300.00 (serious violation) under CFR § 1910.119(e)(3)(vi) for not having a Process Hazard Analysis or an update to the Process Hazard Analysis that clearly communicated the procedures related to the overlapping responsibilities of the refrigeration mechanics and the maintenance mechanic. An appropriate analysis would have required that the refrigeration mechanics shut down and pump out the ammonia in the votator prior to accessing the inner sleeve;

c.   OSHA cited and fined Defendant Mountaire $6,300.00 (serious violation) under CFR § 1910.119(f)(4) for not developing or implementing safe work practices for employees, as Defendant Mountaire did not use Standard Operating Procedures requiring employees to: (1) perform maintenance on the votator machinery; (2) perform shut down operations and line-break procedures on the votator machinery; (3) validate conditions, ranges, settings, and the consequences of the deviation from those parameters when ordering maintenance to replace an inner sleeve in a votator; and (4) use lock-out/ tag-out procedures to control hazardous energy while replacing an inner sleeve in a votator;

d.   OSHA cited and fined Defendant Mountaire $6,300.00 (serious violation) under CFR § 1910.119(g)(1)(i) for failing to train employees in a newly assigned process. Specifically, mechanics were not trained in the hazards involved in removing the inner sleeve in a votator;

e. OSHA cited and fined Defendant Mountaire $6,300.00 (serious violation) under CFR § 1910.119(j)(2) for failing to establish and implement written procedures to maintain the on-going mechanical integrity of the votators;

f. OSHA cited and fined Defendant Mountaire $6,300.00 (serious violation) under CFR § 1910.119 for failing to follow generally accepted good engineering practices that would have revealed deteriorating votator seals;

g. OSHA cited and fined Defendant Mountaire Farms $2,450.00 (serious violation) under CFR § 1910.134(h)(1)(i) for not cleaning and disinfecting respirators;

h. OSHA cited and fined Defendant Mountaire $2,450.00 (serious violation) under CFR § 1910.134 for not storing emergency respirators and self-contained breathing apparatus in a manner that protected them from extreme temperatures;

i. OSHA cited and fined Defendant Mountaire $2,450.00 (serious violation) under CFR § 1910.134(h)(3)(i)(B) for not inspecting the emergency respirators monthly and in accordance with manufacturer's recommendations;

j. OSHA cited Defendant Mountaire (serious violation) under CFR § 1910.134(h)(3)(iii) for not inspecting that self-contained breathing apparatuses, including the regulators and warning devices, were functioning properly;

k. OSHA cited and fined Defendant Mountaire $1,750.00 (serious violation) under CFR § 1910.151(c) for not providing a working emergency shower that is required by the American National Safety Institute to drench or flush the eyes and bodies of employees exposed to ammonia;

l.  OSHA cited and fined Defendant Mountaire $6,300.00 (serious violation) under CFR § 1910.119(d)(2)(i)(C) for not updating an increase of ammonia levels caused by new equipment;

m.  OSHA cited and fined Defendant Mountaire (serious violation) under CFR § 1910.119(d)(2)(i)(D) for routinely ignoring the safe upper and lower limits for temperature and pressure of the ammonia system;

n.  OSHA cited and fine Defendant Mountaire (serious violation) under CFR § 1910.119(d)(2)(i)(E) for not including an evaluation of the consequences of temperature and pressure deviations in the ammonia system and for allowing temperature and pressure to rise without corrective actions being taken;

o.  OSHA cited and fined Defendant Mountaire $5,600.00 (serious violation) under 29 CFR § 1910.120(q)(3)(iv) for not providing suitable respiratory protection to the emergency response team that should have acted after the ammonia leak;

p.  OSHA cited and fined Defendant Mountaire $2,450.00 (serious violation) under 29 CFR § 1910.120(q)(8)(i) because its emergency response team did not have sufficient training to maintain their competence in responding to the ammonia leak; and

q.  OSHA cited and fined Defendant Mountaire (serious violation) under CFR § 1910.120(q)(6)(ii) because its medical officer required to respond to the ammonia release had not been properly trained.

181. As stated throughout this Complaint, Defendant Mountaire had been previously cited for violations identical or similar to those described above.

182. As stated throughout this Complaint, Defendant Mountaire had previously committed numerous violations of health and safety laws and standards that did not result in any formal disciplinary action by any governmental entity, although Defendant Mountaire's misconduct in this regard led to many of its employees being injured on the job.

183. As stated throughout this Complaint, Defendant Mountaire knew of the substantial certainty of serious injury or death from its dangerous conduct, as described herein, but willfully, wantonly, and recklessly persisted in said course of conduct.

184. Defendant Mountaire willfully, wantonly, and recklessly persisted in the course of conduct described herein because it was motivated by profit and financial gain.

185. The conduct of Defendant Mountaire described herein was influenced by its desire not to shut down and drain its entire ammonia-based refrigeration system at its poultry processing plant in Lumber Bridge, North Carolina, as Defendant Mountaire desired to avoid the extra cost and disruption to its business caused by such action.

186. In addition, Defendant Mountaire planned to move "votator number two" to a new location within its poultry processing plant in Lumber Bridge, North Carolina roughly one week after June 20, 2009, and its misconduct described herein was motivated by its desire to avoid shutting down and draining its entire ammonia-based refrigeration system twice within a relatively short period of time.

187. Defendant Mountaire willfully, wantonly, and recklessly attempted to replace the inner sleeve of "votator number two" at its poultry processing plant in Lumber Bridge, North Carolina on a Saturday, via its weekend maintenance team, because Defendant Mountaire determined that such approach would maximize the profitability of its business.

188. Defendant Mountaire willfully, wantonly, and recklessly attempted to replace the inner sleeve of "votator number two" at its poultry processing plant in Lumber Bridge, North Carolina on a Saturday, via its weekend maintenance team, to comply with a deadline imposed by the USDA so as to avoid having the USDA shut down its poultry processing plant in Lumber Bridge, North Carolina, because Defendant Mountaire failed to make timely plans to complete this repair.

189. Defendant Mountaire willfully, wantonly, and recklessly attempted to replace the inner sleeve of "votator number two" at its poultry processing plant in Lumber Bridge, North Carolina on a Saturday, via its weekend maintenance team, in an effort to save money and avoid inconvenience, in willful, wanton, and reckless disregard to for the health and safety of its employees, including Plaintiff Blue.

190. Plaintiff Blue hereby demands to recover of Defendant Mountaire, jointly and severally, an amount in excess of Ten Thousand Dollars ($10,000.00), and to include punitive damages against Defendant Mountaire for its willful, wanton, and reckless conduct, as described herein.

## SECOND CAUSE OF ACTION- *Pleasant* Claim Against Defendants Charles Branton, Daniel Pate, James Lanier, Robert Garroutte, a/k/a Robert Garroute, Jr., Christopher Smith, Halley Ondona, and Thomas Saufley

191. Plaintiff hereby incorporates the allegations of the previous paragraphs of this Complaint by reference as if fully set forth herein.

192. The respective willful, wanton, and reckless negligent actions and omissions of Defendant Branton, Defendant Pate, Defendant Lanier, Defendant Garroutte, Defendant Smith, Defendant Ondona, and Defendant Saufley, as described herein, were a proximate cause of Plaintiff Blue's serious, painful, permanent, and life-altering injuries, as described herein.

193. The respective willful, wanton, and reckless negligent actions and omissions of Defendant Branton, Defendant Pate, Defendant Lanier, Defendant Garroutte, Defendant Smith, Defendant Ondona, and Defendant Saufley, as described herein, are culpable misconduct, and accordingly, Plaintiff Blue hereby brings a claim against Defendant Charles Branton, Defendant Pate, Defendant Lanier, Defendant Garroutte, Defendant Smith, Defendant Ondona, and Defendant Saufley under *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985).

194. Defendant Branton, Defendant Pate, Defendant Lanier, Defendant Garroutte, Defendant Smith, Defendant Ondona, and Defendant Saufley each made conscious choices to disregard applicable standards and prudent practices, as described herein, in a willful, wanton, and reckless manner, without regard for the safety or health of employees at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina— in particular, those who worked in close proximity to devices containing ammonia, such as votators.

195. Defendant Branton, Defendant Pate, Defendant Lanier, Defendant Garroutte, Defendant Smith, Defendant Ondona, and Defendant Saufley each engaged in conduct that they knew was dangerous, careless, and reckless, and that put the safety and health of employees at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina— in particular, those who worked in close proximity to devices containing ammonia, such as votators.

196. Defendant Branton, Defendant Pate, Defendant Lanier, Defendant Garroutte, Defendant Smith, Defendant Ondona, and Defendant Saufley each made conscious choices to engage in conduct that was willful, wanton, and reckless despite the risks that they knew such conduct posed to the safety and health of employees at Defendant Mountaire's poultry processing plant in Lumber Bridge, North Carolina, including Plaintiff Blue.

197. Defendant Branton, Defendant Pate, Defendant Lanier, Defendant Garroutte, Defendant Smith, Defendant Ondona, and Defendant Saufley each willfully, wantonly, and recklessly made choices to defer to the authority of supervisors and managers or to delegate authority to employees who lacked sufficient qualifications and competence to handle those assignments, in a manner that each of them knew was inappropriate and dangerous.

198. Plaintiff Blue hereby demands to recover of Defendant Branton, Defendant Pate, Defendant Lanier, Defendant Garroutte, Defendant Smith, Defendant Ondona, and Defendant Saufley, jointly and severally, an amount in excess of Ten Thousand Dollars ($10,000.00), and to include punitive damages against said Defendants for their willful, wanton, and reckless conduct, as described herein.

### THIRD CAUSE OF ACTION- *Pleasant* Claim Against Defendant Detra Swain, as Executrix of the Estate of Clifton Swain, Defendant The Estate of Clifton Swain, and Defendant Bradford Scott Hancox, Public Administrator of Cumberland County, North Carolina, and as Successor or Substitute Personal Representative And/ or Administrator And/or Collector of the Estate of Clifton Swain

199. Plaintiff hereby incorporates the allegations of the previous paragraphs of this Complaint by reference as if fully set forth herein.

200. The willful, wanton, and reckless negligent misconduct of Clifton Swain, as described herein, was a proximate cause of Plaintiff Blue's serious, painful, permanent, and life-altering injuries, as described herein.

201. The willful, wanton, and reckless negligent misconduct of Clifton Swain, as described herein, is culpable misconduct, and as such, Plaintiff Blue brings a claim against Defendant Detra Swain, as Executrix of the Estate of Clifton Swain, Defendant The Estate of Clifton Swain,

and Defendant Bradford Scott Hancox, Public Administrator of Cumberland County, North Carolina, and as Successor or Substitute Personal Representative And/ or Administrator And/or Collector of the Estate of Clifton Swain under *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985).

202. In particular, Clifton Swain, when he received the work order to replace the inner sleeve of "votator number two" on June 20, 2009, knew that he was unaware of the proper procedure and unable to perform that job in a safe or competent manner.

203. Plaintiff Blue specifically warned Clifton Swain, when he received the work order to replace the inner sleeve of "votator number two" on June 20, 2009, that he was unaware of the proper procedure and unable to perform that job in a safe or competent manner.

204. Nonetheless, Clifton Swain willfully, wantonly, and recklessly persisted in attempting to replace the inner sleeve of "votator number two" on June 20, 2009, although he had no idea how to perform that repair in a safe or competent manner.

205. Clifton Swain knew that he was not trained to work with hazardous high pressure ammonia gas lines yet willfully, wantonly, and recklessly persisted in attempting to do so, putting his own life and the life of others in grave danger, because he determined that his economic concerns about being fired outweighed his own safety and that of others.

206. Moreover, Clifton Swain heard Plaintiff Blue exhort him to stop turning the control valve on "votator number two," but he persisted in doing so in a willful, wanton, and reckless manner.

207. Plaintiff Blue hereby demands to recover of Defendant Detra Swain, as Executrix of the Estate of Clifton Swain, Defendant The Estate of Clifton Swain, and Defendant Bradford Scott Hancox, Public Administrator of Cumberland County, North Carolina, and as Successor or Substitute Personal Representative And/ or Administrator And/or Collector of the Estate of

Clifton Swain, jointly and severally, an amount in excess of Ten Thousand Dollars ($10,000.00), and to include punitive damages against said Defendants for their willful, wanton, and reckless conduct, as described herein.

WHEREFORE, Plaintiff Brian Blue hereby demands that this Honorable Court provide him with the following relief against Defendant Mountaire Farms, Inc., Defendant Mountaire Farms of North Carolina Corp., Defendant Mountaire Farms, LLC, Defendant Charles Branton, Defendant Daniel Pate, Defendant James Lanier, Defendant Robert Garroutte, a/k/a Defendant Robert Garroutte, Jr., Defendant Christopher Smith, Defendant Halley Ondona, Defendant Thomas Saufley, Defendant Detra Swain, as Executrix of the Estate of Clifton Swain, Defendant The Estate of Clifton Swain, and Defendant Bradford Scott Hancox, Public Administrator of Cumberland County, North Carolina, and as Successor or Substitute Personal Representative And/ or Administrator And/ or Collector of the Estate of Clifton Swain, to the greatest extent permitted by law:

1) That Plaintiff Brian Blue have and recover actual damages against Defendants, jointly and severally, in an amount in excess of Ten Thousand Dollars ($10,000.00);

2) That Plaintiff Brian Blue have and recover punitive damages against Defendants, jointly and severally, in an amount in excess of Ten Thousand Dollars ($10,000.00);

3) That Plaintiff Brian Blue have and recover all costs, pre-judgment interest, and post-judgment interest as permitted by law;

4) That Plaintiff Brian Blue have a TRIAL BY JURY on all issue so triable; and

5) That Plaintiff Brian Blue have and recover such other and further relief as this Honorable Court in its discretion deems just and proper.

This the __18th__ day of June, 2012.


PINTO COATES KYRE & BROWN, PLLC

Paul D. Coates
North Carolina State Bar # 9753
Jon Ward
North Carolina State Bar # 37122
3203 Brassfield Road
Greensboro, NC 27410
Telephone: (336) 282-8848
Facsimile: (336) 282-8409
*Attorneys for Plaintiff Brian Blue*

A.G. LINETT & ASSOCIATES, PA

Adam G. Linett
North Carolina State Bar # 34519
P.O. Box 38876
Greensboro, NC 27438
Telephone: (336) 316-1190
Facsimile: (336) 316-1191
*Attorney for Plaintiff Brian Blue*


46

JAN ??? 489·1616
683·1491

| STATE OF NORTH CAROLINA | | File No. 12 CVCV 01673 |
|---|---|---|
| | | Film No.: |

ROBESON        County

In The General Court of Justice
☐ District Court   ☒ Superior Court

| Plaintiff Name<br>Brian Blue | **CIVIL SUMMONS** |
|---|---|
| Address | GS 1A-1, Rules 3,4 |
| City, State, Zip | |

**VERSUS**

| Defendant Name<br>Mountaire Farms, Inc., Mountaire Farms of North Carolina Corp., Mountaire Farms, LLC, Charles Branton, et al | * ☐ Alias and Pluries Summons<br>The summons originally issued against you was returned not served. |
|---|---|
| | Date Last Summons Issued | * Disregard this section unless the block is checked. |

| TO: Daniel Pate | TO: |
|---|---|
| Name & Address of First Defendant<br>Daniel Pate<br>509 Inverary Drive<br>Raeford, NC  28376 | Name & Address of Second Defendant |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1.   Serve a copy of your written answer to the complaint upon the plaintiff or his/her attorney within thirty (30) days after you have been served.  You may serve your answer by delivering a copy to him/her or by mailing it to him/her at his/her last known address, and

2.   File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name and Address of Plaintiff's Attorney<br>If none, Address of Plaintiff<br>Paul D. Coates<br>3203 Brassfield Road<br>Greensboro, NC  27410<br>(336) 282-8848 | Date Issued<br>6-19-12 | Time Issued<br>11:27  ☒ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk of Superior Court | |

## ☐ ENDORSEMENT

This summons was originally issued on the date indicated above and returned not served.  At the request of the plaintiff, the time within which this summons must be served is extended thirty (30) days.

| | Date of Endorsement | Time Issued<br>☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk of Superior Court | |

AOC-CV-100

**FAYETTEVILLE CONSULTANTS**
**& INVESTIGATIONS, LLC**



**David P. Bloomfield**
CEO
PO Box 48026 • Fayetteville, NC 28331

fcidpb@earthlink.net
fci-nc.com                                    910.850.6670

U

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Jul-29  09:58:13
60CV-16-4170
C06D02 : 4 Pages

ACE USA                    302-476-7882
Employers Liability        866-635-5687 fax
PO Box 5115
Scranton, PA 18505-        michael.boccella@acegroup.com
0545                       www.acegroup.com

Michael J. Boccella
Sr. Claims Director

July 25, 2012

### Disclaimer of Coverage (DRAFT)

**Via e-mail (read receipt requested)
and regular mail**
Janice Attberry
Risk Manager
204 E. 4th Street
North Little Rock, AK 72114

Re:   Brian Blue v. Mountaire Farms, Inc., et al.
      Robeson County, North Carolina
      Case No.: 12-CVS-01673
      ACE American Claim No.: 5669 477 101991 X

Dear Ms. Attberry:

On behalf of ACE American Insurance Company ("ACE American") this letter will serve to acknowledge receipt of Mountaire Farms, Inc., Mountaire Farms of North Carolina Corp., and Mountaire Farms, LLC's (collectively "Mountaire") tender of the above-referenced suit to ACE American for consideration of coverage under Workers Compensation and Employers Liability Policy No. WLR C4 44 63 05 8 issued to Mountaire Corporation (the "Policy.") We have reviewed the Complaint in light of the Policy language. Based upon this review, we must advise you that the Policy does not afford coverage for the sole claim asserted by Plaintiff, Brian Blue ("Plaintiff") against Mountaire. We also must advise you that the Policy does not cover the individual employees named in the lawsuit, although there may be coverage for those persons under Mountaire's general liability policy. Therefore, ACE American must respectfully decline coverage to these persons under the Policy, including any defense obligation, for this suit.

**I   Plaintiff's Lawsuit**

In June 2012, Plaintiff filed this suit against Mountaire and several employees of Mountaire. Plaintiff seeks to recover damages for bodily injury allegedly resulting from an incident of June 20, 2009 at Mountaire's poultry processing plant (the "Plant") in Lumber Bridge, North Carolina. On that date, Plaintiff allegedly was employed by one of the Mountaire defendants, and sustained injuries when he was exposed to ammonia while assisting in the replacement of an inner sleeve on "votator number two" at the Plant.

By way of background, Plaintiff alleges that after Mountaire purchased the Plant in 1996, it embarked on a plan to increase production at the Plant and that by 1999 it had roughly doubled production. Plaintiff's Complaint alleges that, in part, Mountaire increased production by ignoring safety hazards to its employees. Plaintiff asserts that Mountaire had a culture at its Plant of "prioritizing profitability and business objectives over the safety of its employees, although Defendant Mountaire



EXHIBIT
C



knew that its corporate culture was substantially certain to cause serious injury or death to some of its employees."

Plaintiff alleges that, at all times relevant to the Complaint, Mountaire used ammonia as a refrigerant at the Plant. Plaintiff further alleges that ammonia is a natural gas, and that exposure to it at high levels is dangerous and potentially lethal. The suit arises from the attempt to replace the inner sleeve of "votator number two" at the Plant. According to Plaintiff, the room in which "votator number two" was located contains three other votators, all of which were connected to the same ammonia gas lines in one continuous loop, and these supply lines are connected to a large ammonia tank, outside the building. The ammonia tank was connected to a separate tank, with a lock-out /tag out valve that was used to drain off the ammonia when it was necessary to remove the ammonia from the system when it was necessary to remove the ammonia from the system to service any part of the ammonia lines or votator. Plaintiff alleges that in April or May 2009, inspectors from the United States Department of Agriculture ordered Mountaire to replace the inner sleeve on "votator number two", and that the USDA gave Mountaire a deadline of June 20, 2009 to replace the inner sleeve. Plaintiff alleges that Mountaire received the replacement inner sleeve in April, May or June 2009, but that it delayed in scheduling its replacement, because Mountaire did not want to disrupt operations. Instead, allegedly in order to maximize its profits, and in disregard for the safety of its employees, Mountaire scheduled the replacement for Saturday June 20, 2009 to avoid the need to shut down plant operations. Plaintiff clams that in order to safely replace the sleeve on the votator, Mountaire would need to drain all ammonia from the supply line and other votators and that such action would take approximately one day. Plaintiff alleges that he was ordered to replace the inner sleeve of "votator number two" without anyone shutting down the ammonia system or doing anything else to shut off the supply of ammonia to the votator. Mountaire and the individual defendants allegedly required untrained personnel to perform the servicing and/or repair of the system, even though Mountaire had employees who were specially trained to perform such an operation and/or had qualified independent contractors available to it. While the repairs were being completed, Plaintiff was exposed to liquid ammonia released from the system, as a result of which he suffered permanent and substantial injuries to his lungs and respiratory system, extensive burns to his skin and eyes and other injuries. Plaintiff was required to undergo a double lung transplant. Another employee, defendant, Clifton Swain, died during this incident.

Based upon the factual allegations of the Complaint, which comprise 175 paragraphs, Plaintiff sets forth a single claim against Mountaire titled "*Woodson* Claim." In asserting this claim, Plaintiff alleges that the willful, wanton and reckless negligent misconduct of Mountaire was the proximate cause of his injuries. He further alleges that Mountaire's willful, wanton and reckless negligent misconduct "was substantially certain to cause serious injury or death to an employee." In addition to compensatory damages, Plaintiff seeks to recover punitive damages.

**II.     The Insurance Policy**

As noted above, ACE American issued to Mountaire Corporation a Workers Compensation and Employers Liability Policy No. WLR C4 44 63 05 8; with effective dates of 03/01/2009 to 03/01/2010. By extension of the Policy's Information Page, the Policy names defendants, Mountaire Farms, Inc., Mountaire Farms of North Carolina, and Mountaire Farms, LLC as insured entities. The Part Two limits



of liability under the Policy are $1,000,000 per accident.  The Policy is subject to an incident deductible limit of $2,000,000, which encompasses all payments under Parts One and Two of the Policy, including allocated loss adjustment expense.  In relevant part, the Policy provides as follows:

### WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

***      ***      ***      ***

### PART TWO – EMPLOYERS LIABILITY INSURANCE

**A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily must arise out of and in the course of the injured employee's employment by you.

***      ***      ***      ***

**B. We Will Pay**

We will pay all sums you legally must pay as damages because of bodily injury to your employees provided the bodily injury is covered by the Employers Liability Insurance.

****      ****      ****

**C. Exclusions**

This insurance does not cover:

****      ****      ****

5. bodily injury intentionally caused or aggravated by you;

****      ****      ****

**D. We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against



U

you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance...

       **\*\*\*\***           **\*\*\*\***           **\*\*\*\***

**III.**    **Explanation of Disclaimer**

As quoted above, the Policy does not cover bodily injury intentionally caused by you. While ACE American is not implying that you intended to cause injury to Plaintiff, Plaintiff's sole claim is based upon the exception to your workers compensation immunity for a claim that you intentionally injured Plaintiff, including allegations that the injuries were substantially certain to occur as a result of your conduct. Since ACE American would not be obligated to pay damages awarded against Mountaire Farms, Inc., Mountaire Farms of North Carolina Corp., and Mountaire Farms, LLC, if Plaintiff prevailed on his *Woodson* claim, ACE American has no obligation to defend this suit, including any obligation to pay defense costs.

**IV.**    **Conclusion**

Nothing in this letter is intended to waive any rights or defenses of ACE American under the Policy, or under the law. ACE American expressly reserves any and all such rights, including the right to raise additional bases in support of its position.

If you would like to discuss this letter with me, the disclaimer, or would like for us to consider any additional information, please do not hesitate to contact me at the above-referenced number. Thank you for your attention to this matter.


Very truly yours,


Michael J. Boccella

c:    Shirley Simmons (Regions Insurance Company) (via e-mail)
     Vince DiPietro (Broadspire) (via e-mail)

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Nov-23 10:56:11
60CV-16-4170
C06D02 : 5 Pages

## AFFIDAVIT OF SERVICE

**State of Arkansas**　　　　　　　　**County of Pulaski**　　　　　　　　**Circuit Court**

Case Number: 60CV-16-4170

Plaintiff:
**Mountaire Corporation; ET AL**
vs.
Defendant:
**Ace American Insurance Company**

For: Mr. B.J. Walker
　　ROSE LAW FIRM

Received by MYERS ATTORNEY'S SERVICE to be served on Ace American Insurance Company by serving Corporation Company, 124 West Capitol, Suite 1900, Little Rock, AR 72201. I, _Andrew Myers_, being duly sworn, depose and say that on the _22_ day of _Nov_, 20_16_ at _12:40_ m., executed service by delivering a true copy of the **SUMMONS, NOTICE, NOTICE OF RIGHT TO CONSENT TO DISPOSITION OF CASE BY A STATE DISTRICT COURT JUDGE, COMPLAINT, EXHIBITS**, in accordance with state statutes in the manner marked below:

( ) GOV.AGENCY: By Serving _____ As _____ of the within-named agency.

(✓) CORPORATE SERVICE: By Serving _The Corp Co / Karen Moore_ as _Reg Agent_.

( ) OTHER SERVICE:See Comments Below:
( ) NON SERVICE: See Comments Below:
Service Was Completed At: _____

**COMMENTS:** _____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me
on _____ by the affiant who is
personally known to me.

_Caleb F. Mitchell_
NOTARY PUBLIC

CALEB F. MITCHELL
COMM. EXP.
9-28-2026
No. 12699103
PULASKI COUNTY
NOTARY PUBLIC - ARKANSAS

PROCESS SERVER # _____
Appointed in accordance with State Statutes

**MYERS ATTORNEY'S SERVICE**
300 Spring Building
300 Spring Street, Suite 715
Little Rock, AR 72201
(501) 376-6266

Our Job Serial Number: 2016009730

Copyright © 1992-2016 Database Services, Inc. - Process Server's Toolbox V7.1g

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. CHRIS PIAZZA - 2ND DIVISION 6TH CIRCUIT**

MOUNTAIRE CORPORATION, ET AL V ACE AMERICAN INS CO

60CV-16-4170

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

ACE AMERICAN INSURANCE COMPANY
P.O. Box 5115
Scranton, PA  18505

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Byron Jansen Walker
Rose Law Firm
120 East Fourth Street
Little Rock, AR  72201-2893

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:
•Notice of Right to Consent to Disposition of Case by a State District Court Judge

CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

Bettina Boughter, DC

Date: 07/29/2016

## NOTICE OF RIGHT TO CONSENT
## TO DISPOSITION OF CASE BY A STATE DISTRICT COURT JUDGE

In accordance with Administrative Order Number 18, you are hereby notified that upon the consent of all the parties in a case, a State District Court Judge may be authorized to conduct all proceedings, including trial of the case and entry of a final judgment. Copies of appropriate consent forms are available from the Circuit Clerk.

You should be aware that your decision to consent or not to consent to the disposition of your case before a State District Court Judge is entirely voluntary, and by consenting to the reference of this matter to a State District Court Judge, the parties waive their right to a jury trial, and any appeal in the case shall be taken directly to the Arkansas Supreme Court or Court of Appeals as authorized by law.

You should communicate your consent by completing the Form -- CONSENT TO PROCEED BEFORE A STATE DISTRICT COURT JUDGE -- and return to the Circuit Clerk.

Circuit Clerk
Date: 07/29/2016

No. 60CV-16-4170 This summons is for ACE AMERICAN INSURANCE COMPANY (name of Defendant).

## PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

❏ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

❏ Other [specify]:

_____

❏ I was unable to execute service because:

_____
_____

My fee is $ ____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

                              By: _____
                              [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                          [Signature of server]


                          _____
                          [Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____


_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____